

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
02/03/2017

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| VANGUARD NATURAL RESOURCES, LLC, *et al.*,[1] | § § § | Case No. 17-30560 (MI) |
| Debtors. | § § § § | (Joint Administration Requested) (Emergency Hearing Requested) |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364, AND 507, BANKRUPTCY RULES 2002, 4001, AND 9014, AND LOCAL BANKRUPTCY RULES 2002-1, 4001-1(b), 4002-1(i), AND 9013-1 (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION SENIOR SECURED SUPERPRIORITY FINANCING AND (B) USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

(Docket No. 10)

Upon the Motion (the "**Motion**"),[2] dated February 2, 2017, of Vanguard Natural Resources, LLC and its affiliated debtors as debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"), for entry of an interim order (this "**Interim Order**") and a final order (the "**Final Order**"), pursuant to sections 105, 361, 362, 363, 364, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Vanguard Natural Resources, LLC (1161); Eagle Rock Acquisition Partnership, L.P. (6706); Eagle Rock Acquisition Partnership II, L.P. (0903); Eagle Rock Energy Acquisition Co., Inc. (4564); Eagle Rock Energy Acquisition Co. II, Inc. (3364); Eagle Rock Upstream Development Company, Inc. (0113); Eagle Rock Upstream Development Company II, Inc. (7453); Encore Clear Fork Pipeline LLC (2032); Escambia Asset Co. LLC (3869); Escambia Operating Co. LLC (2000); Vanguard Natural Gas, LLC (1004); Vanguard Operating, LLC (9331); VNR Finance Corp. (1494); and VNR Holdings, LLC (6371). The location of the Debtors' service address is: 5847 San Felipe, Suite 3000, Houston, Texas 77057.

[2] Capitalized terms used, but not defined herein, shall have the meanings set forth in the DIP Credit Agreement (as defined herein).

Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1, 4001-1(b), 4002-1(i), and 9013-1 of the

Local Rules of the United States Bankruptcy Court for the Southern District of Texas and the

Texas Complex Chapter 11 Case Procedures (together, the "**Local Rules**"):

- authorizing the Borrower to obtain senior secured, postpetition financing on a priming, superpriority basis in the form of a revolving credit facility (the "**DIP Facility**") in an aggregate principal amount not to exceed $50 million on a final basis, and $15 million available on an interim basis, and the Guarantors to guarantee the Obligations arising thereunder and under the other Loan Documents, with Citibank, N.A. ("**Citibank**") acting as administrative agent (Citibank, in such capacity, the "**DIP Agent**"), and the Lenders from time to time party thereto (the "**DIP Lenders**" and, collectively with the DIP Agent, the Secured Treasury Management Banks, and any other parties to whom any Obligations may be owed under the DIP Documents (as defined herein), the "**DIP Secured Parties**"), all on the terms and conditions set forth in the DIP Documents, this Interim Order, and the Final Order;

- authorizing the Debtors to execute, deliver, and enter into that certain Debtor-in-Possession Credit Agreement, dated as of February __, 2017, among the Borrower, the Guarantors, the DIP Lenders, and the DIP Agent, substantially in the form attached to this Interim Order as Exhibit 1 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**DIP Credit Agreement**" and, collectively with the schedules and exhibits attached thereto, and all other Loan Documents, the "**DIP Documents**") and the other DIP Documents and to perform their respective obligations thereunder and all such other and further acts as may be required, necessary, or appropriate in connection with the DIP Documents;

- granting valid, enforceable, non-avoidable, and automatically fully-perfected priming liens on, and security interests in, the DIP Collateral (as defined herein) to the DIP Secured Parties to secure all Obligations (the "**DIP Obligations**");

- granting allowed superpriority administrative claims to the DIP Secured Parties in respect of the DIP Obligations;

- authorizing the Debtors to continue to use cash collateral (as such term is defined in section 363(a) of the Bankruptcy Code, "**Cash Collateral**") in accordance with the DIP Budget (as defined herein) and all other Prepetition Collateral (as defined herein), in accordance with the terms of this Interim Order and the Final Order;

- granting adequate protection to the First Lien Secured Parties (as defined herein) under that certain Third Amended and Restated Credit Agreement, dated as of November 30, 2011 (as amended, restated, amended and restated, supplemented, or otherwise modified, the "**First Lien Credit Agreement**" and, collectively with all agreements, documents, notes, mortgages, security agreements, pledges,

guarantees, subordination agreements, deeds, instruments, indemnities, indemnity letters, fee letters, assignments, charges, amendments, and any other agreements delivered pursuant thereto or in connection therewith, including the "Loan Documents" as such term is defined in the First Lien Credit Agreement, the "**First Lien Loan Documents**") by and among Vanguard Natural Gas, LLC ("**Vanguard**"), as borrower, each Guarantor (as defined in the First Lien Credit Agreement), the Lenders (as defined therein) from time to time party thereto (the "**First Lien Secured Lenders**"), and Citibank, as Issuing Bank (as defined in the First Lien Credit Agreement, the "**Prepetition Issuing Bank**") and administrative agent (Citibank, in its capacity as administrative agent, the "**First Lien Agent**" and, collectively with the First Lien Secured Lenders, the Prepetition Issuing Bank, the Swap Lenders (as defined in the First Lien Credit Agreement), the Treasury Management Banks (as defined in the First Lien Credit Agreement), and any other parties to whom any Obligations (as defined in the First Lien Credit Agreement and used herein, the "**First Lien Obligations**") may be owed (the "**First Lien Secured Parties**"));

- granting adequate protection to the Second Lien Secured Parties (as defined herein) under that certain Second Lien Indenture, dated as of February 10, 2016 (as amended, restated, amended and restated, supplemented, or otherwise modified, the "**Second Lien Indenture**" and, collectively with all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, subordination agreements, deeds, instruments, indemnities, indemnity letters, working fee letters, assignments, charges, amendments, and any other agreements delivered pursuant thereto or in connection therewith, the "**Second Lien Notes Documents**" and, together with the First Lien Loan Documents, the "**Prepetition Financing Documents**") by and among Vanguard and VNR Finance Corp. ("**VNR Finance**"), as co-issuers, each of the Guarantors (as defined in the Second Lien Indenture), and U.S. Bank National Association, as indenture trustee and collateral agent (as succeeded by Delaware Trust Company, in such capacities, the "**Second Lien Indenture Trustee**") for the noteholders thereunder (the "**Second Lien Noteholders**" and, collectively with the Second Lien Indenture Trustee and any other parties to whom obligations may be owed under the Second Lien Notes Documents (such obligations, the "**Second Lien Obligations**" and, together with the First Lien Obligations, the "**Prepetition Secured Obligations**"), the "**Second Lien Secured Parties**" and, together with the First Lien Secured Parties, the "**Prepetition Secured Parties**");

- approving certain stipulations by the Debtors with respect to the Prepetition Financing Documents, the First Lien Obligations, the Second Lien Obligations, and the liens and security interests granted with respect thereto;

- modifying the automatic stay to the extent set forth herein and in the DIP Documents, and providing for the immediate effectiveness of this Interim Order; provided, this Order governs in the event of a conflict;

- scheduling a final hearing (the "**Final Hearing**") to consider entry of the Final Order granting the relief requested in the Motion on a final basis;

and due and sufficient notice of the Motion and the interim hearing on the Motion (the "**Interim Hearing**") having been provided by the Debtors; and the Interim Hearing having been held on February 2, 2017; and after considering all the pleadings filed with this Court; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. § 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; and upon the record of the Interim Hearing and made by the Debtors in the Motion, the *Declaration of Daniel M. Aronson in Support of Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief*, and the *Declaration of Richard A. Robert, Chief Financial Officer of Vanguard Natural Resources, LLC, in Support of Chapter 11 Petitions and First Day Motions*; and the Court having found and determined that the relief sought in the Motion is necessary to avoid immediate and irreparable harm to the Debtors pending the Final Hearing and is otherwise fair and reasonable and in the best interests of the Debtors, their estates, and creditors, and is essential for the continued operation of the Debtors' businesses; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved, or overruled by the Court; and after due deliberation and consideration and good and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

      A.     <u>Petition Date</u>.  On February 2, 2017 (the "**Petition Date**"), each of the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**").  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner or official committee of unsecured creditors (the "**Creditors' Committee**") has been appointed in these Chapter 11 Cases.

      B.     <u>Jurisdiction and Venue</u>.  This Court has core jurisdiction over these proceedings, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

      C.     <u>Notice</u>.  Proper, timely, adequate, and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice of the Motion with respect to the relief requested at the Interim Hearing or the entry of this Interim Order shall be required.

      D.     <u>Debtors' Stipulations and Waivers</u>.  The Debtors admit, stipulate, and agree that:

          (i)     *First Lien Obligations.*

> Prior to the Petition Date, the First Lien Secured Parties and the Prepetition Issuing Bank made certain loans, advances, and other extensions of credit pursuant to the First Lien Loan Documents. As of the Petition Date, the Debtors were justly and lawfully indebted and liable under the First Lien Loan Documents, without defense, counterclaim, or offset of any kind to the (a) First Lien Secured Parties in the aggregate principal amount of not less than $1.249 billion in respect of loans and

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact whenever the context requires. *See* Fed. R. Bankr. P. 7052.

other financial accommodations made by the First Lien Secured Lenders, and in the aggregate face amount of $150,000 in respect of letters of credit issued by the Prepetition Issuing Bank pursuant to, and in accordance with, the First Lien Loan Documents, and (b) holders of First Lien Obligations arising under the Secured Treasury Management Agreements (as defined in the First Lien Credit Agreement) in amounts yet to be determined, plus accrued and unpaid interest, fees, and costs and expenses with respect to each of the foregoing.   Each of the First Lien Loan Documents is valid, binding, and, subject to applicable bankruptcy law, enforceable against the Debtors in accordance with its terms.

(ii)     *First Lien Collateral.*

Pursuant to and as more particularly described in the First Lien Loan Documents, the First Lien Obligations are secured by, among other things, first priority liens and mortgages on, security interests in, and assignments and pledges of (collectively, the "**First Priority Prepetition Liens**"), all of the Debtors' right, title, and interest in substantially all of the Debtors' property, as more fully described in the First Lien Loan Documents, including, without limitation, substantially all of the Debtors' Oil and Gas Properties and Midstream Assets and all other Collateral (each as defined in the First Lien Loan Documents and collectively, the "**Prepetition Collateral**").

(iii)    *Second Lien Obligations.*

Prior to the Petition Date, pursuant to the Second Lien Notes Documents, Vanguard and VNR Finance issued notes (the "**Second Lien Notes**") to the Second Lien Noteholders.  As of the Petition Date, the Debtors were justly and lawfully indebted and liable, without defense, counterclaim, or offset of any kind in the aggregate principal amount of approximately $75,634,000 under the Second Lien Notes, plus accrued and unpaid interest, fees, costs, and expenses.   Each of the Second Lien Notes Documents is valid, binding, and, subject to applicable bankruptcy law, enforceable against the Debtors in accordance with its terms.

(iv)    *Second Lien Collateral.*

Pursuant to and as more particularly described in the Second Lien Notes Documents, the Second Lien Obligations are secured by, second priority liens and mortgages on, security interests in, and assignments and pledges of (collectively, the "**Second Priority Prepetition Liens**" and, together with the First Priority Prepetition Liens, the "**Prepetition Liens**") the Prepetition Collateral.

(v)     *Intercreditor Agreement.*

That certain Intercreditor Agreement, dated as of February 10, 2016 (as amended, restated, amended and restated, supplemented, or otherwise modified, the "**Intercreditor Agreement**"), by and between the First Lien Agent and Second Lien Indenture Trustee and acknowledged and agreed to by the Issuers (as defined in the Intercreditor Agreement) and the Grantors (as defined in the Intercreditor Agreement) governs, among other things: (a) payment priority with respect to holders of claims related to the Prepetition Secured Obligations; (b) rights and remedies of the holders of Prepetition Secured Obligations with respect to use of Cash Collateral and adequate protection; and (c) the relative priority of the respective Prepetition Liens granted to holders of Prepetition Secured Obligations. The Intercreditor Agreement is binding, valid, and enforceable in accordance with its terms, and the parties bound thereby are not entitled to take any action that would be contrary to the provisions thereof.

(vi)    *Validity of Prepetition Liens and Prepetition Obligations.*

The Prepetition Liens are (a) valid, binding, perfected, and enforceable liens on, and security interests in, all of the Debtors' right, title, and interest in, and to, the Prepetition Collateral, and (b) not subject to, pursuant to the Bankruptcy Code or other applicable law (foreign or domestic), avoidance, disallowance, reduction, recharacterization, recovery, subordination (whether equitable, contractual, or otherwise), attachment, offset, recoupment, counterclaim, defense, "claim" (as defined in the Bankruptcy Code), impairment, or any other challenge of any kind by any person or entity, other than as provided in the Intercreditor Agreement with respect to the Second Priority Prepetition Liens. Each Debtor irrevocably waives, for itself and its estate, any right to challenge or contest in any way the scope, extent, perfection, priority, validity, non-avoidability, or enforceability of the Prepetition Liens or the validity, or enforceability of the Prepetition Financing Documents or the validity, enforceability, or priority of payment of the Prepetition Secured Obligations. The Prepetition Liens were granted to the respective Prepetition Secured Parties for fair consideration and reasonably equivalent value, and were granted contemporaneously with the making of loans, commitments, and/or other financial accommodations under the Prepetition Financing Documents.

No portion of the Prepetition Secured Obligations or any payments made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under the Prepetition Financing Documents prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance, or other claim, cause of action, or other

challenge of any nature under the Bankruptcy Code or applicable nonbankruptcy law.

(vii)   *Cash Collateral.*

All of the Debtors' cash, negotiable instruments, documents of title, securities, deposit accounts, and other cash equivalents, in each case, whether existing on the Petition Date or thereafter, wherever located, constitutes Cash Collateral of the Prepetition Secured Parties.

(viii)  *Releases.*

The Debtors do not have, and hereby forever release and waive, any claims, objections, challenges, counterclaims, causes of action, defenses, setoff rights, obligations, rights to subordination, or any other liabilities, whether arising under the Bankruptcy Code or applicable nonbankruptcy law, against the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees from the beginning of time through the Petition Date.

(ix)   *Default.*

The Debtors are in default of certain terms and provisions of the Prepetition Financing Documents as of the Petition Date.

E.   *Findings Regarding the DIP Financing and Cash Collateral.*

(i)   *Need for DIP Financing and Use of Cash Collateral.*

The Debtors have an immediate and critical need to obtain postpetition financing under the DIP Facility and to use Cash Collateral. The ability of the Debtors to maintain business relationships with their vendors, suppliers, and customers, pay their employees, and otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral. Without the ability to access the DIP Facility and use Cash Collateral as provided for in this Interim Order, the Debtors, their estates, and their creditors would suffer immediate and irreparable harm.

(ii)   *No Credit Available on More Favorable Terms.*

In light of the Debtors' facts and circumstances, the Debtors are unable to obtain (a) adequate unsecured credit allowable either (1) under sections 364(b) and 503(b)(1) of the Bankruptcy Code, or (2) under section 364(c)(1) of the Bankruptcy Code, (b) adequate credit secured by (1) a senior lien on unencumbered assets of their estates under section 364(c)(2) of the Bankruptcy Code, and (2) a junior lien on encumbered assets under section 364(c)(3) of the Bankruptcy Code, or (c) secured credit under

section 364(d)(1) of the Bankruptcy Code from sources other than the DIP Lenders on terms more favorable than the terms of the DIP Facility. In light of the Debtors' facts and circumstances, the only viable source of secured credit available to the Debtors, other than the use of Cash Collateral, is the DIP Facility. The Debtors require both additional financing under the DIP Facility and the continued use of Cash Collateral under the terms of this Interim Order to satisfy their postpetition liquidity needs.

(iii)    *Willingness to Provide Financing.*

The DIP Lenders have indicated a willingness to provide financing to the Debtors and the First Lien Secured Parties have indicated a willingness to consent to the Debtors' use of Cash Collateral and Prepetition Collateral, subject to: (a) the entry by the Court of this Interim Order and the Final Order, as applicable; (b) approval by the Court of the terms and provisions of the DIP Facility and the DIP Documents; and (c) entry of findings by the Court that such financing is essential to the Debtors' estates, that the DIP Lenders are extending postpetition credit to the Debtors pursuant to the DIP Documents and this Interim Order in good faith, and that the claims, superpriority claims, security interests and liens, and other protections granted pursuant to this Interim Order and the DIP Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument, or reconsideration of this Interim Order or any other order.

(iv)    *Security Interests and Liens Are Appropriate.*

The security interests and liens granted pursuant to this Interim Order to the DIP Agent, for the benefit of the DIP Secured Parties, are appropriate under section 364(d) of the Bankruptcy Code because, among other things: (a) such security interests and liens do not impair the interests of any holder of a valid, perfected, prepetition security interest or lien in the property of the Debtors' estates, (b) the holders of such valid, perfected, prepetition security interests and liens have consented to the security interests and priming liens granted pursuant to this Interim Order to the DIP Agent, for the benefit of the DIP Secured Parties, and/or (b) the interests of any holder of a valid, perfected, prepetition security interest or lien are otherwise adequately protected.

(v)    *Adequate Protection.*

The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code, to receive adequate protection ("**Adequate Protection**") against the diminution in value of their respective interests in the Prepetition Collateral, as set forth herein.

(vi)    *New Loans.*

The DIP Facility constitutes new loans and financial accommodations, separate and distinct from the loans and financial accommodations provided prior to the Petition Date under the Prepetition Financing Documents, and the proceeds of the DIP Facility and Cash Collateral may only be borrowed and used in accordance with the terms of this Interim Order and the DIP Documents.

(vii)   *Good Faith*

The Debtors, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties have negotiated the terms and provisions of the DIP Documents (including the Debtors' continued use of the Prepetition Collateral, including Cash Collateral) and this Interim Order in good faith and at arm's length, and any credit extended and loans made to the Debtors pursuant to this Interim Order shall be, and hereby are, deemed to have been extended, issued, or made, as the case may be, in "good faith" within the meaning of sections 363(m) and 364(e) of the Bankruptcy Code.

(viii)  *Notice.*

Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier, or hand delivery, to certain parties in interest. The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the relief set forth in this Interim Order.

(ix)    *Immediate Entry.*

The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent entry of this Interim Order, the Debtors' businesses, properties, and estates will be immediately and irreparably harmed. The Court concludes that immediate entry of this Interim Order is in the best interest of the Debtors' and their respective estates and creditors.

Based upon the foregoing findings and conclusions, the Motion, and the record made before the Court with respect to the Motion at the Interim Hearing and otherwise, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      <u>Motion Approved</u>.    The Motion is hereby granted on an interim basis in accordance with and subject to the terms and provisions set forth in this Interim Order and the DIP Documents.   All objections to the interim relief sought in the Motion to the extent not withdrawn or resolved are hereby overruled on the merits.

2.      <u>Authorization of the DIP Facility</u>.

(a)      The DIP Facility is hereby approved.  The Debtors are hereby expressly and immediately authorized to effect the DIP Facility, to execute, deliver, and perform under the DIP Documents, and to borrow, incur, guarantee, perform, and pay the DIP Obligations, in each case, in accordance with and subject to the terms of this Interim Order and the DIP Documents, and to execute, deliver, and perform under any and all other instruments, certificates, agreements, and documents that may be requested by the DIP Agent or the DIP Lenders or that may be required, necessary, or prudent for the performance by the applicable Debtor(s) with respect to the DIP Facility or the creation and perfection of the DIP Liens (as defined herein). The DIP Documents represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates, and the DIP Obligations shall be due and payable, in each case, in accordance with the terms of this Interim Order and the DIP Documents.  The DIP Credit Agreement, substantially in the form annexed hereto as <u>Exhibit 1</u>, and the other DIP Documents are hereby approved as to both form and content on an interim basis.

(b)      The Debtors acknowledge, represent, stipulate, and agree, and the Court hereby finds and orders, that:

(i)

(ii)      in entering into the DIP Documents and obtaining the use of Cash Collateral, and as consideration therefor and for the other accommodations and agreements of the DIP Secured Parties reflected herein and in the DIP Documents, the Debtors hereby agree that until such time as all of the DIP Obligations are indefeasibly paid in full, in cash, on a final basis, and the DIP Credit Agreement and DIP Documents are terminated in accordance with the terms thereof, the Debtors shall not in any way prime or seek to prime the DIP Obligations, the DIP Liens, or the DIP Superpriority Claims (as defined herein) provided to the DIP Lenders under this Interim Order by offering a subsequent lender

or a party in interest a superior or *pari passu* lien or administrative expense pursuant to sections 105(a), 326, 328, 330, 331, 364(c), 364(d), 503, 506, 507, 546(c), 552(b), 726, or 1114 of the Bankruptcy Code or otherwise or acquiescing thereto except as expressly authorized in the DIP Credit Agreement; and

(iii)    each Debtor is jointly and severally liable for, and hereby absolutely and unconditionally guarantees to (A) the DIP Secured Parties and their respective successors and assigns, the full and prompt payment when due (whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter) and performance of, all DIP Obligations owed or hereafter owing to the DIP Secured Parties by each other Debtor and (B) the Prepetition Secured Parties and their respective successors and assigns, the full and prompt payment when due and performance of, all obligations hereunder, including with respect to the Adequate Protection granted to the Prepetition Secured Parties. Each Debtor agrees that (A) its guarantee obligation hereunder shall be, and is, absolute and unconditional for all purposes in these Chapter 11 Cases and is a present and continuing guaranty of payment and performance and not of collection, and (B) its obligations under this Interim Order and any DIP Document shall not be discharged until the indefeasible payment and performance, in full in cash, of the DIP Obligations and the other obligations hereunder, including with respect to the Adequate Protection granted to the Prepetition Secured Parties, as applicable, and the termination of the lending commitments under the DIP Documents.

3.    <u>Authorization of the Interim Financing</u>.  To prevent immediate and irreparable harm to the Debtors' estates, the Debtors are hereby immediately authorized to borrow under the DIP Facility up to an aggregate principal amount of $15 million, including up to $5 million for letters of credit, subject to the terms and conditions set forth in this Interim Order and the DIP Documents; *provided* that the amount of the DIP Facility shall be reduced by a reserve for the amount of the Carve-Out (as defined below).

4.    <u>DIP Obligations</u>.  The DIP Documents evidence the DIP Obligations, and are valid, binding, and enforceable against the Debtors, their estates, and any successors or assigns thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases, or in

any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter 11 Cases (collectively, the "**Successor Cases**"), and their creditors and other parties in interest, in each case, in accordance with the terms of this Interim Order and the DIP Documents.  No obligation, payment, transfer, or grant of collateral security hereunder or under the DIP Documents (including any DIP Obligation or DIP Lien and including in connection with any Adequate Protection provided to the Prepetition Secured Parties hereunder) shall be stayed, restrained, voidable, avoidable, or recoverable, under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaim, cross-claim, defense, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

5.      <u>DIP Liens</u>.  In respect of the DIP Obligations under the DIP Credit Agreement, the other DIP Documents, and this Interim Order, the DIP Agent, for the benefit of the DIP Secured Parties, shall have and is hereby granted, effective as of the Petition Date, with respect to the Debtors, their estates, and all DIP Collateral (as defined below), the following liens:

(a)      a first priority, priming security interest in and lien pursuant to Bankruptcy Code section 364(d)(1) on all encumbered property of the Debtors and their estates (the "**Section 364(d)(1) Liens**"), which Section 364(d)(1) Liens shall be senior to any existing liens or claims, subject only to (i) the Carve-Out, (ii) valid, perfected, and non-avoidable liens on property of a Debtor that are in existence on the Petition Date, other than the First Priority Prepetition Liens and the Second Priority Prepetition Liens, and (iii) valid and non-avoidable liens on property of a Debtor that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (the foregoing clauses (ii) and (iii) being referred to collectively as the "**Permitted Prior Liens**");

(b)     a first priority security interest in and lien pursuant to Bankruptcy Code section 364(c)(2) on all unencumbered property of the Debtors (the "**Section 364(c)(2) Liens**"), including, subject to entry of the Final Order, the proceeds and property recovered in respect of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under chapter 5 of the Bankruptcy Code, including sections 544, 545, 547, 548, and 550 or any other similar state or federal law (collectively, the "**Avoidance Action Proceeds**"), which Section 364(c)(2) Liens shall be subject only to the Carve-Out; and

(c)     a junior security interest in and lien pursuant to Bankruptcy Code section 364(c)(3) on all property of the Debtors and their estates that is subject to a Permitted Prior Lien (the "**Section 364(c)(3) Liens**"), which Section 364(c)(3) Liens are also subject to the Carve-Out. The Section 364(d)(1) Liens, Section 364(c)(2) Liens, and Section 364(c)(3) Liens shall be collectively referred to as the "**DIP Liens**.").

For the avoidance of doubt, the DIP Liens shall be senior in all respects to the First Priority Prepetition Liens and the Second Priority Prepetition Liens.

6.     <u>DIP Collateral</u>.

(a)     The DIP Liens of the DIP Agent, for the benefit of the DIP Secured Parties, under the DIP Documents and as approved and perfected by this Interim Order include, *inter alia*, liens upon, and security interests in, (i) all of those items and types of assets and properties of each of the Debtors (whether arising prepetition or postpetition) in which security interests may be created under Article 9 of the Uniform Commercial Code, (ii) all of those items and types of assets and properties of each of the Debtors (whether arising prepetition or postpetition) not governed by Article 9 of the Uniform Commercial Code, including, without limitation, licenses issued by any federal or state regulatory authority, any leasehold or other real property interests, and commercial tort claims of the Debtors, (iii) any and all other assets and properties of each of the Debtors (whether arising prepetition or postpetition) of any nature or form, and (iv) the products, rents, offspring, profits, and proceeds of any of the foregoing. All of the foregoing is hereinafter referred to as the "**DIP Collateral**." None of the DIP Obligations, DIP Liens, or DIP Superpriority Claims shall (1) be subject to or *pari passu* with any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, (2) be subject to or *pari passu* with any intercompany claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, (3) be subject to sections 510, 549, or 550 of the Bankruptcy Code, or (4) hereafter be subject to, subordinated to, or made *pari passu* with any other lien, security interest, or claim under sections

361, 363, or 364 of the Bankruptcy Code or otherwise, except as expressly provided in this Interim Order.

(b)     Notwithstanding any provision in the preceding paragraph or elsewhere in this Interim Order or the DIP Documents to the contrary, in no event is any Building (as defined in the applicable Flood Insurance Regulations) included in the definition of "DIP Collateral" and no Building or *Manufactured (Mobile) Home (as defined in the applicable Flood Insurance Regulations)* is hereby encumbered by, or subject to any lien or security interest arising under, this Interim Order or the DIP Documents. As used herein, "**Flood Insurance Regulations**" shall mean (i) the National Flood Insurance Act of 1968, (ii) the Flood Disaster Protection Act of 1973, (iii) the National Flood Insurance Reform Act of 1994 (amending 42 USC § 4001, *et seq.*), and (iv) the Flood Insurance Reform Act of 2004, in each case as now or hereafter in effect or any successor statute thereto and including any regulations promulgated *thereunder.*

7.      <u>DIP Superpriority Claims</u>.  In respect of the DIP Obligations under the DIP Credit Agreement, the other DIP Documents, and this Interim Order, the DIP Agent, for the benefit of the DIP Secured Parties, shall have and is hereby granted, effective as of the Petition Date, with respect to each of the Debtors, their estates, and all of their assets and properties, the following superpriority claims:

a superpriority administrative expense claim in each of the Chapter 11 Cases or any Successor Cases pursuant to Bankruptcy Code section 364(c)(1) with priority over all other administrative expenses pursuant to the Bankruptcy Code (including the kinds specified in or arising or ordered pursuant to Bankruptcy Code sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 552(b), 726, and 1114 or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment), which superpriority claims of the DIP Agent and DIP Secured Parties shall be subordinate only to the Carve-Out (the "**DIP Superpriority Claims**"). The DIP Superpriority Claims shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all assets and properties of each of the Debtors.  Except for the Carve-Out, the DIP Superpriority Claims shall not be made subject to or *pari passu* with any claim heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their estates, and any successors or assigns thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any Successor Cases.

8.    <u>Payment of DIP Fees and Expenses</u>.

    (a)    The DIP Obligations shall bear interest at the applicable rate (including any applicable default rate after the occurrence of an Event of Default) set forth in the DIP Documents, and be due and payable in accordance with this Interim Order and the DIP Documents, in each case without further notice, motion, or application to, order of, or hearing before, this Court.

    (b)    The Debtors shall pay to the DIP Agent, for itself and, if applicable, the ratable benefit of the DIP Secured Parties, the fees payable under the terms of the DIP Documents, including the following: (i) the DIP Agent's fees, (ii) the DIP Lenders' fees, and (iii) the Unused Commitment Fees, all as set forth in the DIP Documents, in each case whether or not such amounts are included in the DIP Budget (as defined below) or arose before or after the Petition Date. None of the fees payable pursuant to this subparagraph (b) shall be subject to any other notice or approval by this Court.

    (c)    The Debtors shall pay the reasonable prepetition and postpetition fees and expenses of the attorneys and advisors for the DIP Agent and for each DIP Secured Party that is a party to the DIP Credit Agreement on the Closing Date as provided under the DIP Documents. Invoices supporting such fees and expenses shall be submitted to counsel for the Debtors, with copies to the Office of the United States Trustee for Region 7 (the "**U.S. Trustee**"), counsel for the First Lien Agent, counsel for the Second Lien Indenture Trustee, and counsel for any Creditors' Committee (invoices may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney client privilege or of any benefits of the attorney work product doctrine). No attorney or advisor to the DIP Agent or DIP Secured Parties shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court. Any and all fees, costs, and expenses paid prior to the Petition Date by any of the Debtors to the DIP Agent or DIP Secured Parties in connection with or with respect to the DIP Facility, DIP Credit Agreement, or other DIP Documents are hereby approved in full.

9.    <u>No Obligation to Extend Credit</u>. The DIP Secured Parties shall have no obligation to make any loan, advance, or other extension of credit under the DIP Documents unless all of the conditions precedent to the making of such extension of credit under the DIP Documents and this Interim Order have been satisfied in full or waived by the DIP Agent, DIP

Lenders, and the Issuing Bank, as applicable, in accordance with the terms of the DIP Documents.  The DIP Facility may be utilized to fund working capital requirements, operating expenses, and capital expenditures, subject to and in accordance with the terms of the DIP Budget, the DIP Documents, and this Interim Order.

10.     <u>Authorization to Use Prepetition Collateral, Including Cash Collateral</u>.   The Debtors are authorized to use Cash Collateral, subject to and as set forth in the DIP Budget, this Interim Order, and the DIP Documents.  In no event shall the Debtors be authorized to use Cash Collateral or the DIP Facility for any purpose or under any terms other than those set forth in the DIP Budget, this Interim Order, and the DIP Documents.  The Debtors are further authorized to use the other Prepetition Collateral during the period from the Petition Date through and including the Termination Date in accordance with the terms and conditions of this Interim Order.

11.     <u>Adequate Protection</u>.   In consideration for the Debtors' use of the Prepetition Collateral (including Cash Collateral), the Prepetition Secured Parties shall receive the following adequate protection:

        (a)     *First Lien Secured Parties' Adequate Protection Liens.*

        As adequate protection, the First Lien Agent, in accordance with sections 361, 363(e), and 364(d) of the Bankruptcy Code, is hereby granted, for the benefit of the First Lien Secured Parties, valid, binding, enforceable, and automatically perfected security interests and replacement liens (the "**First Lien Adequate Protection Liens**") upon all of the Debtors' right, title, and interest in any assets and properties of each of the Debtors, whether arising prepetition or postpetition, of any nature whatsoever, wherever located, in each case to secure the First Lien Obligations against the diminution in the value of the Prepetition Collateral, if any, subsequent to the Petition Date, including any such diminution by reason of (i) the reduction of the Prepetition Collateral as a consequence of the priming by the DIP Obligations, (ii) depreciation, use, sale, loss, or decline in market value or otherwise of the Prepetition Collateral, and (iii) the sum of the aggregate amount of all Cash Collateral and the aggregate value of all

non-cash Prepetition Collateral, which is applied in payment of the DIP Obligations or any other obligations other than the First Lien Obligations. The First Lien Adequate Protection Liens are subject and subordinate to (1) the Carve-Out, (2) the DIP Obligations, the DIP Liens, and the DIP Superpriority Claims, and (3) the Permitted Prior Liens, and are senior to the Second Priority Liens, the Second Lien Adequate Protection Liens (as defined below), and the Second Lien Adequate Protection Superpriority Claims (as defined below). The First Lien Adequate Protection Liens shall not (x) be subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, (y) subject to any intercompany claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, or (z) hereafter be subordinated to or made *pari passu* with any other lien or security interest under sections 361, 363, or 364 of the Bankruptcy Code or otherwise except as expressly provided in this Interim Order and the DIP Documents.

(b)     *Payment of Fees and Expenses.*  The Debtors shall pay in cash, without the need for the filing of formal fee applications: (i) immediately upon entry of this Interim Order, the reasonable professional fees, expenses, and disbursements (including, but not limited to, the fees, expenses, and disbursements of counsel and third-party consultants, including financial advisors and auditors) incurred by the First Lien Agent and the First Lien Lenders under the First Lien Loan Documents arising prior to the Petition Date; and (ii) the reasonable professional fees, expenses, and disbursements (including, but not limited to, the fees, expenses, and disbursements of counsel and third-party consultants, including financial advisors and auditors) incurred by the First Lien Agent and the First Lien Lenders under the First Lien Loan Documents arising subsequent to the Petition Date.

(c)     *Interest Payments to First Lien Secured Parties.*  The Debtors shall pay, in cash, interest to the First Lien Secured Parties at the non-default rate at such times as provided for in and in accordance with the terms of the First Lien Loan Documents.  Notwithstanding the foregoing, the First Lien Secured Parties reserve the right to seek interest at the default rate, subject to the right of the Debtors to object thereto. In addition, all letter of credit fees provided for in the First Lien Loan Documents, whether payable prior to or after the Petition Date, shall be payable in cash.

(d)     *First Lien Secured Parties' Superpriority Claims.*  Pursuant to section 507(b) of the Bankruptcy Code, the First Lien Secured Parties, effective as of the entry of this Interim Order, are hereby further granted an allowed superpriority administrative expense claim in each of the Chapter 11 Cases or any Successor Cases (collectively, the "**First Lien Superpriority Claims**"), for the diminution in the value of the Prepetition Collateral, if

18

any, subsequent to the Petition Date, which claims shall only be junior to the DIP Superpriority Claims and the Carve-Out, but shall be senior to and have priority over any other administrative expense claims, unsecured claims, and all other claims against the Debtors or their estates in any of the Chapter 11 Cases or any Successor Cases, at any time existing or arising, of any kind or nature whatsoever.  The First Lien Superpriority Claims shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all assets and properties of each of the Debtors.  Except for the DIP Superpriority Claims and the Carve-Out, the First Lien Superpriority Claims shall not be made subject to, or *pari passu* with, any claim heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their estates, and any successors or assigns thereto, including, without limitation, any trustee appointed in any of the Chapter 11 Cases or any Successor Cases.

(e)     *Adequate Protection Reservation.*  The receipt by the First Lien Secured Parties of the adequate protection provided herein shall not be deemed an admission that the interests of the First Lien Secured Parties are adequately protected.  Further, this Interim Order shall not prejudice or limit the rights of the First Lien Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection, without prejudice to the Debtors' rights to contest the seeking of such relief by the First Lien Secured Parties.

(f)     *Second Lien Secured Parties' Adequate Protection Liens.*  As adequate protection, the Second Lien Indenture Trustee, in accordance with sections 361, 363(e), and 364(d) of the Bankruptcy Code, is hereby granted, for the benefit of the Second Lien Secured Parties, valid, binding, enforceable, and automatically perfected security interests and replacement liens (the "**Second Lien Adequate Protection Liens**" and, together with the First Lien Adequate Protection Liens, the "**Adequate Protection Liens**") upon all of the Debtors' right, title, and interest in any assets and properties of each of the Debtors, whether arising prepetition or postpetition, of any nature whatsoever, wherever located, in each case to secure the Second Lien Obligations against the diminution in the value of the Prepetition Collateral, if any, subsequent to the Petition Date, including any such diminution by reason of (i) the reduction of the Prepetition Collateral as a consequence of the priming by the DIP Obligations, (ii) depreciation, use, sale, loss, or decline in market value or otherwise of the Prepetition Collateral, and (iii) the sum of the aggregate amount of all Cash Collateral and the aggregate value of all non-cash Prepetition Collateral, which is applied in payment of the DIP Obligations or any other obligations other than the Second Lien Obligations.  The Second Lien Adequate Protection Liens are subject and subordinate to (1) the Carve-Out, (2) the DIP Obligations, DIP Liens, and DIP Superpriority Claims, (3) the First Lien

Adequate Protection Liens and the First Lien Superpriority Claims, (4) the First Priority Prepetiton Liens, and (v) the Permitted Prior Liens. The Second Lien Adequate Protection Liens shall not (x) be subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, (y) subject to any intercompany claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, or (z) hereafter be subordinated to or made *pari passu* with any other lien or security interest under sections 361, 363, or 364 of the Bankruptcy Code or otherwise except as expressly provided in this Interim Order and the DIP Documents.

(g)     *Second Lien Secured Parties Superpriority Claims.*  Pursuant to section 507(b) of the Bankruptcy Code, the Second Lien Secured Parties, effective as of the entry of this Interim Order, are hereby further granted an allowed superpriority administrative expense claim in each of the Chapter 11 Cases or any Successor Cases (collectively, the "**Second Lien Superpriority Claims**" and, together with the First Lien Superpriority Claims, the "**Adequate Protection Superpriority Claims**"), for the diminution in the value of the Prepetition Collateral, if any, subsequent to the Petition Date, which claims shall be junior to the DIP Superpriority Claims, the First Lien Superpriority Claims, any claims arising under the First Lien Loan Documents, and the Carve-Out, and subject in all respects to the Intercreditor Agreement, but shall be senior to and have priority over any other administrative expense claims, unsecured claims, and all other claims against the Debtors or their estates in any of the Chapter 11 Cases or any Successor Cases, at any time existing or arising, of any kind or nature whatsoever. The Second Lien Superpriority Claims shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all assets and properties of each of the Debtors. Except for the DIP Superpriority Claims, the First Lien Superpriority Claims, any claims arising under the First Lien Loan Documents, and the Carve-Out, the Second Lien Superpriority Claims shall not be made subject to, or *pari passu* with, any claim heretofore or hereinafter granted or created in any of the Chapter 11 Cases or any Successor Cases.

12.     Payment of Collateral Sale Proceeds to First Lien Secured Parties and DIP Secured Parties.  Notwithstanding the requirement in the DIP Credit Agreement to prepay the DIP Obligations first, any proceeds required to be paid in accordance with section 3.04(c) of the DIP Credit Agreement for application to the DIP Obligations shall:  (a) with respect to all or any portion of the Prepetition Collateral, (i) first, repay the First Lien Obligations until 50% of all

such First Lien Obligations outstanding as of the Petition Date are indefeasibly satisfied in full, in cash, (ii) second, repay the DIP Obligations until such obligations are indefeasibly satisfied in full, in cash, and (iii) third, repay all First Lien Obligations not repaid pursuant to clause (a)(i) until such First Lien Obligations are indefeasibly satisfied in full, in cash; and (b) with respect to all or any portion of the DIP Collateral that is not otherwise Prepetition Collateral, repay the DIP Obligations until such obligations are indefeasibly satisfied in full in cash.  Unless otherwise agreed to by the Required Lenders (as defined in the First Lien Credit Agreement) or the Majority Lenders (unless there are three (3) DIP Lenders or less, in which case, all of the DIP Lenders shall be required to agree), as applicable, in writing, all sales and other dispositions (including casualty and condemnation events) of the Prepetition Collateral and/or the DIP Collateral, *shall be subject to the restrictions set forth in Section 9.12 of the DIP Credit Agreement,* whether or not the DIP Credit Agreement is still in effect.

13.   <u>Amendments</u>.  Each of the Debtors is expressly authorized and empowered to enter into amendments or other modifications of the DIP Credit Agreement and/or any other DIP Document without further order of the Court, in each case, in such form as the DIP Agent and the DIP Lenders may agree with the Debtors in writing; *provided*, that notice of any material modification or amendment shall be provided to the U.S. Trustee, counsel for the First Lien Agent, counsel for the Second Lien Indenture Trustee, counsel for the ad hoc Committee of Senior Unsecured Noteholders, and counsel for the Creditors' Committee, which parties may object to such modification or amendment, in writing, within three (3) Business Days from the date of the transmittal of such notice (which, to the extent such contact information for such parties is known to the Debtors, shall be transmitted by fax or e-mail, and, if not known, by overnight mail); *provided further*, that, notwithstanding the

foregoing, any modification of the DIP Documents that materially increases the financial obligations on the Debtors shall require Court approval; and *provided further*, that if such objection is timely provided, then such modification or amendment shall be permitted only pursuant to an order of the Court, the entry of which may be sought on an expedited basis.

14.   <u>DIP Budget Covenants</u>.

(a)   *Initial DIP Budget.*  The Debtors have prepared and delivered to the DIP Agent, the DIP Lenders, and the First Lien Agent, and the DIP Agent, the DIP Lenders, and the First Lien Agent have approved, an Initial Budget of the Debtors, a copy of which is attached hereto as <u>Exhibit 2</u>, which reflects the Debtors' projected cash receipts and all projected necessary and required disbursements for each calendar week during the period from the Petition Date through and including the end of the thirteenth (13th) calendar week following the Petition Date.

(b)   *Updated DIP Budget.*  On or before 5:00 pm, New York City time, on March 3, 2017, and on the date of each four-week anniversary of such date occurring thereafter (each, a "**<u>Reporting Date</u>**"), the Debtors will provide to the DIP Agent and the First Lien Agent a new updated thirteen (13)-week budget covering the 13-week period commencing on the applicable Reporting Date, which update shall contain line items substantially similar to the Initial Budget and all other information reasonably requested by the DIP Agent, the Majority Lenders, and/or the First Lien Agent, in each case, in form and substance satisfactory to the DIP Agent, the Majority Lenders and the First Lien Agent (the Initial Budget and each such updated 13-week budget, as applicable, the "**<u>DIP Budget</u>**"). Within five Business Days after receipt by the DIP Agent, the Majority Lenders, and the First Lien Agent of each new DIP Budget, the  Agent (on its own behalf and as directed by the DIP Agent and the First Lien Agent shall deliver notice to the Borrower indicating whether such updated DIP Budget is in form and substance satisfactory to the DIP Agent, the Majority Lenders, and the First Lien Agent, as applicable; *provided* that (i) if the DIP Agent and the First Lien Agent do not deliver such notice to the Borrower within such five-Business Day period, such DIP Budget update shall then become the "DIP Budget" for all purposes herein on the day immediately following such five-Business Day period and (ii) if DIP Agent or the First Lien Agent deliver notice to the Borrower within such five-Business Day period indicating that such update is not in form and substance satisfactory to the DIP Agent, the Majority Lenders, and the First Lien Agent, the most recent preceding DIP Budget shall continue as the then-effective DIP Budget until the day immediately following the

delivery of a Budget update in form and substance satisfactory to the DIP Agent, the Majority Lenders, and the First Lien Agent.

(c)     *DIP Budget Variance.*  On or before 5:00 pm, New York City time, on (i) the first Tuesday (or, if such Tuesday is not a Business Day, the immediately succeeding Business Day) following each Reporting Date (each such Tuesday, a "**Testing Date**") and (ii) the third Tuesday (or, if such Tuesday is not a Business Day, the immediately succeeding Business Day) following each Reporting Date (each such Thursday, an "**Alternate Testing Date**" and, together with each Testing Date, a "**Variance Testing Date**"), in the case of this clause (ii), solely to the extent that any *Loans or Letters of Credit Loans, or Letters of Credit with an aggregate principal face* amount in excess of $1,000,000, are outstanding as of such Alternate Testing Date, or were outstanding at any time since the most recent Reporting Date, and, in each case, commencing with the first such Variance Testing Date to occur after the Interim Facility Effective Date, the Debtors will provide to the DIP Agent and the First Lien Agent a variance report tested as of the most recent Variance Testing Date for the immediately preceding four-week period then ended (each such period, a "**Testing Period**" and each such report, a "**Variance Report**"), in form and substance reasonably satisfactory to the DIP Agent, the Majority Lenders, and the First Lien *Agent and containing the details set forth in Section 8.18 of the DIP Credit* Agreement:

    (A)     the aggregate disbursements of the Debtors and aggregate receipts during the applicable Testing Period; and

    (B)     any variance (whether positive or negative, expressed as a percentage) between the aggregate disbursements made during such Testing Period by the Debtors against the aggregate disbursements for the Testing Period, as set forth in the applicable DIP Budget, the amount of any carryforward applied to such variance (to the extent such carryforward is permitted by Section 9.21 of the DIP Credit Agreement) and the amount of any unused carryforward as of such Variance Test Date (to the extent such carryforward is permitted by Section 9.21 of the DIP Credit Agreement).

(d)     *Permitted Variances.*  As of any Testing Date, for the Testing Period ending on such Testing Date, the aggregate disbursements made by the Debtors during such Testing Period should not be greater than 115% of the aggregate disbursements for the Debtors set forth in the Budget for such Testing Period (after giving effect to the accrued and unused portion of the most recent rolling 4-week carryover).

(e)     *Reporting.*   No later than 5:00 p.m. (prevailing Eastern Time) on each Tuesday, commencing with the first such Tuesday to occur after the Interim Facility Effective Date, the Debtors shall provide to the DIP Agent, the DIP Lenders, and the First Lien Agent a report showing actual receipts and disbursements through the prior week in the format of the DIP Budget, and, promptly upon request of the DIP Agent or the First Lien Agent, an explanation of any variance to the DIP Budget.

15.     <u>Modification of Automatic Stay</u>.   The automatic stay imposed by section 362(a) of the Bankruptcy Code is hereby modified as necessary to permit:  (a) the Debtors to grant the DIP Liens and the DIP Superpriority Claims, and to perform any and all acts as the DIP Agent may request to assure the perfection and priority of the DIP Liens; (b) the Debtors to grant the First Lien Adequate Protection Liens, the First Lien Superpriority Claims, the Second Lien Adequate Protection Liens, and the Second Lien Superpriority Claims, in each case as set forth herein, and to perform any and all acts to ensure that the First Lien Adequate Protection Liens and the Second Lien Adequate Protection Liens are perfected and maintain the priority set forth herein; (c) the Debtors to incur any and all liabilities and obligations, including all the DIP Obligations and the Adequate Protection obligations, as contemplated under this Interim Order and the DIP Documents; (d) the Debtors to pay any and all amounts as provided herein and in the DIP Documents; (e) the DIP Secured Parties and the First Lien Secured Parties to retain and apply payments made in accordance with the DIP Documents and this Interim Order; (f) subject to paragraph 22 hereof, the DIP Agent, on behalf of the DIP Secured Parties, and the First Lien Agent, on behalf of the First Lien Secured Parties, to exercise the rights and remedies provided for under this Interim Order, the DIP Documents, and the First Lien Loan Documents, as applicable; and (g) the implementation of any and all of the other terms, rights, benefits, privileges, remedies, and provisions of this Interim Order and the DIP Documents.

16.      <u>Perfection of DIP Liens and Postpetition Liens</u>.  The (a) DIP Liens granted to the
DIP Agent, for the benefit of the DIP Secured Parties pursuant to this Interim Order and the DIP
Documents, and the (b) Adequate Protection Liens granted pursuant to this Interim Order to the
Prepetition Secured Parties shall be valid, enforceable, and perfected by operation of law upon
entry of this Interim Order by the Court without any further action by any party.  Neither the DIP
Secured Parties in respect of the DIP Liens, nor the Prepetition Secured Parties in respect of the
Adequate Protection Liens, shall be required to enter into or to obtain any security agreements,
control agreements, landlord waivers, mortgagee waivers, bailee waivers, or warehouseman
waivers or to give, file, or record any UCC-1 financing statements, mortgages, deeds of trust,
leasehold mortgages, notices to account debtors or other third parties, notices of lien, or similar
instruments in any jurisdiction (including filings with the United States Patent and Trademark
Office, the United States Copyright Office, or any similar agency in respect of trademarks,
copyrights, trade names, or patents with respect to intellectual property) (collectively, the
"**<u>Perfection Documents</u>**"), or obtain consents from any licensor or similarly situated party in
interest, or take any other action to validate, record, or perfect the DIP Liens granted under the
DIP Documents and/or this Interim Order and the Adequate Protection Liens granted under this
Interim Order and approved hereby, all of which are automatically and immediately perfected by
the entry of this Interim Order.  If the DIP Agent, DIP Lenders, or the Prepetition Secured
Parties, independently or collectively, in each of their sole discretion, choose to obtain, enter
into, give, record, or file any Perfection Documents, (x) all such Perfection Documents shall be
deemed to have been obtained, entered into, given, recorded, or filed, as the case may be, as of
the Petition Date, (y) no defect in any such act shall affect or impair the validity, perfection,
priority, or enforceability of the DIP Liens and Adequate Protection Liens, and (z) such liens

shall have the relative priority set forth herein notwithstanding the timing of the execution, delivery, or filing of any such Perfection Documents. In lieu of optional recording or filing any Perfection Documents, the DIP Agent, DIP Lenders, the First Lien Agent, and the Second Lien Indenture Trustee may, in each of their sole discretion, choose to record or file a true and complete copy of this Interim Order in any place that any Perfection Document would or could be recorded or filed (which may include a description of the collateral appropriate to be indicated in a recording or filing at such place of recording or filing), and such recording or filing by the DIP Agent, the DIP Lenders, the First Lien Agent, and the Second Lien Indenture Trustee shall have the same effect as if such Perfection Document had been filed or recorded as of the Petition Date. In addition, the DIP Agent may, in its sole discretion, at the Debtors' expense, require the Debtors to execute, deliver, file, or record any Perfection Document. The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Agent all Perfection Documents as the DIP Agent may reasonably request.

17.     Insurance Proceeds and Policies.  Other than as provided for in paragraph 12, (a) any proceeds recovered or received in respect of any insurance policies that constitute or cover Prepetition Collateral shall (i) first, repay the First Lien Obligations until 50% of all such First Lien Obligations outstanding as of the Petition Date are indefeasibly satisfied in full, in cash, (ii) second, repay the DIP Obligations until such obligations are indefeasibly satisfied in full, in cash, and (iii) third, repay all First Lien Obligations not repaid pursuant to clause (a)(i) until such First Lien Obligations are indefeasibly satisfied in full, in cash; and (b) with respect any proceeds recovered or received in respect of any insurance policies that constitute or cover DIP Collateral that is not otherwise Prepetition Collateral, repay the DIP Obligations until such obligations are indefeasibly satisfied in full in cash.  Upon entry of this Interim Order and to the

fullest extent provided by applicable law, the DIP Agent (on behalf of the DIP Secured Parties) and the First Lien Agent (on behalf of the First Lien Secured Parties) shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

18.    Access to DIP Collateral.   Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Agent, exercisable on behalf of the DIP Secured Parties, contained in this Interim Order or the DIP Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Documents, upon written notice to the landlord of any leased premises that an Event of Default or the Termination Date has occurred and is continuing under the DIP Documents, the DIP Agent may, subject to the applicable notice provisions, if any, in this Interim Order and any separate agreement by and between such landlord and the DIP Agent, enter upon any leased premises of the Debtors or any other party for the purpose of exercising any remedy with respect to DIP Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder, *provided* that the DIP Agent shall only be obligated to pay rent of the Debtors that first accrues after the DIP Agent's written notice referenced above and that is payable during the period of such occupancy by the DIP Agent, calculated on a daily per diem basis.  Nothing herein shall require the DIP Agent to assume any lease as a condition to the rights afforded to the DIP Agent in this paragraph.  In addition, any landlord's lien, right of distraint or levy, security interest, or other interest that any landlord, warehousemen, or landlord's mortgagee may have in any DIP Collateral of the Debtors located on such leased premises, to the extent the same is not void under section 545 of the Bankruptcy Code, is hereby subordinated to the DIP Obligations, DIP Liens, and DIP Superpriority Claims.

19.   <u>Cash Management System</u>.   The Debtors shall maintain the cash management system in effect as of the Petition Date, as modified by this Interim Order and any order of the Court authorizing the continued use of the cash management system.

20.   <u>Disposition of DIP Collateral and Prepetition Collateral</u>.   The Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral or the Prepetition Collateral (or enter into any binding agreement to do so) other than as permitted by the DIP Documents and this Interim Order.

21.   <u>Milestones</u>.   As a condition to the DIP Facility and the use of Cash Collateral, the Debtors shall comply with the following requirements by the applicable date set forth below (collectively, the "**Milestones**"):

(a)   On or before the date that is 90 days following the Petition Date, the *Debtors shall file (i) a plan of reorganization, which shall be in form and* substance acceptable to the Majority Lenders and the Required Lenders (as defined in the First Lien Credit Agreement), as confirmed by the DIP Agent and the First Lien Agent, respectively, in writing (the "**Approved Plan**") and (ii) a disclosure statement for the Approved Plan, which shall be in form and substance acceptable to the Majority Lenders and the Required Lenders (as defined in the First Lien Credit Agreement), as confirmed by the DIP Agent and the First Lien Agent, respectively, in writing (the "**Approved Disclosure Statement**");

(b)   On or before the date that is 135 days following the Petition Date, the Bankruptcy Court shall have entered an order approving the Approved Disclosure Statement, which order shall be in form and substance acceptable to Majority Lenders and the Required Lenders (as defined in the First Lien Credit Agreement), as confirmed by the DIP Agent and the First Lien Agent, respectively, in writing;

(c)   On or before the date that is 195 days following the Petition Date, the Bankruptcy Court shall have entered an order confirming the Approved Plan, which order shall be in form and substance acceptable to Majority Lenders and the Required Lenders (as defined in the First Lien Credit Agreement), as confirmed by the DIP Agent and the First Lien Agent, respectively, in writing; and

(d)     On or before the date that is 225 days following the Petition Date, the Approved Plan shall become effective.

For the avoidance of doubt, the failure of the Debtors to comply with any of the Milestones or any other terms of this Interim Order (a) shall constitute an Event of Default under the DIP Credit Agreement and hereunder, (b) subject to the expiration of the Remedies Notice Period (as defined below), result in the automatic termination of the Debtors' authority to use Cash Collateral under this Interim Order, and (c) permit the DIP Agent, on behalf of the DIP Secured Parties, and the First Lien Agent, on behalf of the First Lien Secured Parties, subject to paragraph 22, to exercise the rights and remedies provided for in this Interim Order and the DIP Documents, as applicable.

22.     _Rights and Remedies_.  Upon the occurrence of an Event of Default (under the DIP Documents or hereunder) or the Termination Date (a) without further notice, motion, or application to, order of, or hearing before this Court, the DIP Agent, on behalf of the DIP Secured Parties, is granted leave to cease making any loans or extending any financial accommodations to the Debtors and accelerate any or all of the DIP Obligations and declare such DIP Obligations to be immediately due and payable in full, in cash, and the use of Cash Collateral shall automatically terminate; and (b) upon further order of the Court (following an emergency hearing that will be promptly scheduled by the Court),   the DIP Agent, on behalf of the DIP Secured Parties, and the First Lien Agent, on behalf of the First Lien Secured Parties, are granted leave to exercise all other rights and remedies provided for in the DIP Documents, this Interim Order, and applicable law, including, without limitation, disposition of the DIP Collateral.  The First Lien Agent, on behalf of the First Lien Secured Parties, shall be entitled to seek relief from the automatic stay under section 362 of the Bankruptcy Code on no less than five (5) Business Days' notice to exercise all rights and remedies provided for in the First Lien

Loan Documents. The automatic stay imposed by section 362 of the Bankruptcy Code shall be deemed modified and vacated to the extent necessary to permit the exercise of rights and remedies provided for in this paragraph. In any hearing to contest the enforcement of remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default or the Termination Date has occurred, and the Debtors hereby waive their right to and shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights and remedies of the DIP Agent, the other DIP Secured Parties, the First Lien Agent, or the other First Lien Secured Parties, as set forth in this Interim Order, the DIP Documents, or the First Lien Loan Documents, as applicable.

23. <u>Survival</u>. Unless the DIP Agent, the DIP Lenders, the First Lien Agent and the Required Lenders (as defined in the First Lien Credit Agreement) have otherwise agreed in writing, the provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any subsequent order (other than entry of any subsequent Final Order into which it shall merge), and the rights, remedies, powers, privileges, liens, claims, and priorities of the DIP Agent, DIP Lenders, and Prepetition Secured Parties provided for in this Interim Order and in any DIP Document shall not be modified, altered, or impaired in any manner by any order, including any order (a) confirming any plan of reorganization or liquidation in any of the Chapter 11 Cases (and, to the extent not indefeasibly paid in full in cash, the DIP Obligations shall not be discharged by the entry of any such order, or pursuant to section 1141(d)(4) of the Bankruptcy Code, each of the Debtors having hereby waived such discharge); (b) converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Chapter 11 Cases; or (d) entered in any superseding cases under the Bankruptcy Code. The

terms and provisions of this Interim Order, as well as the DIP Obligations, DIP Liens, DIP Superpriority Claims, DIP Documents, Adequate Protection Liens, and Adequate Protection Superpriority Claims, shall continue in full force and effect notwithstanding the entry of any such order, and such rights, claims, and liens shall maintain their priority as provided by this Interim Order and the DIP Documents to the maximum extent permitted by law until all of the DIP Obligations and the Adequate Protection Superpriority Claims are indefeasibly paid in full in cash.

24.     <u>Good Faith</u>.  The DIP Facility, the use of Cash Collateral, and the other provisions of this Interim Order, the DIP Credit Agreement, and the other DIP Documents have been negotiated in good faith and at arm's length among the Debtors, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties, and the extension of the financial accommodations to the Debtors by the DIP Agent, DIP Lenders, and Prepetition Secured Parties pursuant to this Interim Order and the DIP Documents have been and are deemed to be extended in good faith, as that term is used in section 364(e) of the Bankruptcy Code.  The DIP Agent, DIP Lenders, and Prepetition Secured Parties are entitled to, and are hereby granted, the full protections of section 364(e) of the Bankruptcy Code.

25.     <u>Subsequent Reversal or Modification</u>.  If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, that action will not affect (a) the validity of any obligation, indebtedness, or liability under this Interim Order and the DIP Documents by the Debtors prior to the date of receipt of written notice to the DIP Agent, First Lien Agent, and Second Lien Indenture Trustee of the effective date of such action; or (b) the validity and enforceability of any lien, administrative expense, right, or priority authorized or created pursuant to this Interim Order and the DIP Documents, including, without limitation, the

DIP Obligations, DIP Liens, the DIP Superpriority Claims, the Prepetition Secured Obligations, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims. Notwithstanding any such reversal, stay, modification, or vacatur, any postpetition indebtedness, obligation, or liability incurred by the Debtors to the DIP Agent, DIP Lenders, and Prepetition Secured Parties prior to written notice to the DIP Agent, the First Lien Agent, and the Second Lien Indenture Trustee of the effective date of such action, shall be governed in all respects by the original provisions of this Interim Order and the DIP Documents, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits granted pursuant to this Interim Order and the DIP Documents.

26.     Indemnification.  The Debtors shall indemnify the DIP Agent and DIP Secured Parties and their respective affiliates, successors, and assigns and the officers, directors, employees, agents, advisors, controlling persons, and members of each of the foregoing (each, an "**Indemnified Person**") and hold each of them harmless from and against all costs, expenses (including reasonable fees, disbursements, and other charges of counsel) and liabilities of such Indemnified Person arising out of or relating to any claim or any litigation or other proceeding (regardless of whether such Indemnified Person is a party thereto and regardless of whether such matter is initiated by a third party or by the Debtors or any of their affiliates or shareholders) that relates to the DIP Facility or this Interim Order, including the financing contemplated hereby, the Chapter 11 Cases, or any transactions in connection therewith; *provided* that no Indemnified Person will be indemnified for any cost, expense, or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such person's gross negligence or willful misconduct. Nothing herein is meant to limit the scope of any indemnity provided for the benefit of the DIP Agent or the DIP Secured Parties in the DIP

Documents. This paragraph does not apply or otherwise affect any indemnification rights or obligations in respect of the Prepetition Secured Parties under the Prepetition Financing Documents.

27.     <u>Master Proof of Claim</u>. The First Lien Agent on behalf of the First Lien Secured Parties, and the Second Lien Indenture Trustee on behalf of the Second Lien Secured Parties, will not be required to file proofs of claim in the Chapter 11 Cases or any Successor Case for any claim. Notwithstanding any order to the contrary entered by the Court in relation to the establishment of a bar date in the Chapter 11 Cases or any Successor Case, each of the First Lien Agent on behalf of the First Lien Secured Parties, and the Second Lien Indenture Trustee on behalf of the Second Lien Secured Parties shall each be authorized (but not required) in its sole discretion to file a master proof of claim against the Debtors (each, a "**Master Proof of Claim**") on account of their prepetition claims arising under the First Lien Loan Documents and the Second Lien Notes Documents, as applicable, and the First Lien Agent and Second Lien Indenture Trustee shall not be required to file a verified statement pursuant to Bankruptcy Rule 2019. Upon the filing of a Master Proof of Claim against the Debtors, the applicable Prepetition Secured Party and each of its respective successors and assigns shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against the Debtors arising under the relevant Prepetition Financing Documents, and the claims of the Prepetition Secured Party (and its respective successors and assigns) named in the Master Proof of Claim shall be allowed or disallowed as if such entity had filed a separate proof of claim in each Chapter 11 Case or any Successor Cases in the amount set forth opposite each name listed in the Master Proof of Claim. Each of the First Lien Agent and Second Lien Indenture Trustee shall further be authorized to amend its respective Master Proof of Claim from time to time to,

among other things, reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from any transfer of such claims. The provisions set forth in this paragraph and any Master Proof of Claim filed pursuant to the terms hereof are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party in interest or their respective successors in interest, including, without limitation, the rights of each Prepetition Secured Party as the holder of a claim against the Debtors under applicable law, and the numerosity requirements set forth in section 1126 of the Bankruptcy Code.

28.    Carve-Out; Payment of Estate Professionals.

(a)    *Generally*.  The DIP Liens, the DIP Superpriority Claims, the First Priority Prepetition Liens, the Second Priority Prepetition Liens, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims, shall be subject to the payment, without duplication, of the following fees and expenses (the amounts set forth below, together with the limitations set forth therein, collectively, the "**Carve-Out**"): (i) the reasonable fee and expense claims of the respective retained professionals of the Debtors and any official committee that may be appointed in these cases (each, a "**Committee**") that have been approved by this Court at any time during the Chapter 11 Cases pursuant to sections 327, 328, and 1103 of the Bankruptcy Code (the Court-approved professionals of the Debtors and any Committee are collectively referred to as the "**Retained Professionals**"), the reasonable expenses of members of any Committee ("**Committee Member Expenses**", which shall not include legal fees and expenses of such Committee member) which were incurred (A) on and after the Petition Date and before the Carve-Out Trigger Date (as defined herein), and (B) on and after the Carve-Out Trigger Date in an aggregate amount not exceeding $2,500,000 for all Retained Professionals and Committee

Member Expenses, *provided*, that, in each case, such fees and expenses of the Retained Professionals and Committee Member Expenses are ultimately allowed on a final basis by this Court pursuant to sections 330 and 331 of the Bankruptcy Code or otherwise and are not excluded from the Carve-Out under paragraph 28 of this Interim Order, and *provided further*, that nothing herein shall waive the right of any party to object to the allowance of any such fees and expenses; and, *provided further*, that the Carve-Out shall not include any bonus, transaction, success fees, completion fees, substantial contribution fees, or any other fees of similar import of any of the foregoing for Retained Professionals; and (ii) the unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code.  There is no limitation on the obligations of the Debtors and their estates with respect to unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code.

(b)     *Carve-Out Trigger Date*.  As used herein, the term "**Carve-Out Trigger Date**" means the date on which the DIP Agent provides written notice to the Debtors, the U.S. Trustee, and counsel to any Committee that the Carve-Out is invoked, which notice may be delivered only on or after the occurrence of an Event of Default or the Termination Date.

(c)     *Reduction of Amounts*.  The fixed dollar amount of $2,500,000 available to be paid under the Carve-Out following the Carve-Out Trigger Date on account of allowed fees and expenses incurred on and after the Carve-Out Trigger Date shall be reduced, dollar-for-dollar, by the aggregate amount of payments made on and after the Carve-Out Trigger Date on account of fees and expenses incurred on and after the Carve-Out Trigger Date to Retained Professionals and Committee Member Expenses (whether from Cash Collateral, any proceeds of the DIP Financing, or otherwise).  There is no limitation on the obligations of the

Debtors and their estates with respect to unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code.

(d)     *Reservation of Rights*.   The DIP Agent and Prepetition Secured Parties reserve their rights to object to the allowance of any fees and expenses, including any fees and expenses sought that are not provided for in the DIP Budget.   The payment of any fees or expenses of the Retained Professionals and Committee Member Expenses pursuant to the Carve-Out shall not, and shall not be deemed to, (i) reduce any Debtor's obligations owed to any of the DIP Secured Parties, Prepetition Secured Parties, or to any holder of a Permitted Prior Lien, or (ii) modify, alter, or otherwise affect any of the liens and security interests of such parties in the DIP Collateral or Prepetition Collateral (or their respective claims against the Debtors).   The DIP Agent, DIP Lenders, and the Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Retained Professionals, Committee Member Expenses, the U.S. Trustee, or Clerk of the Bankruptcy Court (or of any other entity) incurred in connection with the Chapter 11 Cases or any Successor Case, and nothing in this Interim Order or otherwise shall be construed to obligate such parties in any way to pay such compensation to or to reimburse such expenses.

(e)     In the event the Chapter 11 Cases are converted to chapter 7, there shall be a separate carve-out of $25,000 in the aggregate (the "**Trustee Carve-Out**") that may be used for the reasonable fees and expenses of a chapter 7 trustee and such separate Trustee Carve-Out shall have the same priorities as the Carve-Out.

29.     Effect of Stipulations on Third Parties.

(a)     *Generally*.   The admissions, stipulations, agreements, releases, and waivers set forth in this Interim Order (collectively, the "**Prepetition Lien and Claim Matters**")

are and shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative, and all parties in interest and all of their successors in interest and assigns, including, without limitation, any Committee, unless, and solely to the extent that, a party in interest with standing and requisite authority (other than the Debtors, as to which any Challenge (as defined below) is irrevocably waived and relinquished) (i) has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in paragraph 30 of this Interim Order) challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "**_Challenge_**") by no later than (1) _with respect to parties in interest other than the_ Creditors' Committee, 45 days from the date of entry of this Interim Order and (2) with respect to the Creditors' Committee, 45 days from the appointment of the Creditors' Committee, if any, (as applicable for clauses (1) and (2), the "**_Challenge Deadline_**"), as such applicable date may be extended in writing from time to time in the sole discretion of the First Lien Agent (with respect to the First Lien Loan Documents) and the Second Lien Indenture Trustee (with respect to the Second Lien Notes Documents), or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline, and (ii) _this Court enters judgment in favor of the plaintiff or movant in any such timely and properly_ commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal.   The Creditors Committee, if it raises a bona fide Challenge, will have standing without having to first demonstrate that the Debtors have refused to bring such Challenge.

(b)     *Binding Effect*.   To the extent no Challenge is timely and properly commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion, or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Matters shall, pursuant to this Interim Order, become binding, conclusive, and final on any person, entity, or party in interest in the Chapter 11 Cases, and their successors and assigns, and in any Successor Case for all purposes and shall not be subject to challenge or objection by any party in interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers, or other representative of the Debtors' estates. Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding on all other parties in interest and preclusive as provided in subparagraph (a) above except to the extent that any of such Prepetition Lien and Claim Matters is expressly the subject of a timely and properly filed Challenge, which Challenge is successful as set forth in a final judgment as provided in paragraph 29(b)(ii), and only as to plaintiffs or movants that have complied with the terms hereof.  To the extent any such Challenge proceeding is timely and properly commenced, the Prepetition Secured Parties shall be entitled to include the related costs and expenses, including, but not limited to, reasonable attorneys' fees, incurred in defending themselves in any such proceeding pursuant to the Prepetition Financing Documents.

30.     <u>Limitation on Use of Proceeds</u>.  Notwithstanding anything in this Interim Order to the contrary, no portion or proceeds of the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the DIP

Budget, shall be used for the payment of professional fees, disbursements, costs, or expenses incurred in connection with: (a) objecting, contesting, or raising any defense to the validity, perfection, priority, or enforceability of, or any amount due under, the DIP Documents or the Prepetition Financing Documents, or any security interests, liens, or claims granted under this Interim Order, the DIP Documents, or the Prepetition Financing Documents to secure such amounts; (b) asserting any Challenges, claims, actions, or causes of action against any of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, or any of their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys, or advisors; (c) preventing, hindering, or otherwise delaying enforcement or realization on the DIP Collateral or the Prepetition Collateral; (d) seeking to amend or modify any of the rights granted to the DIP Agent, the DIP Lenders, the Prepetition Secured Parties under this Interim Order, the DIP Documents, or the Prepetition Financing Documents, including seeking to use Cash Collateral and/or DIP Collateral on a contested basis; or (f) contesting the Prepetition Lien and Claim Matters; *provided*, that no more than $50,000 in the aggregate of the proceeds of the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, and the Carve-Out may be used by the Creditors' Committee or any other official committee that may be appointed in these cases to investigate (but not prosecute or Challenge) Prepetition Lien and Claim Matters.

31.     No Third-Party Beneficiary.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

32.     Waiver of Right to Surcharge.  Subject to entry of the Final Order, each of (a) the provisions of section 506(c) of the Bankruptcy Code, and (b) any "equities of the case" claims or other claims under sections 105(a) or 552(b) of the Bankruptcy Code are and shall be waived as

to the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the DIP Obligations, the First Lien Obligations, and the Second Lien Obligations. Accordingly, no costs or expenses of administration or other charge, lien, assessment, or claim incurred at any time (including, without limitation, any expenses set forth in the DIP Budget) by any Debtor or any other person or entity shall be imposed or charged against any or all of the DIP Collateral, the DIP Agent, the DIP Lenders, the Prepetition Collateral, and the Prepetition Secured Parties or their respective claims or recoveries under the Bankruptcy Code, including sections 105(a), 506(c), 552(b) thereof, or otherwise, and the Debtors, on behalf of their estates, waive any such rights. It is expressly understood by all parties that, *inter alia*, in providing the DIP Facility and agreeing to the use of Cash Collateral as provided herein, the DIP Agent, the DIP Lenders, and Prepetition Secured Parties each have relied on the foregoing provisions of this paragraph. Notwithstanding any approval of or consent to the DIP Budget, nothing in this Interim Order shall constitute or be deemed to constitute the consent by any of the DIP Agent, DIP Lenders, and Prepetition Secured Parties to the imposition of any costs or expense of administration or other charge, lien, assessment, or claim (including, without limitation, any amounts set forth in the DIP Budget) against such party, its claims, or its collateral under sections 105(a), 506(c), or 552(b) of the Bankruptcy Code or otherwise and no such consent shall be implied from any other action or inaction by such parties.

33.    No Marshaling.  In no event shall any DIP Secured Party or Prepetition Secured Party be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any DIP Collateral or Prepetition Collateral, as applicable.

34.    Right to Credit Bid.  Pursuant to section 363(k) of the Bankruptcy Code, (a) the DIP Agent shall have the exclusive right to use the DIP Obligations, DIP Liens, and DIP

Superpriority Claims to credit bid with respect to any bulk or piecemeal sale of all or any portion of the DIP Collateral; (b) subject to the indefeasible payment in full in cash of the DIP Obligations, the First Lien Agent shall have the exclusive right to use the First Lien Obligations, the First Lien Adequate Protection Liens, and First Lien Superpriority Claims to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Prepetition Collateral; and (c) subject to the indefeasible payment in full in cash of the DIP Obligations and First Lien Obligations, the Second Lien Indenture Trustee shall have the exclusive right to use the Second Lien Obligations, the Second Lien Adequate Protection Liens, and the Second Lien Superpriority Claims to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Prepetition Collateral.

35.     Additional Defaults.  Without limitation of the Events of Default set forth in and defined in the DIP Documents or this Interim Order, the following shall be a default hereunder and constitute an "**Event of Default**" under the DIP Documents:   (a) the entry of an order dismissing or converting any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or appointing a Chapter 11 trustee or an examiner or other estate representative with expanded powers; (b) the sale of substantially all of the assets of the Debtors, unless, upon the closing of such transaction, all liens securing the DIP Obligations, the Adequate Protection obligations, the First Lien Obligations, and the Second Lien Obligations (in their respective priority) are transferred to the proceeds of such sale; (c) any modification or extension of this Interim Order without the prior written consent of the DIP Agent and the First Lien Agent, and no such consent shall be implied by any other action, inaction, or acquiescence by the DIP Agent or the First Lien Agent; (d) except as expressly set forth herein or in the DIP Documents, granting or imposing, under section 364 of the Bankruptcy Code or otherwise, liens or security

interests in any DIP Collateral or Prepetition Collateral, whether senior, equal, or subordinate to the liens and security interests of the DIP Agent and the First Lien Agent, as applicable; (e) using, or seeking to use, Cash Collateral in violation of this Interim Order or the DIP Documents; and (f) modifying or affecting any of the rights of the DIP Secured Parties or the First Lien Secured Parties under this Interim Order or the DIP Documents by any plan of reorganization proposed or confirmed in these Chapter 11 Cases or subsequent order entered in these Chapter 11 Cases. Any order for dismissal or conversion shall be automatically deemed to preserve the rights of the DIP Secured Parties and Prepetition Secured Parties under this Interim Order and shall preserve the Carve-Out. If an order dismissing any of these Chapter 11 Cases under section 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall be deemed to provide that the DIP Liens and DIP Superpriority Claims granted to the DIP Secured Parties hereunder and in the DIP Documents, as the case may be, and the Carve-Out shall continue in full force and effect, shall remain binding on all parties in interest, and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and indebtedness owing to the DIP Secured Parties under the DIP Documents shall have been indefeasibly paid in full in cash and the DIP Lenders' obligations and commitments under the DIP Documents shall have been terminated, and the Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Obligations, DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, Adequate Protection Superpriority Claims, other protections granted to the Prepetition Secured Parties pursuant to this Interim Order, and the Carve-Out.

36.    Discharge. The DIP Obligations and the obligations of the Debtors with respect to the Adequate Protection provided herein shall not be discharged by the entry of an order confirming any plan of reorganization in any of the Chapter 11 Cases, notwithstanding the

provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash, on or before the effective date of such confirmed plan of reorganization, or each of the DIP Agent and the DIP Lenders, and each of the First Lien Agent and the First Lien Lenders, as applicable, has otherwise agreed in writing.  None of the Debtors shall propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the indefeasible payment of the DIP Obligations, and the payment of the Debtors' obligations with respect to the Adequate Protection provided for herein, in full in cash within a commercially reasonable period of time (and in no event later than the effective date of such plan of reorganization or sale) (a "**Prohibited Plan or Sale**") without the written consent each of the DIP Agent and the DIP Lenders, and each of the First Lien Agent and the First Lien Lenders, as applicable.  For the avoidance of doubt, the Debtors' proposal or support of a Prohibited Plan or Sale, or the entry of an order with respect thereto, shall constitute an Event of Default hereunder and under the DIP Documents.

37.    <u>Joint and Several Liability</u>.  Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that each of the Debtors shall be jointly and severally liable for the DIP Obligations and all obligations and undertakings under this Interim Order

38.    <u>No Waiver</u>.  This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Secured Parties and Prepetition Secured Parties may have to bring or be heard on any matter brought before the Court.  Except as expressly set forth herein, nothing contained in this Interim Order (including, without limitation, the authorization to use any Cash Collateral) shall impair, prejudice, or modify any rights, claims, or defenses

available in law or equity to the DIP Agent on behalf of the DIP Secured Parties, or Prepetition Secured Parties, including, without limitation, the right to (a) request conversion of any Debtor's Chapter 11 Case to chapter 7, (b) seek to terminate the exclusive rights of the Debtors to file, and solicit acceptances of, a plan of reorganization under section 1121 of the Bankruptcy Code or propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans, (c) object to the fees and expenses of any Retained Professionals, and (d) seek relief from the automatic stay. All such rights, claims, and defenses, and the rights, objections, and defenses of all parties in connection therewith, are hereby reserved. Further, the failure, at any time or times hereafter, of the DIP Secured Parties or the Prepetition Secured Parties to require strict performance by the Debtors of any provision of this Interim Order or the DIP Documents shall not waive, affect, or diminish any right of such parties thereafter to demand strict compliance and performance therewith. No consents required hereunder by any of the DIP Secured Parties or the Prepetition Secured Parties shall be implied by any inaction or acquiesce by any of the DIP Secured Parties or the Prepetition Secured Parties.

39.     <u>Successors and Assigns</u>.  This Interim Order, the DIP Credit Agreement, and the other DIP Documents shall be binding upon all parties in interest in these Chapter 11 Cases, including any subsequently appointed trustee, responsible individual, examiner with expanded powers, or other estate representative, and in any Successor Cases.

40.     <u>No Modification to Interim Order</u>.  The Debtors irrevocably waive the right to seek, and shall not seek or consent to, directly or indirectly, without the prior written consent of the DIP Agent and the First Lien Agent:   (a) any reversal, modification, stay, vacatur, amendment, or extension of this Interim Order, or a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature

whatsoever, including, without limitation, any administrative expense of the kind specified in sections 503(b), 507(a), 507(b), or 546 of the Bankruptcy Code) in any of the Chapter 11 Cases or Successor Cases, equal or superior to the DIP Superpriority Claims or the Adequate Protection Superpriority Claims, other than the Carve-Out; (b) any order allowing use of Cash Collateral; and (c) any lien on any of the DIP Collateral or the Prepetition Collateral with priority equal or superior to the DIP Liens or the Adequate Protection Liens, as applicable.

41.     Order Controls.  In the event of any inconsistency between the terms of the DIP Documents and this Interim Order, the provisions of this Interim Order shall govern and control.

42.     Limits on Lender Liability.  Nothing in this Interim Order or in any of the DIP Documents, the Prepetition Financing Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties or the Prepetition Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of these cases.  The DIP Secured Parties and the Prepetition Secured Parties shall not be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).  Nothing in this Interim Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Secured Parties or any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.

43.     [Reserved].

44.     Headings.  Section headings used herein are for convenience only and are not to affect the construction of, or to be taken into consideration in interpreting, this Interim Order.

45.     Final Hearing.  The Final Hearing is scheduled for March 1, 2017 at 1:30 p.m. (prevailing Central Time) before this Court.  The Debtors shall promptly serve a notice of entry of this Interim Order and the Final Hearing, together with a copy of this Interim Order, by first class mail, postage prepaid, facsimile, electronic mail or overnight mail upon the Master Service List.  The notice of the entry of this Interim Order and the Final Hearing shall state that objections to the entry of the Final Order shall be filed with the Court, by no later than 4:00 p.m. (prevailing Central Time) on February 24, 2017 (the "**Objection Deadline**"),

46.     Effect of this Interim Order.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

47.     Retention of Jurisdiction.  The Court shall retain jurisdiction to hear, determine and, if applicable, enforce the terms of, any and all matters arising from or related to the DIP Facility and/or this Interim Order.

Dated:   **2-2**  , 2017
        Houston, Texas

_____
THE HONORABLE
UNITED STATES BANKRUPTCY JUDGE