## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 11 |
| VANGUARD NATURAL RESOURCES, LLC, *et al.*,[1] | § § § § | Case No. 17-30560 (MI) |
| Debtors. | § § § § | (Jointly Administered) |

## JOINT PLAN OF REORGANIZATION OF VANGUARD NATURAL RESOURCES, LLC, *ET AL.,* PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

Chris L. Dickerson, Esq. (admitted *pro hac vice*)
Todd M. Schwartz, Esq. (admitted *pro hac vice*)
**PAUL HASTINGS LLP**
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100

- and -

James T. Grogan, Esq. (Tex. Bar No. 24027354)
Danny Newman, Esq. (Tex. Bar No. 24092896)
**PAUL HASTINGS LLP**
600 Travis Street, 58th Floor
Houston, Texas 77002
Telephone: (713) 860-7300
Facsimile: (713) 353-2801

*Proposed Counsel to Vanguard*

Dated: February 25, 2017

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Vanguard Natural Resources, LLC (1161); Eagle Rock Acquisition Partnership, L.P. (6706); Eagle Rock Acquisition Partnership II, L.P. (0903); Eagle Rock Energy Acquisition Co., Inc. (4564); Eagle Rock Energy Acquisition Co. II, Inc. (3364); Eagle Rock Upstream Development Company, Inc. (0113); Eagle Rock Upstream Development Company II, Inc. (7453); Encore Clear Fork Pipeline LLC (2032); Escambia Asset Co. LLC (3869); Escambia Operating Co. LLC (2000); Vanguard Natural Gas, LLC (1004); Vanguard Operating, LLC (9331); VNR Finance Corp. (1494); and VNR Holdings, LLC (6371). The location of the Debtors' service address is: 5847 San Felipe, Suite 3000, Houston, Texas 77057.

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION COMPUTATION
OF TIME, AND GOVERNING LAW, ................................................................. 1

    A.    Defined Terms ................................................................................... 1

    B.    Rules of Interpretation ..................................................................... 19

    C.     Computation of Time ...................................................................... 20

    D.    Governing Law ................................................................................ 20

    E.    Reference to Monetary Figures........................................................ 21

    F.    Conflicts .......................................................................................... 21

ARTICLE II. ADMINISTRATIVE CLAIMS, DIP FACILITY CLAIMS, AND
PRIORITY TAX CLAIMS................................................................................. 21

    A.    Administrative Claims ..................................................................... 21

    B.    DIP Facility Claims.......................................................................... 24

    C.    Priority Tax Claims ......................................................................... 24

    D.    Statutory Fees.................................................................................. 24

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND
INTERESTS ...................................................................................................... 24

    A.    Classification of Claims and Interests.............................................. 24

    B.    Treatment of Claims and Interests .................................................. 25

    C.    Special Provision Governing Unimpaired Claims ............................. 31

    D.    Elimination of Vacant Classes ......................................................... 31

    E.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the
Bankruptcy Code ............................................................................ 31

    F.    Voting Classes; Presumed Acceptance by Non-Voting Classes........................ 31

    G.    Presumed Acceptance and Rejection of the Plan.............................. 32

    H.    Intercompany Interests.................................................................... 32

    I.    Controversy Concerning Impairment .............................................. 32

    J.    Subordinated Claims and Interests................................................... 32

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN........................ 32

    A.    General Settlement of Claims and Interests...................................... 32

    B.    Restructuring Transactions ............................................................. 33

    C.    Sources of Consideration for Plan Distributions .............................. 34

    D.    Corporate Existence ........................................................................ 37

    E.    Vesting of Assets in the Reorganized Debtors .................................. 37

    F.    Cancellation of Existing Securities and Agreements.......................... 38

| | | |
|---|---|---|
| G. | Corporate Action | 38 |
| H. | New Organizational Documents | 39 |
| I. | Directors and Officers of the Reorganized Debtors | 39 |
| J. | Section 1146 Exemption. | 40 |
| K. | Director, Officer, Manager, and Employee Liability Insurance | 40 |
| L. | Management Incentive Plan | 40 |
| M. | Employee Obligations | 40 |
| N. | Effectuating Documents; Further Transactions | 41 |
| O. | Preservation of Causes of Action | 41 |
| P. | Preservation of Royalty and Working Interests | 42 |
| Q. | Payment of Certain Fees | 42 |

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ... 43

| | | |
|---|---|---|
| A. | Assumption and Rejection of Executory Contracts and Unexpired Leases | 43 |
| B. | Claims Based on Rejection of Executory Contracts or Unexpired Leases | 44 |
| C. | Cure of Defaults for Assumed Executory Contracts and Unexpired Leases | 44 |
| D. | Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases | 45 |
| E. | Insurance Policies | 45 |
| F. | Modifications, Amendments, Supplements, Restatements, or Other Agreements | 45 |
| G. | Reservation of Rights | 46 |
| H. | Nonoccurrence of Effective Date | 46 |
| I. | Contracts and Leases Entered Into After the Petition Date | 46 |

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ... 46

| | | |
|---|---|---|
| A. | Timing and Calculation of Amounts to Be Distributed | 46 |
| B. | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 47 |
| C. | Manner of Payment | 49 |
| D. | SEC Exemption | 49 |
| E. | Compliance with Tax Requirements | 51 |
| F. | No Postpetition or Default Interest on Claims | 51 |
| G. | Setoffs and Recoupment | 51 |
| H. | No Double Payment of Claims | 51 |

I.      Claims Paid or Payable by Third Parties ................................................................. 52

J.      Allocation of Distributions Between Principal and Interest ................................. 53

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT UNLIQUIDATED,
AND DISPUTED CLAIMS, .......................................................................................... 53

A.      Allowance of Claims ................................................................................................. 53

B.      Claims Administration Responsibilities ................................................................ 53

D.      Estimation of Claims ................................................................................................. 53

E.      Claims Reserve .......................................................................................................... 54

F.      Adjustment to Claims without Objection .............................................................. 54

G.      Time to File Objections to Claims or Interests ..................................................... 54

H.      Disallowance of Claims ............................................................................................ 54

I.      Amendments to Proofs of Claim and Proofs of Interest ..................................... 55

J.      No Distributions Pending Allowance ..................................................................... 55

K.      Distributions After Allowance ................................................................................ 55

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED
PROVISIONS .................................................................................................................. 56

A.      Compromise and Settlement of Claims, Interests, and Controversies ................ 56

B.      Discharge of Claims and Termination of Interests .............................................. 56

C.      Term of Injunctions or Stays ................................................................................... 57

D.      **Release of Liens** ...................................................................................................... 57

E.      **Releases by the Debtors** ........................................................................................ 57

F.      **Releases by Holders of Claims and Interests** ................................................... 58

G.      **Exculpation** ............................................................................................................. 59

H.      **Injunction** ................................................................................................................ 60

I.      Protections Against Discriminatory Treatment ................................................... 60

J.      Regulatory Activities ................................................................................................ 61

K.      Recoupment ............................................................................................................... 61

L.      Subordination Rights ............................................................................................... 61

M.      Document Retention ................................................................................................. 61

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THE PLAN ........................................................................... 61

A.      Conditions Precedent to Confirmation .................................................................. 61

B.      Conditions Precedent to the Effective Date .......................................................... 63

C.      Waiver of Conditions ................................................................................ 64

D.      Substantial Consummation ....................................................................... 64

E.      Effect of Failure of Conditions ................................................................ 64

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ....... 65

A.      Modification and Amendments.................................................................. 65

B.      Effect of Confirmation on Modifications ................................................. 65

C.      Revocation or Withdrawal of Plan........................................................... 65

ARTICLE XI. RETENTION OF JURISDICTION................................................................. 65

ARTICLE XII. MISCELLANEOUS PROVISIONS ............................................................... 68

A.      Immediate Binding Effect......................................................................... 68

B.      Additional Documents .............................................................................. 68

B.      Dissolution of the Committee ................................................................... 68

C.      Reservation of Rights................................................................................ 69

D.      Successors and Assigns............................................................................. 69

E.      Notices ...................................................................................................... 69

F.      Entire Agreement ...................................................................................... 72

G.      Exhibits ..................................................................................................... 72

H.      Nonseverability of Plan Provisions........................................................... 73

I.      Votes Solicited in Good Faith................................................................... 73

J.      Waiver or Estoppel ................................................................................... 73

K.      Closing of Chapter 11 Cases .................................................................... 73

**INTRODUCTION**

Vanguard Natural Resources, LLC and its debtor affiliates, as debtors and debtors in possession propose this joint plan of reorganization (the "*Plan*") for the resolution of the outstanding claims against, and interests in, such Debtors pursuant to the Bankruptcy Code. Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, events during the Chapter 11 Cases, and projections of future operations, as well as a summary and description of the Plan and certain related matters. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code. The Plan constitutes a separate plan of reorganization for each of the Debtors.

ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

ARTICLE I.
**DEFINED TERMS, RULES OF INTERPRETATION,
COMPUTATION OF TIME, AND GOVERNING LAW**

A.    *Defined Terms.*

As used in the Plan, capitalized terms have the meanings set forth in the Introduction above or in the definitions below.

1.    "*1145 Rights Offering*" means the offering of the Rights, to be conducted in reliance upon the exemption from registration under the Securities Act provided in Section 1145 of the Bankruptcy Code, to Rights Offering Participants in accordance with the 1145 Rights Offerings Procedures.

2.    "*1145 Rights Offering Amount*" means $127,875,000.

3.    "*1145 Rights Offering Equity*" means Reorganized VNR Common Stock issued pursuant to the 1145 Rights Offering and the Backstop Agreement.

4.    "*1145 Rights Offering Participants*" means the holders of Allowed Senior Notes Claims that have the right to participate in the 1145 Rights Offering.

5.    "*1145 Rights Offering Procedures*" means those certain rights offering procedures with respect to the 1145 Rights Offering, which are attached to the Disclosure Statement.

6.    "*2019 Senior Notes*" means those certain 8 3/8% Senior Notes due June 1, 2019, issued by Vanguard Operating, LLC (previously Eagle Rock Energy Partners, L.P. and Energy Rock Energy Finance Corp.) pursuant to the 2019 Senior Notes Indenture.

7.    "*2019 Senior Notes Indenture*" means that certain Indenture, dated as of May 27, 2011, by and among Vanguard Operating, LLC (previously Eagle Rock Energy Partners, L.P.

and Energy Rock Energy Finance Corp.), as issuer, and the 2019 Senior Notes Trustee, as may be amended, restated, or otherwise supplemented from time to time.

8. "*2019 Senior Notes Trustee*" means Wilmington Trust, N.A., as trustee under the 2019 Senior Notes Indenture.

9. "*2020 Senior Notes*" means those certain 7.875% senior notes due April 1, 2020, issued by VNR and VNR Finance Corp. pursuant to the 2020 Senior Notes Indenture.

10. "*2020 Senior Notes Indenture*" means that certain Indenture, dated as of April 4, 2012, by and among VNR and VNR Finance Corp., as issuers, and the 2020 Senior Notes Trustee, as may be amended, restated, or otherwise supplemented from time to time.

11. "*2020 Senior Notes Trustee*" means UMB Bank, N.A., as trustee under the 2020 Senior Notes Indenture.

12. "*4(a)(2) Backstop Commitment*" means the commitment of the Backstop Parties subject to the terms of the Backstop Agreement to purchase the 4(a)(2) Backstop Commitment Equity for an aggregate purchase price of $127,875,000.

13. "*4(a)(2) Backstop Commitment Equity*" means shares of Reorganized VNR Common Stock issued to the Backstop Parties pursuant to the Backstop Agreement, in reliance upon the exemption from registration under the Securities Act provided in Section 4(a)(2) of the Securities Act, on account of the 4(a)(2) Backstop Commitment, which shall include, without limitation, all shares purchased pursuant to the Backstop Agreement upon the failure, if any, of the 2L Investors to purchase all of the Common Units (each, as defined in the Backstop Agreement) in accordance with the Backstop Agreement.

14. "*503(b)(9) Claim*" means a Claim or any portion thereof entitled to administrative expense priority pursuant to section 503(b)(9) of the Bankruptcy Code.

15. "*Adequate Protection Claims*" means the First Lien Superpriority Claims as defined in the DIP Orders.

16. "*Administrative Agent*" means Citibank, N.A., as administrative agent under the Credit Agreement.

17. "*Administrative Claim*" means a Claim for costs and expenses of administration of the Estates under sections 503(b) (including 503(b)(9) Claims), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date through the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Professional Fee Claims; and (c) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code, 28 U.S.C. §§ 1911–1930.

18. "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims other than those that accrued in the ordinary course of the Debtors' business, which such deadline:  (a) with respect to General Administrative Claims, shall

be 30 days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be 60 days after the Effective Date.

19.     "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

20.     "*Allowed*" means with respect to any Claim or Interest, except as otherwise provided herein:  (a) a Claim or Interest in a liquidated amount as to which no objection has been Filed prior to the Claims Objection Deadline and that is evidenced by a Proof of Claim or Proof of Interest, as applicable, timely Filed by the applicable Bar Date or that is not required to be evidenced by a Filed Proof of Claim or Proof of Interest, as applicable, under the Plan, the Bankruptcy Code, or a Final Order; (b) a Claim or Interest that is scheduled by the Debtors as neither disputed, contingent, nor unliquidated, and as for which no Proof of Claim or Proof of Interest, as applicable, has been timely Filed in an unliquidated or a different amount; or (c) a Claim or Interest that is upheld or otherwise Allowed (i) pursuant to the Plan, (ii) in any stipulation that is approved by the Bankruptcy Court, (iii) pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith, or (iv) by Final Order (including any such Claim to which the Debtors had objected or which the Bankruptcy Court had disallowed prior to such Final Order); *provided*, that with respect to a Claim or Interest described in clauses (a) and (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that with respect to such Claim or Interest no objection to the allowance thereof has been or, in the Debtors' or Reorganized Debtors' reasonable good faith judgment, may be interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Court, or such an objection is so interposed and the Claim or Interest, as applicable, shall have been Allowed by a Final Order.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim or Proof of Interest is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as applicable.  For the avoidance of doubt, a Proof of Claim or Proof of Interest Filed after the Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim.  "Allow" and "Allowing" shall have correlative meanings.

21.     "*Assumed Executory Contract and Unexpired Lease List*" means the list, as determined by the Debtors or the Reorganized Debtors, as applicable, of Executory Contracts and Unexpired Leases (with proposed cure amounts) that will be assumed by the Reorganized Debtors, which list shall be included in the Plan Supplement.

22.     "*Assumed Executory Contracts and Unexpired Leases*" means those Executory Contracts and Unexpired Leases to be assumed by the applicable Reorganized Debtors, as set forth on the Assumed Executory Contract and Unexpired Lease List.

23.     "*Backstop Agreement*" means that certain Backstop Commitment and Equity Investment Agreement, dated as of February 24, 2017, by and among the Debtors and the Backstop Parties, and annexed as Exhibit B to the *Debtors' Motion, Pursuant to Bankruptcy*

*Code Sections 105(a) and 363(b) and Bankruptcy Rules 2002 and 6004, for Authority to (A) Enter Into Backstop Agreement and Equity Commitment Agreement and (B) Pay Fees and Expenses Thereunder*, [Docket No. [____]], as the same may be amended, restated, or supplemented from time to time in accordance with its terms.

24. "*Backstop Agreement Order*" means the *Order Authorizing Debtors to (A) Enter into Backstop Commitment Agreement and Equity Commitment Agreement and (B) Pay Fees and Expenses Thereunder*, [Docket No. [____]].

25. "*Backstop Parties*" means those parties that agree to backstop the Rights Offering pursuant to the Backstop Agreement, each in its respective capacity as such.

26. "*Backstop Premium*" means a number of shares of fully diluted Reorganized VNR Common Stock equal to 6% (subject to dilution only by the Reorganized VNR Common Stock issuable upon exercise of the New Warrants and the Reorganized VNR Management Incentive Plan) of the Rights Offering and distributable to the Senior Commitment Parties under the Backstop Agreement Order.

27. "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time.

28. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of any reference under 28 U.S.C. § 157, the United States District Court for the Southern District of Texas.

29. "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

30. "*Bar Date*" means the applicable dates established by which respective Proofs of Claims and Interests must be Filed, as established by an order of the Bankruptcy Court, including the *Order Granting Complex Chapter Bankruptcy Case Treatment and Order Setting Bar Date for Filing Proofs of Claim* [Docket No. 56] and the Confirmation Order.

31. "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

32. "*Cash*" means the legal tender of the U.S. and equivalents thereof, including bank deposits, checks, and other similar items.

33. "*Cash Management Order*" means the [*Final Orders (I) Authorizing Continued Use of Existing Bank Accounts, Business Forms, and Cash Management System, (II) Waiving Requirements of Sections 345 of the Bankruptcy Code, and (III) Authorizing Continuation of Intercompany Transfers* [Docket No. [____]], as may be amended].

34. "*Causes of Action*" means any claims, Claims, interests, Interests, damages, remedies, causes of action, controversy, demands, rights, actions, suits, obligations, liabilities,

accounts, defenses, offsets, powers, judgment, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or pursuant to any other theory of law. Causes of Action also include:  (a) all rights of setoff, counterclaim, cross claim, reduction, subordination, or recoupment and claims under contracts or for breaches of duties imposed by law or regulation; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state or foreign law fraudulent transfer or similar claim.

35.     "*Chapter 11 Cases*" means, collectively:  (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court; and (b) when used with reference to all the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

36.     "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

37.     "*Claims and Noticing Agent*" means Prime Clerk LLC, retained as the Debtors' notice and claims agent pursuant to the *Order Authorizing Appointment of Prime Clerk LLC as Claims, Noticing, and Solicitation Agent, Effective* Nunc Pro Tunc *to the Petition Date* [Docket No. 15].

38.     "*Claims Objection Deadline*" means the later of:  (a) the date that is 180 days after the Effective Date; and (b) such other date as may be fixed by the Bankruptcy Court, after notice and hearing, upon a motion Filed before the expiration of the deadline to object to Claims or Interests.

39.     "*Claims Register*" means the official register of Claims maintained by the Claims and Noticing Agent.

40.     "*Class*" means a category of Claims or Interests as set forth in Article III of the Plan.

41.     "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

42.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

43.     "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

44. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

45. "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

46. "*Consenting Creditors*" means, collectively, (a) the Consenting Second Lien Noteholders, and (b) the Consenting Senior Noteholders.

47. "*Consenting Second Lien Noteholders*" means those certain Holders of Second Lien Notes that are or become parties to the RSA from time to time (including any party having the ability to direct or control such notes).

48. "*Consenting Senior Noteholders*" means those certain Holders of Senior Notes that are or become parties to the RSA from time to time (including any party having the ability to direct or control such notes).

49. "*Consummation*" means the occurrence of the Effective Date.

50. "*Credit Agreement*" means that certain Third Amended and Restated Credit Agreement, dated as of September 30, 2011, by and among Vanguard Natural Gas, LLC, as borrower, the Administrative Agent, and the lenders and agents party thereto, as may be amended, modified, or otherwise supplemented from time to time.

51. "*Creditors' Committee*" means the official committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

52. "*Cure Claim*" means a Claim (unless waived or modified by the applicable counterparty) based upon the Debtors' defaults on an Executory Contract or Unexpired Lease at the time such Executory Contract or Unexpired Lease is assumed by the Debtors pursuant to section 365 of the Bankruptcy Code, other than with respect to a default that is not required to be cured under section 365(b)(2) of the Bankruptcy Code.

53. "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy") of any of the Debtors for current or former directors,' managers,' and officers' liability.

54. "*Debtors*" means, collectively:  (a) Vanguard Natural Resources, LLC; (b) Eagle Rock Acquisition Partnership, L.P.; (c) Eagle Rock Acquisition Partnership II, L.P.; (d) Eagle Rock Energy Acquisition Co., Inc.; (e) Eagle Rock Energy Acquisition Co. II, Inc.; (f) Eagle Rock Upstream Development Company, Inc.; (g) Eagle Rock Upstream Development Company II, Inc.; (h) Encore Clear Fork Pipeline LLC; (i) Escambia Asset Co. LLC; (j) Escambia Operating Co. LLC; (k) Vanguard Natural Gas, LLC; (l) Vanguard Operating, LLC; (m) VNR Finance Corp.; and (n) VNR Holdings, LLC.

55. "*DIP Agent*" means Citibank, N.A., solely in its capacity as administrative and collateral agent under the DIP Facility.

56. "*DIP Facility*" means, collectively: (a) that Debtor-In-Possession Credit Agreement between Vanguard Natural Gas, LLC, the DIP Agent and the DIP Lenders, dated as of February 6, 2017; (b) all amendments thereto and extensions thereof; and (c) all security, guaranty and other documents and agreements related to the documents identified in (a) and (b).

57. "*DIP Facility Claim*" means a Claim arising under the DIP Facility.

58. "*DIP Lenders*" means the lenders party to the DIP Facility from time to time.

59. "*DIP Orders*" means, collectively, the Interim DIP Order, the Final DIP Order, and any interim or final order authorizing the Debtors to obtain postpetition financing or use cash collateral.

60. "*Disclosure Statement*" means the *Disclosure Statement Relating to the Joint Plan of Reorganization of Vanguard Natural Resources, LLC, et al., Pursuant to Chapter 11 of the Bankruptcy Code*, dated February 24, 2017, [Docket No. [____]], as may be amended, including all exhibits and schedules thereto, as approved pursuant to the Disclosure Statement Order.

61. "*Disclosure Statement Order*" means the *Order [(A) Approving the Disclosure Statement, (B) Establishing the Voting Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Plan, and (D) Approving the Manner and Forms of Notice and Other Related Documents]*, [Docket No. [____]].

62. "*Disputed*" means with regard to any Claim or Interest, a Claim or Interest that is not yet Allowed.

63. "*Distribution Record Date*" means, other than with respect to any publicly held securities, the record date for purposes of making distributions under the Plan on account of Allowed Claims and Allowed Interests, which date shall be the date that is five (5) Business Days after the Confirmation Date or such other date as designated in a Final Order of the Bankruptcy Court.

64. "*DTC*" means the Depository Trust Company.

65. "*Effective Date*" means, with respect to the Plan and any such applicable Debtor(s), the date that is the first Business Day upon which:  (a) no stay of the Confirmation Order is in effect; (b) with respect to the Debtors, all conditions precedent specified in Article IX.A and Article IX.B have been satisfied or waived (in accordance with Article IX.C) and (c) the Plan is declared effective with respect to such applicable Debtor(s).

66. "*Electing Lender*" has the meaning set forth in Article III.B.3(c)(i) hereof.

67. "*Electing Lender Payment Amount*" means the product of $275 million and the Electing Percentage Multiplier, which shall be payable from Cash proceeds of the Rights Offering and the Second Lien Investment.

68. "*Electing Percentage Multiplier*" means the aggregate amount of Allowed Lender Claims held by the Electing Lenders divided by the aggregate amount of all Allowed Lender Claims.

69. "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

70. "*Estate*" means, as to each Debtor, the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

71. "*Exchange Act*" means Securities Exchange Act of 1934, as amended, together with the rules and regulations promulgated thereunder.

72. "*Exculpated Parties*" means, collectively, and in each case in its capacity as such: (a) each of the Debtors and the Reorganized Debtors; (b) the Consenting Creditors; (c) the DIP Agent; (d) the DIP Lenders; (e) the Indenture Trustees; (f) the Backstop Parties; and (g) with respect to each of the foregoing identified in subsections (a) through (f) herein, each of such entities' respective shareholders, equityholders (regardless of whether such interests are held directly or indirectly) (other than with respect to an equity holder of a Debtor), predecessors, successors, assigns, affiliates, subsidiaries, members, principals, managers, current and former officers, current and former directors, employees, managers, managing member, advisory board members, partners, agents, attorneys, accountants, financial advisors, investment bankers, restructuring advisors, professionals, consultants, advisors, and representatives, each in their capacities as such.

73. "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

74. "*Existing VNR Equity Interest*" means any Interest in VNR outstanding immediately prior to the Effective Date.

75. "*Exit Facility*" means, collectively, (a) the Exit Term Loans and (b) the Exit Revolving Loans, each consistent with the Exit Facility Term Sheet and on such terms as set forth in the Exit Facility Documents.

76. "*Exit Facility Agent*" means the administrative agent under the Exit Term Loans and the Exit Revolving Loans, as applicable.

77. "*Exit Facility Documents*" means in connection with the Exit Facility, the credit agreement in respect of the Exit Facility, collateral documents, Uniform Commercial Code filings, and other loan documents, to be dated as of the Effective Date, governing the Exit Facility, which documents shall be included in the Plan Supplement.

78. "*Exit Facility Lenders*" means the lenders under the Exit Facility.

79. "*Exit Facility Term Sheet*" means that certain term sheet setting forth the principal terms of the Exit Facility, which shall be attached to the Disclosure Statement.

80. "*Exit Revolving Loans*" means a new reserve based lending facility to be provided to the Reorganized Debtors by the Electing Lenders, with a principal balance equal to the Allowed Lender Claims multiplied by the Electing Percentage Multiplier, and with an initial borrowing base equal to $1.1 billion times the Electing Percentage Multiplier, the principal terms of which are set forth in the Exit Facility Term Sheet, and which shall otherwise be governed by the Exit Facility Documents.

81. "*Exit Term Loans*" means new takeback term loans, which shall be deemed to be provided to the Reorganized Debtors by the Non-Electing Lenders (if any) as of the Effective Date, on such terms and conditions as necessary to satisfy the requirements of section 1129(b) of the Bankruptcy Code, the principal terms of which are set forth in the Exit Facility Term Sheet, and which shall otherwise be governed by the Exit Facility Documents.

82. "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date, compounded annually.

83. "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases, including with respect to a Proof of Claim or Proof of Interest, the Claims and Noticing Agent.

84. "*Final Order*" means (a) an order or judgment of the Bankruptcy Court, as entered on the docket in any Chapter 11 Case (or any related adversary proceeding or contested matter) or the docket of any other court of competent jurisdiction, or (b) an order or judgment of any other court having jurisdiction over any appeal from (or petition seeking certiorari or other review of) any order or judgment entered by the Bankruptcy Court (or any other court of competent jurisdiction, including in an appeal taken) in the Chapter 11 Case (or in any related adversary proceeding or contested matter), in each case that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided*, *however*, that the possibility a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules of the Bankruptcy Court, may be filed relating to such order shall not prevent such order from being a Final Order.

85. "*Final DIP Order*" means the *Final Order [(I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief*] [Docket No. [____]], as may be amended.

86. "*General Administrative Claim*" means any Administrative Claim, other than a Professional Fee Claim or an Adequate Protection Claim.

87.     "*General Unsecured Equity Distribution*" has the meaning set forth in Article III of the Plan and shall be subject to dilution by (i) the Rights Offering Equity, (ii) the Second Lien Investment Equity, (iii) the Backstop Premium, (iv) the Reorganized VNR Common Stock issuable upon exercise of the New Warrants, and (v) the Reorganized VNR Management Incentive Plan.

88.     "*General Unsecured Cash Distribution Pool*" means an amount up to $[_____] to be used for Cash payments on account of General Unsecured Claims in accordance with the Plan.

89.     "*General Unsecured Claims*" means, collectively, any Unsecured Claim and does not include any Administrative Claims, DIP Facility Claims, Professional Fee Claims, Priority Tax Claims, Other Secured Claims, Other Priority Claims, Lender Claims, Second Lien Notes Claims, Senior Notes Claims, Trade Claims, Intercompany Claims, a claim under section 510(b) of the Bankruptcy Code, or a claim that may be asserted relating to any Interest.

90.     "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

91.     "*Holder*" means an Entity holding a Claim or an Interest, as applicable.

92.     "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

93.     "*Indemnification Obligations*" means each of the Debtors' indemnification obligations, whether in the bylaws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, management or indemnification agreements, or employment or other contracts, for their current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals and agents of the Debtors, as applicable.

94.     "*Indenture Trustee Charging Liens*" means any Lien or other priority in payment arising prior to the Effective Date to which an Indenture Trustee is entitled, pursuant to the applicable Notes Indenture, against distributions to be made to the Holders of the Notes for payment of the Indenture Trustee Fees and Expenses.

95.     "*Indenture Trustee Fees and Expenses*" means the compensation, fees, expenses, disbursements and indemnity claims of the Indenture Trustees, including without limitation, any fees, expenses and disbursements of attorneys, advisors or agents retained or utilized by the Indenture Trustees, whether prior to or after the Petition Date and whether prior to or after the Effective Date.

96.     "*Indenture Trustees*" means, collectively, (a) the 2019 Senior Notes Trustee, (b) the 2020 Senior Notes Trustee, and (c) the Second Lien Notes Trustee.

97.     "*Insurance Policies*" means any insurance policies, insurance settlement agreements, coverage-in-place agreements, or other agreements relating to the provision of

insurance entered into by or issued to or for the benefit of any of the Debtors or their predecessors.

98. "*Intercompany Claim*" means any Claim held by any Debtor against a Debtor.

99. "*Intercompany Interest*" means any Interest in a Debtor other than VNR.

100. "*Intercreditor Agreement*" means that certain Intercreditor Agreement, dated as of February 10, 2016, by and between the Administrative Agent and the Second Lien Notes Trustee, as may be amended, modified, or otherwise supplemented from time to time.

101. "*Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in any Debtor and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Entity, including any Claim against the Debtors that is subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

102. "*Interim Compensation Order*" means the *Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals* [Docket No. [____]].

103. "*Interim DIP Order*" means the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Senior Secured Superpriority Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 10], as may be amended.

104. "*Internal Revenue Code*" means the Internal Revenue Code of 1986, as amended.

105. "*Investment Company Act*" means the Investment Company Act of 1940, as amended.

106. "*IRS*" means the Internal Revenue Service.

107. "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

108. "*Lender*" means any secured party under the Credit Agreement or Loan Documents (as defined in the Credit Agreement).

109. "*Lender Claims*" means any Claim against the Debtors derived from or based on the Credit Agreement, including the Adequate Protection Claims.

110. "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

111. "*NASDAQ*" means the NASDAQ Stock Market.

11

112.     "*New Organizational Documents*" means such certificates or articles of incorporation, by-laws, limited liability company operating agreements, shareholders agreements, or other formation and governance documents of each of the Reorganized Debtors (or their applicable subsidiaries), as applicable, the form of which shall be included in the Plan Supplement.

113.     "*New Second Lien Noteholders*" means the Holders of the Allowed Second Lien Notes Claims, in their capacity as holders of the New Second Lien Notes.

114.     "*New Second Lien Notes*" means those certain senior secured second lien notes due 2024 in an aggregate principal amount of $78,075,297.00, plus accrued and unpaid postpetition interest through the Effective Date pursuant to the Second Lien Notes, to be issued pursuant to the New Second Lien Notes Indenture.

115.     "*New Second Lien Notes Documents*" means, collectively, (a) the New Second Lien Notes Indenture, and (b) all other agreements, documents, and instruments delivered or entered into in connection therewith (including any collateral agreement, guarantee agreements and intercreditor agreements).

116.     "*New Second Lien Notes Indenture*" means that certain indenture, dated as of the Effective Date, by and among certain of the Reorganized Debtors, the New Second Lien Notes Indenture Trustee, and the New Second Lien Noteholders, which shall contain terms substantially similar to the Second Lien Notes, but providing a 12 month later maturity, a 200 basis point increase to the interest rate, and providing that the transactions under the Plan will not constitute a change of control thereunder.

117.     "*New Second Lien Notes Trustee*" means that certain indenture trustee under the New Second Lien Notes Indenture.

118.     "*New Warrants*" means, collectively, (a) the VNR Common Unit New Warrants, and (b) the VNR Preferred Unit New Warrants.

119.     "*Non-Electing Lender*" has the meaning set forth in Article III.B.3(c)(ii) hereof.

120.     "*Notes Indentures*" means, collectively, (a) the Second Lien Notes Indenture, and (b) the Senior Notes Indentures.

121.     "*NYSE*" means the New York Stock Exchange.

122.     "*Ordinary Course Professional Order*" means the [*Order Authorizing the Debtors to Retain and Compensate Certain Professionals Utilized in the Ordinary Course of Business, Nunc Pro Tunc to the Petition Date*] [Docket No. [____]].

123.     "*Other Existing Equity Interest*" means any Existing VNR Equity Interest other than VNR Common Units or VNR Preferred Units.

124.   "*Other Priority Claims*" means any Claim against a Debtor, other than an Administrative Claim, DIP Facility Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

125.   "*Other Secured Claims*" means any Secured Claim against any of the Debtors other than Lender Claims, the Second Lien Notes Claims, or DIP Facility Claims.

126.   "*Petition Date*" means February 1, 2017.

127.   "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed by the Debtors no later than 10 days before the Confirmation Hearing or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, and additional documents Filed with the Bankruptcy Court before the Effective Date as amendments to the Plan Supplement composed of, among other documents, the following:  (a) the New Organizational Documents; (b) the Assumed Executory Contract and Unexpired Lease List; (c) the Rejected Executory Contract and Unexpired Lease List; (d) a list of retained Causes of Action; (e) the Reorganized VNR Registration Rights Agreement; (f) a schedule identifying the members of the Reorganized VNR Board and management for the Reorganized Debtors; (g) the Exit Facility Documents; (h) the New Second Lien Notes Documents; and (i) the Warrant Agreement.  Any reference to the Plan Supplement in the Plan shall include each of the documents identified above as (a) through (i), as applicable.

128.   "*Plan Value*" means the equity value of Reorganized VNR (after including cash on hand of Reorganized VNR of approximately $45,000,000) pro forma for the restructured capital structure, including after giving effect to the participation in the Rights Offering by Holders of Allowed Senior Notes Claims, based on an enterprise value of $1,625,000,000.00 (which enterprise value excludes cash on hand of Reorganized VNR of $45,000,000), as determined in the manner specified in the Backstop Agreement.

129.   "*Priority Tax Claim*" means the Claims of Governmental Units of the type specified in section 507(a)(8) of the Bankruptcy Code.

130.   "*Pro Rata*" means the proportion that the amount of an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of the Allowed Claims or Allowed Interests in that Class, or the proportion of the Allowed Claims or Allowed Interests in a particular Class and other Classes entitled to share in the same recovery as such Claim or Interest under the Plan.

131.   "*Professional*" means an Entity, excluding those Entities entitled to compensation pursuant to the Ordinary Course Professional Order, that are:  (a) retained pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code; *provided* that professionals employed by the Indenture Trustees, the Consenting Creditors, or the Backstop Parties shall not be "Professionals" for purposes of the Plan.

132.    "*Professional Fee Claims*" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Effective Date to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

133.    "*Professional Fee Escrow Account*" means an interest-bearing account in an amount equal to the Professional Fee Reserve Amount and funded by the Debtors on the Effective Date, pursuant to Article II.A.2(b) of the Plan.

134.    "*Professional Fee Reserve Amount*" means the total amount of Professional Fee Claims estimated in accordance with Article II.A.2(c) of the Plan.

135.    "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

136.    "*Proof of Interest*" means a proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

137.    "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired for purposes of section 1124 of the Bankruptcy Code.

138.    "*Rejected Executory Contract and Unexpired Lease List*" means the list, as determined by the Debtors or the Reorganized Debtors, as applicable, of Executory Contracts and Unexpired Leases that will be rejected by the Reorganized Debtors pursuant to the Plan, which list shall be included in the Plan Supplement.

139.    "*Released Parties*" means, collectively, and in each case only in its capacity as such:  (a) each of the Debtors and the Reorganized Debtors; (b) the Consenting Creditors; (c) the DIP Agent; (d) the DIP Lenders; (e) the Indenture Trustees; (f) the Backstop Parties; (g) each of the Electing Lenders; and (h) with respect to each of the foregoing identified in subsections (a) through (g) herein, each of such entities' respective shareholders, equityholders (regardless of whether such interests are held directly or indirectly) (other than with respect to an equity holder of a Debtor), predecessors, successors, assigns, affiliates, subsidiaries, members, principals, managers, current and former officers, current and former directors, employees, managers, managing member, advisory board members, partners, agents, attorneys, accountants, financial advisors, investment bankers, restructuring advisors, professionals, consultants, advisors, and representatives, each in their capacities as such.

140.    "*Releasing Parties*" means, collectively, and in each case only in its capacity as such:  (a) each of the Debtors and the Reorganized Debtors; (b) the Creditors' Committee and its members; (c) the Consenting Creditors; (d) the DIP Agent; (e) the DIP Lenders; (f) the Administrative Agent; (g) the Indenture Trustees; (h) the Backstop Parties; (i) each of the Electing Lenders; (j) all holders of Claims or Interests that vote to accept the Plan or who are deemed to accept the Plan; (k) all holders of Claims or Interests that abstain from voting on the

14

Plan and who do not opt out of the releases provided by the Plan; (l) all holders of Claims or Interests that vote to reject the Plan and who do not opt out of the releases provided by the Plan; and (m) with respect to each of the foregoing parties under (a) through (l), herein, each of such entities' respective shareholders, equityholders (regardless of whether such interests are held directly or indirectly), predecessors, successors, assigns, affiliates, subsidiaries, members, principals, managers, current and former officers, current and former directors, employees, managers, advisory board members, agents, attorneys, accountants, financial advisors, investment bankers, restructuring advisors, professionals, consultants, advisors, and representatives, each in their capacities as such.

141.   "*Reorganized Debtors*" means, collectively, and each in its capacity as such, the Debtors, as reorganized pursuant to and under the Plan or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date, and from and after the Effective Date shall include (without limitation) Reorganized VNR.

142.   "*Reorganized VNR*" means VNR, as reorganized pursuant to and under the Plan or any successor thereto.

143.   "*Reorganized VNR Board*" means the board of directors of Reorganized VNR on and after the Effective Date.

144.   "*Reorganized VNR Common Stock*" means the new shares of common stock and/or limited liability company units, as applicable, in Reorganized VNR to be issued and distributed under and in accordance with the Plan.

145.   "*Reorganized VNR Management Incentive Plan*" means that certain post-Effective Date management incentive plan, the terms of which shall be subject to approval by the Reorganized VNR Board and shall authorize the issuance of awards representing 10% of the Reorganized VNR Common Stock, on a fully diluted basis as of the Effective Date, after giving effect to the issuance of the Reorganized VNR Common Stock issuable in connection with the Rights Offering, the Second Lien Investment, and the Backstop Premium, and to the Holders of VNR Preferred Units, but subject to dilution by any Reorganized VNR Common Stock issuable upon exercise of the New Warrants, which awards will be issued after the Effective Date at the discretion of the Reorganized VNR Board and on terms to be determined by the Reorganized VNR Board (including with respect to allocation, timing and structure of such issuance and the Reorganized VNR Management Incentive Plan).

146.   "*Reorganized VNR Registration Rights Agreement*" means, if requested by the Backstop Parties, the registration rights agreement by and between Reorganized VNR, the VNR Backstop Parties (including their affiliates), and certain other parties that receive 10% or more of the shares of Reorganized VNR Common Stock issued under the Plan and/or the Rights Offering or cannot sell their shares under Rule 144 of the Securities Act without volume or manner of sale restrictions, as of the Effective Date, pursuant to which such parties shall be entitled to customary registration rights with respect to such Reorganized VNR Common Stock, which shall be in substantially the form to be filed with the Plan Supplement.

147. "*Required Consenting Creditors*" means, collectively, (a) the Required Consenting Second Lien Noteholders, and (b) the Required Consenting Senior Noteholders.

148. "*Required Consenting Second Lien Noteholders*" means the Consenting Second Lien Noteholders (as such term is defined in the RSA) holding more than sixty-six and two-thirds percent (66.66%) of the Consenting Second Lien Notes Claims (as such term is defined in the RSA).

149. "*Required Consenting Senior Noteholders*" means those parties holding more than 66.66% of the Backstop Commitments as identified on Exhibit E to the RSA.

150. "*Requisite Commitment Parties*" has the meaning set forth in the Backstop Agreement.

151. "*Restructuring Transactions*" means, collectively, those mergers, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Debtors and the Required Consenting Senior Noteholders reasonably determine to be necessary or desirable to implement the Plan with respect to the Debtors in a manner consistent with the RSA and the Backstop Agreement.

152. "*Rights*" means the rights to subscribe to up to the 1145 Rights Offering Amount of Rights Offering Equity at a price per share to be determined based on a twenty-five percent (25%) discount to Plan Value.

153. "*Rights Offering*" means the 1145 Rights Offering and the 4(a)(2) Backstop Commitment.

154. "*Rights Offering Equity*" means the 1145 Rights Offering Equity and the 4(a)(2) Backstop Commitment Equity.

155. "*Rights Offering Participants*" means, as applicable, (a) the 1145 Rights Offering Participants, and (b) the participants in the 4(a)(2) Backstop Commitment.

156. "*Royalty and Working Interests*" means working interests granting the right to exploit oil and gas, and certain other royalty or mineral interests, including but not limited to, landowner's royalty interests, overriding royalty interests, net profit interests, non-participating royalty interests, and production payments.

157. "*RSA*" means that certain Restructuring Support Agreement, dated as of February 1, 2017, by and between the Debtors and the Consenting Creditors, as may be amended, restated, or supplemented from time to time.

158. "*Schedules*" means the schedules of assets and liabilities, schedules of Executory Contracts or Unexpired Leases, and statement of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules.

159. "*SEC*" means the Securities and Exchange Commission.

16

160.     "*Second Lien Adequate Protection Claims*" means the Second Lien Superpriority Claims as defined in the DIP Orders.

161.     "*Second Lien Investment*" means the purchase by the Second Lien Investors of the Second Lien Investment Equity for an aggregate purchase price of $19,250,000.00 at a price per share to be determined based on a twenty-five percent (25%) discount to Plan Value.

162.     "*Second Lien Investment Agreement*" means the agreement whereby the Second Lien Investors committed to make the Second Lien Investment.

163.     "*Second Lien Investment Equity*" means, in the aggregate, a number of shares of Reorganized VNR Common Stock equal to four and three tenths percent (4.3%) as of the Effective Date (subject to dilution by (i) the Reorganized VNR Common Stock issuable upon exercise of the New Warrants and (ii) the Reorganized VNR Management Incentive Plan).

164.     "*Second Lien Investors*" means the Consenting Second Lien Noteholders, in their capacity as purchasers of the Second Lien Investment Equity.

165.     "*Second Lien Notes*" means those certain 7.00% Senior Secured Second Lien Notes due February 15, 2023, issued by VNR and VNR Finance Corp. pursuant to the Second Lien Notes Indenture.

166.     "*Second Lien Notes Claims*" means any Claim derived from or arising under the Second Lien Notes, the Second Lien Notes Indenture or the Notes Documents (as defined in the Second Lien Notes Indenture), including the Second Lien Adequate Protection Claims.  The Second Lien Notes Claims are Allowed Claims as set forth in Article III.B.4(b).

167.     "*Second Lien Notes Indenture*" means that certain Indenture, dated as of February 10, 2016, by and among VNR and VNR Finance Corp., as issuers, and the Second Lien Notes Trustee, as may be amended, restated or otherwise supplemented from time to time.

168.     "*Second Lien Notes Trustee*" means Delaware Trust Company, as trustee under the Second Lien Notes Indenture.

169.     "*Secured*" means when referring to a Claim:  (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan or separate order of the Bankruptcy Court as a secured claim.

170.     "*Securities Act*" means the Securities Act of 1933, as amended, together with the rules and regulations promulgated thereunder.

171.     "*Security*" or "*Securities*" has the meaning set forth in section 2(a)(1) of the Securities Act.

172.    "*Senior Commitment Party*" has the meaning set forth in the Backstop Agreement.

173.    "*Senior Notes*" means, collectively, (a) the 2019 Senior Notes and (b) the 2020 Senior Notes.

174.    "*Senior Note Claim Distribution*" means, in the aggregate, a number of shares of Reorganized VNR Common Stock equal to 97% of the aggregate Reorganized VNR Common Stock as of the Effective Date (subject to dilution by (i) the Rights Offering Equity, (ii) the Second Lien Investment Equity, (iii) the Backstop Premium, (iv) the Reorganized VNR Common Stock issuable upon exercise of the New Warrants, (v) the Reorganized VNR Management Incentive Plan, and (vi) the General Unsecured Equity Distribution).

175.    "*Senior Notes Claims*" means any Claim derived from or arising under the Senior Notes.

176.    "*Senior Notes Indentures*" means, collectively, (a) the 2019 Senior Notes Indenture and (b) the 2020 Senior Notes Indenture.

177.    "*Senior Notes Trustees*" means, collectively (a) the 2019 Senior Notes Trustee and (b) the 2020 Senior Notes Trustee.

178.    "*Trade Claims*" means any Allowed Claim held by a Trade Creditor against the Debtors; *provided*, that Trade Claims shall not include Administrative Claims or any Claim of a Trade Creditor that is otherwise paid in full pursuant to an order of the Bankruptcy Court.

179.    "*Trade Claims Distribution Pool*" means an amount equal to $3,000,000 to be used for Cash payments on account of Trade Claims in accordance with the Plan.

180.    "*Trade Creditor*" means each trade creditor or vendor who has entered into an agreement with the Debtors to have an ongoing business relationship with the Debtors as of and after the Effective Date.

181.    "*U.S.*" means the United States of America.

182.    "*U.S. Trustee*" means the Office of the U.S. Trustee Region 7 for the Southern District of Texas.

183.    "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

184.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

185.    "*Unsecured Claim*" any Claim that is not Secured by a Lien on property in which one of the Debtors' Estates has an interest.

186.    "*VNR*" means Vanguard Natural Resources, LLC.

187.    "*VNR Common Unit New Warrants*" means the 3-year warrants issued to Holders of Allowed VNR Common Units for 3% of the Reorganized VNR Common Stock as of the Effective Date exercisable at a total enterprise value to be calculated based on actual net debt as calculated in accordance with Exhibit A of the RSA, plus Allowed General Unsecured Claims (including rejection damage claims), Trade Claims, DIP Facility Claims and Administrative Claims, and the liquidation preference of the VNR Preferred Units, each as determined as of the Effective Date without giving effect to the Rights Offering, the Backstop Agreement, or the Second Lien Investment, on the terms set forth in the Warrant Agreement.

188.    "*VNR Common Units*" means the common units representing limited liability company interests in VNR, which are traded publicly on NASDAQ under the ticker symbol VNR.

189.    "*VNR Preferred Unit Equity Distribution*" means, in the aggregate, a number of shares of Reorganized VNR Common Stock equal to 3% of the Reorganized VNR Common Stock as of the Effective Date (subject to dilution by (i) the Rights Offering Equity, (ii) the Second Lien Investment Equity, (iii) the Backstop Premium, (iv) the Reorganized VNR Common Stock issuable upon exercise of the New Warrants and (v) the Reorganized VNR Management Incentive Plan).

190.    "*VNR Preferred Unit New Warrants*" means the means the 3-year warrants issued to Holders of Allowed VNR Preferred Units for 3% of the Reorganized VNR Common Stock as of the Effective Date exercisable at a total enterprise value to be calculated based on actual net debt as calculated in accordance with Exhibit A of the RSA, plus Allowed General Unsecured Claims (including rejection damage claims), Trade Claims, DIP Facility Claims and Administrative Claims, each as determined as of the Effective Date without giving effect to the Rights Offering, the Backstop Agreement, or the Second Lien Investment, on the terms set forth in the Warrant Agreement.

191.    "*VNR Preferred Units*" means, collectively, (a) the 7.875% Series A Cumulative Redeemable Perpetual Preferred Units, (b) the 7.625% Series B Cumulative Redeemable Perpetual Preferred Units, and (c) the 7.75% Series C Cumulative Redeemable Perpetual Preferred Units.

192.    "*Warrant Agreement*" means that certain agreement providing for, among other things, the issuance and terms of the New Warrants, the form of which shall be Filed pursuant to the Plan Supplement.

B.      *Rules of Interpretation*.

For the purposes of the Plan:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or

substantially on those terms and conditions; (c) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (d) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (e) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (f) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (g) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (h) subject to the provisions of any contract, certificate of incorporation, or similar formation document or agreement, by-law, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (i) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (j) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (k) any term used in capitalized form but that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (l) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (m) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (n) any immaterial effectuating provisions may be interpreted by the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; and (o) except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors shall mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

C.     *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.     *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, that corporate governance matters relating to the Debtors or the

Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or Reorganized Debtor, as applicable.

E.    *Reference to Monetary Figures*.

All references in the Plan to monetary figures shall refer to currency of the U.S., unless otherwise expressly provided.

F.    *Conflicts*.

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

G.    *Consent and Approval Rights with Respect to Documentation*.

Each document, agreement, term, and condition that is referenced, described, or set forth in the Plan (including, without limitation, any Plan Supplement document or definitive or ancillary document contemplated to be entered into in connection with the Restructuring Transactions or the implementation thereof, including any amendments or modifications thereto) shall be subject to all applicable consent and approval rights of the parties to the RSA and Backstop Agreement, in each case, to the extent set forth therein, and such consent and approval rights are hereby expressly incorporated by reference into the Plan.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, DIP FACILITY CLAIMS, AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, DIP Facility Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests.  Each of the Debtors shall be obligated to satisfy only the Allowed Administrative Claims, DIP Facility Claims, or Priority Tax Claims of its respective Estate.

A.    *Administrative Claims*.

1.    General Administrative Claims.

Except as specified in this Article II, unless the Holder of an Allowed General Administrative Claim and the Debtors or the Reorganized Debtors, as applicable, agree to less favorable treatment, each Holder of an Allowed General Administrative Claim will receive, in full satisfaction of its General Administrative Claim, Cash equal to the amount of such Allowed General Administrative Claim either:  (a) on the Effective Date; (b) if the General Administrative Claim is not Allowed as of the Effective Date, 60 days after the date on which an order allowing such General Administrative Claim becomes a Final Order, or as soon thereafter as reasonably practicable; or (c) if the Allowed General Administrative Claim is based on a liability incurred by the Debtors in the ordinary course of their business after the Petition Date, pursuant to the terms and conditions of the particular transaction or agreement giving rise to such Allowed

General Administrative Claim, without any further action by the Holders of such Allowed General Administrative Claim, and without any further notice to or action, order, or approval of the Bankruptcy Court.  Notwithstanding the foregoing, no request for payment of a General Administrative Claim need be Filed with respect to a General Administrative Claim previously Allowed by Final Order.

Except for Claims of Professionals, requests for payment of General Administrative Claims that were not accrued in the ordinary course of business must be Filed and served on the Debtors or the Reorganized VNR, as applicable, no later than the Administrative Claims Bar Date applicable to the Debtor against whom the General Administrative Claim is asserted pursuant to the procedures specified in the Confirmation Order and the notice of the Effective Date.  Holders of General Administrative Claims that are required to File and serve a request for payment of such General Administrative Claims by the Administrative Claims Bar Date that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such General Administrative Claims against the Debtors, the Reorganized Debtors, or their respective property and such General Administrative Claims shall be deemed forever discharged and released as of the Effective Date.  Any requests for payment of General Administrative Claims that are not properly Filed and served by the Administrative Claims Bar Date shall not appear on the Claims Register and shall be disallowed automatically without the need for further action by the Debtors or the Reorganized Debtors or further order of the Bankruptcy Court.

The Reorganized Debtors, in their sole and absolute discretion, may settle General Administrative Claims in the ordinary course of business without further Bankruptcy Court approval.  The Reorganized Debtors may also choose to object to any Administrative Claim no later than 60 days from the Administrative Claims Bar Date, subject to extensions by the Bankruptcy Court, agreement in writing of the parties, or on motion of a party in interest approved by the Bankruptcy Court.  Unless the Debtors or the Reorganized Debtors (or other party with standing) object to a timely filed and properly served Administrative Claim, such Administrative Claim will be deemed Allowed in the amount requested.  In the event that the Debtors or the Reorganized Debtors object to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court will determine whether such Administrative Claim should be allowed and, if so, in what amount.

2.      Professional Compensation.

(a)      Final Fee Applications.

All final requests for payment of Professional Fee Claims, including the Professional Fee Claims incurred during the period from the Petition Date through the Effective Date, must be Filed and served on the Reorganized Debtors no later than 60 days after the Effective Date.  All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court in the Chapter 11 Cases, including the Interim Compensation Order, and once approved by the Bankruptcy Court, promptly paid from the Professional Fee Escrow Account up to its full Allowed amount.

(b)     <u>Professional Fee Escrow Account.</u>

On the Effective Date, the Reorganized Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals.  Such funds shall not be considered property of the Estates of the Debtors or the Reorganized Debtors.  The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by a Final Order.  When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors, without any further action or order of the Bankruptcy Court.  If the Professional Fee Escrow Account is insufficient to fund the full Allowed amounts of Professional Fee Claims, remaining unpaid Allowed Professional Fee Claims will be paid by the Debtors or the Reorganized Debtors, as applicable.

(c)     <u>Professional Fee Reserve Amount.</u>

Professionals shall estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date and shall deliver such estimate to the Debtors no later than two Business Days before the Effective Date; *provided*, *however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Filed Professional Fee Claims.  If a Professional does not provide an estimate, the Debtors or Reorganized Debtors may estimate the unpaid and unbilled fees and expenses of such Professional.  The total amount estimated pursuant to this section shall comprise the Professional Fee Reserve Amount.

(d)     <u>Post-Confirmation Date Fees and Expenses.</u>

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Debtors.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      Adequate Protection Claims.

Adequate Protection Claims of the Lenders will receive the treatment provided for in Article III.B.3 for Holders of Allowed Lender Claims.  Second Lien Adequate Protection Claims will receive the treatment provided for in Article III.B.4.

*B.*       *DIP Facility Claims.*

Subject to the terms, conditions, and priorities set forth in the DIP Orders, in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each Allowed DIP Facility Claim, each such Allowed DIP Facility Claim shall be paid in full in Cash by the Debtors on the Effective Date in an amount equal to the Allowed amount of such DIP Facility Claim and all commitments under the DIP Facility shall terminate. Upon the indefeasible payment or satisfaction in full in Cash of the DIP Facility Claims (other than any DIP Facility Claims based on the Debtors' contingent obligations under the DIP Facility for which no claim has been made) in accordance with the terms of this Plan, on the Effective Date, all Liens granted to secure such obligations shall be terminated and of no further force and effect.

*C.*       *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

*D.*       *Statutory Fees.*

All fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date with respect to the Debtors shall be paid by the Debtors.  On and after the Effective Date, the Reorganized Debtors shall pay any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee.  Each Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

ARTICLE III.
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

*A.*       *Classification of Claims and Interests.*

Claims and Interests, except for Administrative Claims, Professional Fee Claims, DIP Facility Claims and Priority Tax Claims, are classified in the Classes set forth in this Article III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.  The Debtors reserve the right to assert that the treatment provided to Holders of Claims and Interests pursuant to Article III.B of the Plan renders such Holders Unimpaired.

24

The Plan constitutes a separate chapter 11 plan of reorganization for each Debtor, each of which shall include the classifications set forth below.  For all purposes under the Plan, each Class will contain sub-Classes for each of the Debtors; *provided*, that (a) any Class that is vacant as to a particular Debtor will be treated in accordance with Article III.D below and (b) to the extent that a Class contains Claims or Interests only with respect to one or more particular Debtor, such Class applies solely to such Debtor.

The following chart represents the classification of Claims and Interests for each Debtor pursuant to the Plan.

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 3 | Lender Claims | Impaired | Entitled to Vote |
| Class 4 | Second Lien Notes Claims | Impaired | Entitled to Vote |
| Class 5 | Senior Notes Claims | Impaired | Entitled to Vote |
| Class 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 7 | Trade Claims | Impaired | Entitled to Vote |
| Class 8 | Intercompany Claims | Unimpaired/ Impaired | Not Entitled to Vote (Deemed to Accept/Reject) |
| Class 9 | Intercompany Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| Class 10 | VNR Preferred Units | Impaired | Entitled to Vote |
| Class 11 | VNR Common Units | Impaired | Entitled to Vote |
| Class 12 | Other Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.      *Treatment of Claims and Interests.*

To the extent a Class contains Allowed Claims or Allowed Interests with respect to any Debtor, the classification of Allowed Claims and Allowed Interests is specified below.

1.      Class 1 – Other Secured Claims.

(a)      *Classification*:  Class 1 consists of Other Secured Claims.

(b)      *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in

exchange for each Allowed Other Secured Claim, each such Holder shall receive, at the option of the applicable Debtor(s), either:

(i)     payment in full in Cash;

(ii)    delivery of collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code;

(iii)   Reinstatement of such Claim; or

(iv)    other treatment rendering such Claim Unimpaired.

(c)   *Voting*: Class 1 is Unimpaired under the Plan.  Holders of Claims in Class 1 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2.     Class 2 – Other Priority Claims.

(a)   *Classification*:  Class 2 consists of Other Priority Claims.

(b)   *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive, at the option of the applicable Debtor(s), either:

(i)     payment in full in Cash; or

(ii)    other treatment rendering such Claim Unimpaired.

(c)   *Voting*: Class 2 is Unimpaired under the Plan.  Holders of Claims in Class 2 are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.     Class 3 – Lender Claims.

(a)   *Classification*:  Class 3 consists of Lender Claims Against the Debtors.

(b)   *Allowance*:  The Lender Claims shall be Allowed in accordance with the terms of the Plan.

(c)   *Treatment*:  Notwithstanding any other provision of this Plan to the contrary, on the Effective Date, except to the extent that a Holder of an Allowed Lender Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of

26

and in exchange for each Allowed Lender Claim, each such Holder shall receive its Pro Rata share of:

(i)     if such Holder has elected to participate in the Exit Revolving Loans (each, an "*Electing Lender*"), (A) the Exit Revolving Loans and (B) following the execution of definitive documentation, dated on or before the Effective Date, necessary to implement the Plan, including the Exit Facility Documents, payment of the Electing Lender Payment Amount under the terms of the Exit Facility Documents; or

(ii)    if such Holder has not elected to participate in the Exit Revolving Loans (each, a "*Non-Electing Lender*"), the Exit Term Loans.

For the avoidance of doubt, Non-Electing Lenders shall not be entitled to receive any portion of the Electing Lender Payment Amount or the Exit Revolving Loans and each Non-Electing Lender shall receive only Exit Term Loans in a principal amount equal to its Allowed Lender Claim.

(d)     *Voting*:  Class 3 is Impaired under the Plan.  Holders of Claims in Class 3 are entitled to vote to accept or reject the Plan.

4.     Class 4 – Second Lien Notes Claims.

(a)     *Classification*:  Class 4 consists of Second Lien Notes Claims.

(b)     *Allowance*:  The Second Lien Notes Claims shall be Allowed in the aggregate principal amount equal to $78,075,297.00, plus accrued and unpaid postpetition interest at the non-default rate through the Effective Date pursuant to the Second Lien Notes.  For the avoidance of doubt, the Second Lien Notes Claims shall not be increased by any make-whole or prepayment premium on account of the Restructuring Transactions described herein.

(c)     *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Second Lien Notes Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Second Lien Notes Claim, each such Holder shall receive its Pro Rata share of the New Second Lien Notes. Distribution to each Holder of an Allowed Second Lien Notes Claim shall be subject to the rights and the terms of the Second Lien Notes Indenture.

(d)     *Voting*:  Class 4 is Impaired under the Plan.  Holders of Claims in Class 4 are entitled to vote to accept or reject the Plan.

5.     Class 5 – Senior Notes Claims.

27

(a) *Classification*:  Class 5 consists of Senior Notes Claims.

(b) *Allowance*:  The Senior Notes Claims are Allowed in the amount of (i) (a) $51,833,550.00 due under the 2019 Senior Notes and (b) $391,853,038.00 due under the 2020 Senior Notes, plus (ii) if Allowed, accrued and unpaid interest (but excluding any amounts included in clauses (a) or (b)), premiums, fees and costs and expenses, including, without limitation, attorney's fees, trustee's fees, and other professional fees and disbursements, and other obligations owing under the Senior Notes Indentures.

(c) *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Senior Notes Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Senior Notes Claim, each such Holder shall receive (i) its Pro Rata share of the Senior Note Claim Distribution  and (ii) the opportunity to participate in the 1145 Rights Offering  in accordance with the Plan and the 1145 Rights Offering Procedures.

(d) *Voting*:  Class 5 is Impaired under the Plan.  Holders of Claims in Class 5 are entitled to vote to accept or reject the Plan.

6. Class 6 – General Unsecured Claims.

(a) *Classification*:  Class 6 consists of General Unsecured Claims.

(b) *Allowance*:  The General Unsecured Claims shall be Allowed in accordance with the terms of the Plan.

(c) *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed General Unsecured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed General Unsecured Claim, each such Holder shall receive its Pro Rata share of [_] percent of the Reorganized VNR Common Stock (any such Reorganized VNR Common Stock as may be distributed hereunder, the "*General Unsecured Equity Distribution*"). Notwithstanding the foregoing, each Holder of an Allowed General Unsecured Claim with an aggregate Allowed General Unsecured Claim of less than $[___] shall have the right to elect to receive, in lieu of any portion of the General Unsecured Equity Distribution described in the immediately preceding sentence, Cash in an amount equal to [____] percent of such Allowed General Unsecured Claim from the General Unsecured Cash Distribution Pool.

(d) *Voting*:  Class 6 is Impaired under the Plan.  Holders of Claims in Class 6 are entitled to vote to accept or reject the Plan.

7.     Class 7 – Trade Claims.

    (a)     *Classification*:  Class 7 consists of Trade Claims.

    (b)     *Allowance*:  The Trade Claims shall be Allowed in accordance with the terms of the Plan.

    (c)     *Treatment*:  On the Effective Date, or as soon as reasonably practicable thereafter, except to the extent that a Holder of an Allowed Trade Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Trade Claim, each such Holder shall receive Cash in an amount equal to its Pro Rata share of the Trade Claims Distribution Pool; *provided*, that no holder of an Allowed Trade Claim shall be entitled to distributions exceeding the amount of its Allowed Trade Claim.

    (d)     *Voting*:  Class 7 is Impaired under the Plan.  Holders of Claims in Class 7 are entitled to vote to accept or reject the Plan.

8.     Class 8 – Intercompany Claims.

    (a)     *Classification*:  Class 8 consists of Intercompany Claims.

    (b)     *Treatment*:  Each Allowed Intercompany Claim shall be, at the option of the holder of the relevant Intercompany Claim, with the reasonable consent of the Required Consenting Senior Noteholders and the Requisite Commitment Parties, either:  (a) Reinstated; (b) compromised, extinguished, or settled or (c) canceled and shall receive no distribution on account of such Claims; *provided, however* that any Intercompany Claim relating to any postpetition payments from any Debtor to another Debtor under any postpetition Intercompany Transfer (as defined in the Cash Management Order) shall be paid in full as a General Administrative Claim pursuant to Article II.A of the Plan.

    (c)     *Voting*:  Class 8 is either Unimpaired, and such Holders of Intercompany Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code, or Impaired, and such Holders of Allowed Class 8 Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Allowed Intercompany Claims are not entitled to vote to accept or reject the Plan.

9.     Class 9 – Intercompany Interests.

    (a)     *Classification*:  Class 9 consists of all Intercompany Interests.

    (b)     *Treatment*:  Intercompany Interests shall be Reinstated as of the Effective Date.

(c)     *Voting*:  Class 9 is Unimpaired under the Plan.  Holders of Intercompany Interests are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

10.     Class 10 – VNR Preferred Units.

(a)     *Classification*:  Class 10 consists of the VNR Preferred Units.

(b)     *Treatment*:  On the Effective Date, except to the extent that a Holder of VNR Preferred Units agrees to less favorable treatment of its VNR Preferred Units, and subject to the terms of the Restructuring Transactions, all VNR Preferred Units shall be cancelled and shall be of no further force and effect, whether surrendered for cancellation or otherwise, and in full and final satisfaction, settlement, release, and discharge of and in exchange for each VNR Preferred Unit, each Holder of VNR Preferred Units shall receive: (a) if Class 5, Class 6, Class 7, and Class 10 are each determined to have voted to accept the Plan in accordance with the Bankruptcy Code, such Holder's Pro Rata share of (i) the VNR Preferred Unit Equity Distribution and (ii) VNR Preferred Unit New Warrants; or (b) if Class 5, Class 6, Class 7, or Class 10 is determined to have voted to reject the Plan in accordance with the Bankruptcy Code, no distribution.

(c)     *Voting*:  Class 10 is Impaired under the Plan.  Holders of VNR Preferred Units are entitled to vote to accept or reject the Plan.

11.     Class 11 – VNR Common Units.

(a)     *Classification*:  Class 11 consists of the VNR Common Units.

(b)     *Treatment*:  On the Effective Date, except to the extent that a Holder of VNR Common Units agrees to less favorable treatment of its VNR Common Units, and subject to the terms of the Restructuring Transactions, all VNR Common Units shall be cancelled and shall be of no further force and effect, whether surrendered for cancellation or otherwise, and in full and final satisfaction, settlement, release, and discharge of and in exchange for each VNR Common Unit, each Holder of VNR Common Units shall receive: (a) if Class 5, Class 6, Class 7, Class 10, and Class 11 are each determined to have voted to accept the Plan in accordance with the Bankruptcy Code, such Holder's Pro Rata share the VNR Common Unit New Warrants; or (b) if Class 5, Class 6, Class 7, Class 10, or Class 11 is determined to have voted to reject the Plan in accordance with the Bankruptcy Code, no distribution.

(c)     *Voting*:  Class 11 is Impaired under the Plan.  Holders of VNR Common Units are entitled to vote to accept or reject the Plan.

12.     Class 12 – Other Existing Equity Interests.

    (a)    *Classification*: Class 12 consists of all Other Existing Equity Interests.

    (b)    *Treatment*: On the Effective Date, each Other Existing Equity Interest shall be cancelled and of no further force and effect, and the holders thereof shall not receive or retain any distribution on account of their Other Existing Equity Interests.

    (c)    *Voting*:  Class 12 is Impaired under the Plan.  Each holder of an Other Existing Equity Interest will be conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Other Existing Equity Interests are not entitled to vote to accept or reject the Plan.

C.    *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

D.    *Elimination of Vacant Classes.*

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes pursuant to the Disclosure Statement Order shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

E.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B of the Plan.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article X hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including, without limitation, by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules or to withdraw the Plan as to such Debtor.

F.    *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Holders of Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims or Interests in such Class.

G.      *Presumed Acceptance and Rejection of the Plan*

To the extent that Claims of any class are canceled, each Holder of a Claim in such class is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.  To the extent that Claims or Interests of any Class are Reinstated, each Holder of a Claim or Interest in such Class is presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plans.

H.      *Intercompany Interests*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests, but rather for the purposes of administrative convenience, for the ultimate benefit of the Holders of Reorganized VNR Common Stock, and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to make certain distributions to the Holders of Allowed Claims.

I.      *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

J.      *Subordinated Claims and Interests.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors or Reorganized Debtors reserve the right to re-classify any Allowed Claim in accordance with any contractual, legal, or equitable subordination relating thereto.

ARTICLE IV.
**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.      *General Settlement of Claims and Interests*

The Plan shall be deemed a motion to approve the good faith compromise and settlement pursuant to which the Debtors, the Holders of Claims against and/or Interests in the Debtors, the Holders of Senior Note Claims, and the Holders of Second Lien Note Claims settle all Claims, Interests, and Causes of Action pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan (including, without limitation, any argument that the Allowed Second Lien

Claims should be increased by a "make-whole" or similar amount or premium).  The Confirmation Order shall constitute the Court's approval of the compromise, settlement, and release of all such Claims, Interests, and Causes of Action, as well as a finding by the Bankruptcy Court that all such compromises, settlements, and releases are in the best interests of the Debtors, their Estates, and the Holders of Claims, Interests, and Causes of Action, and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle all Claims and Causes of Action against, and Interests in, the Debtors and their Estates. The compromises, settlements, and releases described herein shall be deemed nonseverable from each other and from all other terms of the Plan. Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final.

B.    *Restructuring Transactions.*

On the Effective Date, the Debtors or the Reorganized Debtors, as applicable, will effectuate the Restructuring Transactions, and will take any actions as may be necessary or advisable to effect a corporate restructuring of their respective businesses or a corporate restructuring of the overall corporate structure of the Debtors, to the extent provided herein.  The actions to implement the Restructuring Transactions may include, each to the extent acceptable to the Required Consenting Senior Noteholders and the Requisite Commitment Parties:  (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree, including the formation of the entity or entities that will comprise the Reorganized Debtors; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, formation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, dissolution, or other organizational documents pursuant to applicable state law; (d) the execution and delivery of the New Organizational Documents; (e) the execution and delivery of the Exit Facility Documents (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees, expenses, and the Electing Lender Payment Amount to be paid by the Debtors and the Reorganized Debtors, as applicable), subject to any post-closing execution and delivery periods provided for in the Exit Facility Documents; (f) the execution and delivery of the New Second Lien Notes Documents (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees to be paid by the Debtors, the Reorganized Debtors, as applicable, in connection therewith), subject to any post-closing execution and delivery periods provided for in the New Second Lien Notes Documents; (g) the execution and delivery of the Reorganized VNR Registration Rights Agreement; (h) the issuance of the Reorganized VNR Common Stock in accordance with the Plan; (i) pursuant to the 1145 Rights Offering Procedures and the Backstop Agreement, the implementation of the Rights Offering and the issuance of the Reorganized VNR Common Stock in connection therewith; (j) the issuance of the New Warrants in accordance with the Plan; (k) the funding of the Trade Claims

Distribution Pool; (l) the funding of the General Unsecured Cash Distribution Pool; and (m) after cancellation of the Interests in VNR, all other actions that the applicable Entities determine to be necessary or advisable, including making filings or recordings that may be required by law in connection with the Plan.

The Confirmation Order shall and shall be deemed to, pursuant to sections 1123 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

C.      *Sources of Consideration for Plan Distributions.*

The Reorganized Debtors shall fund distributions under the Plan, subject to the terms hereof, as applicable, with:  (a) the Exit Facility; (b) any encumbered and unencumbered Cash on hand, including Cash from operations or asset dispositions, of the Debtors; (c) the Cash proceeds from the sale of the Reorganized VNR Common Stock pursuant to the Rights Offering; (d) the Cash proceeds from the Second Lien Investment; (e) the Second Lien Notes; (f) the Reorganized VNR Common Stock; and (g) the New Warrants.  Each distribution and issuance referred to in Article VI of the Plan shall be governed by the terms and conditions set forth herein applicable to such distribution or issuance, expressly including the consent rights set forth herein, and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.  The issuance, distribution, or authorization, as applicable, of certain securities in connection with the Plan, including the Reorganized VNR Common Stock, the Rights, and the New Warrants will be exempt from SEC registration to the fullest extent permitted by law, as described more fully in Article VI.D below.

1.      Exit Facility.

On the Effective Date, the Reorganized Debtors shall enter into the Exit Facility.  The Exit Facility shall be on terms set forth in the Exit Facility Documents and consistent with the terms set forth in the Exit Facility Documents.

Confirmation shall be deemed approval of the Exit Facility (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors or the Reorganized Debtors in connection therewith), to the extent not previously approved by the Bankruptcy Court, and the Reorganized Debtors shall be authorized to execute and deliver those documents necessary or appropriate to obtain the Exit Facility, including any and all documents required to enter into the Exit Facility and all collateral documents related thereto, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Reorganized Debtors may deem to be necessary to consummate entry into the Exit Facility.

2.      New Second Lien Notes.

34

On the Effective Date, the Reorganized Debtors shall issue the New Second Lien Notes, in accordance with the terms and conditions of the New Second Lien Notes Documents. The documentation for the New Second Lien Notes shall be included in the Plan Supplement.

Confirmation shall be deemed approval of the New Second Lien Notes (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors or the Reorganized Debtors in connection therewith), to the extent not previously approved by the Bankruptcy Court, and the Reorganized Debtors shall be authorized to execute and deliver those documents necessary or appropriate to obtain the New Second Lien Notes, including any and all documents required to enter into the New Second Lien Notes and all collateral documents related thereto, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Reorganized Debtors may deem to be necessary to consummate entry into the New Second Lien Notes.

3.      Second Lien Investment.

On the Effective Date, the Consenting Second Lien Noteholders will purchase the Second Lien Investment Equity from Reorganized VNR, in accordance with the terms and conditions of the Second Lien Investment Agreement. The Second Lien Investment will be fully backstopped by the Backstop Parties in accordance with and subject to the terms and conditions of the Backstop Agreement.

Confirmation shall be deemed approval of the Second Lien Investment (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors or the Reorganized Debtors in connection therewith), to the extent not previously approved by the Bankruptcy Court, and the Reorganized Debtors shall be authorized to execute and deliver those documents necessary or appropriate to obtain the Second Lien Investment, including any and all documents required to enter into the Second Lien Investment, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Reorganized Debtors may deem to be necessary to consummate entry into the Second Lien Investment.

4.      Rights Offering for Reorganized VNR Common Stock.

Following approval by the Bankruptcy Court of the 1145 Rights Offering Procedures, VNR shall distribute the Rights to the Rights Offering Participants on behalf of Reorganized VNR as set forth in the Plan and the 1145 Rights Offering Procedures. The Rights Offering Participants shall have the right to purchase their allocated shares of Reorganized VNR Common Stock at the per share purchase price set forth in the Backstop Agreement and the 1145 Rights Offering Procedures. The Rights Offering will be fully backstopped by the Backstop Parties in accordance with and subject to the terms and conditions of the Backstop Agreement.

Upon exercise of the Rights by the Rights Offering Participants pursuant to the terms of the Backstop Agreement and the 1145 Rights Offering Procedures, Reorganized VNR shall be

authorized to issue the Reorganized VNR Common Stock issuable pursuant to such exercise in accordance with Article IV.C.5.

The Backstop Parties' obligation to backstop the Rights Offering shall be contingent on the entry of the Backstop Agreement Order, which shall, among other things, approve the payment of the Backstop Premium and related expense reimbursements set forth in the Backstop Agreement to the Backstop Parties.  Entry of the Confirmation Order shall constitute Bankruptcy Court approval of the Rights Offering (including the transactions contemplated thereby, and all actions to be undertaken, undertakings to be made, and obligations to be incurred by Reorganized VNR in connection therewith).

      5.        Reorganized VNR Common Stock.

Reorganized VNR shall be authorized to issue the Reorganized VNR Common Stock to certain Holders of Claims or Interests pursuant to Article III.B.  Reorganized VNR shall issue all securities, instruments, certificates, and other documents required to be issued by it with respect to all such shares of Reorganized VNR Common Stock.  All such Reorganized VNR Common Stock issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.

Except as provided below, the Reorganized VNR Common Stock distributed under the Plan will be issued in book-entry form through the direct registry system of the transfer agent and DTC.  The ownership interest of each holder of such Reorganized VNR Common Stock, and transfers of ownership interests therein, will be recorded on the records of the transfer agent and the direct and indirect participants in DTC.  To receive Distributions of Reorganized VNR Common Stock through DTC, Holders of Senior Notes Claims, Holders of Second Lien Note Claims, and Holders of VNR Preferred Units will be required to designate a direct or indirect participant in DTC with whom such holder has an account into which such Reorganized VNR Common Stock may be deposited.  The Reorganized VNR Common Stock issuable to holders of VNR Preferred Units will, with respect to VNR Preferred Units held through DTC, be delivered by the Reorganized VNR to the holders of VNR Preferred Units through DTC (via mandatory exchange, if applicable), and holders that do not hold their VNR Preferred Units in DTC may designate a direct or indirect participant in DTC with whom such holder has an account into which such Reorganized VNR Common Stock may be deposited or have their shares issued in book-entry form on the register of the transfer agent.

      6.        New Warrants.

Reorganized VNR shall be authorized to issue the New Warrants to certain Holders of Interests pursuant to Article III.B.  Each New Warrant will, subject to the antidilution adjustments described below and in the Warrant Agreement, be exercisable for one share of Reorganized VNR Common Stock.

The Warrant Agreement shall contain provisions for the adjustment of the exercise price and shares of Reorganized VNR Common Stock issuable upon exercise following stock splits, stock dividends, and similar combinations or subdivisions of the Reorganized VNR Common Stock.

Except as provided below, all New Warrants distributed under the Plan will be issued in book-entry form through the direct registry system of the warrant agent and DTC. The warrant agent will be the transfer agent for the Reorganized VNR Common Stock.  The ownership interest of each holder of such New Warrants, and transfers of ownership Case interests therein, will be recorded on the records of the warrant agent and the direct and indirect participants in DTC.  Holders of VNR Preferred Units or VNR Common Units that hold such Interests in DTC will receive their New Warrants by deposit to the account of a direct or indirect participant in DTC in which such VNR Preferred Units or VNR Common Units are held.  Holders that do not hold their VNR Preferred Units or VNR Common Units in DTC may designate a direct or indirect participant in DTC with whom such holder has an account into which such New Warrants may be deposited or have their New Warrants issued in book-entry form on the register of the warrant agent for the New Warrants.  Beneficial owners of the New Warrants will be required to follow the procedures that DTC or its direct or indirect participants, or the warrant agent for the New Warrants, as applicable, may establish for exercising their rights in respect of the New Warrants, including exercise and transfer thereof.  Reorganized VNR Common Stock issuable upon exercise of such New Warrants will be issued in book-entry form and held through DTC or the warrant agent for the New Warrants, as applicable.

D.    *Corporate Existence.*

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate Entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and by-laws (or other formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and by-laws (or other formation documents) are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state or federal law).

E.    *Vesting of Assets in the Reorganized Debtors.*

Except as otherwise provided in the Plan, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each applicable Reorganized Debtor, free and clear of all Liens, Claims, charges or other encumbrances.  Except as otherwise provided in the Plan, on and after the Effective Date, each of the Reorganized Debtors may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.  For the avoidance of doubt, on the Effective Date, all rights and obligations of the Debtors with respect to the Backstop Agreement shall vest in the applicable Reorganized Debtors, and the Reorganized Debtors will be deemed to assume all such obligations.

F.      *Cancellation of Existing Securities and Agreements.*

Except as otherwise provided in the Plan, on and after the Effective Date, all notes, instruments, certificates, agreements, indentures, mortgages, security documents, and other documents evidencing Claims or Interests, including Other Secured Claims, Lender Claims, Second Lien Notes Claims, Senior Notes Claims, and Interests in VNR, shall be deemed canceled, surrendered, and discharged without any need for further action or approval of the Bankruptcy Court or any Holder or other person and the obligations of the Debtors or the Reorganized Debtors, as applicable, thereunder or in any way related thereto shall be deemed satisfied in full and discharged, and the Indenture Trustees and the Administrative Agent shall be released from all duties thereunder; *provided, however,* that notwithstanding Confirmation or Consummation, any such indenture or agreement that governs the rights of the Holder of a Claim shall continue in effect solely for purposes of:  (a) allowing Holders to receive distributions under the Plan; (b) allowing the Indenture Trustees and the Administrative Agent to enforce their rights, claims, and interests vis-à-vis any parties other than the Debtors; (c) allowing the Indenture Trustees and the Administrative Agent to make the distributions in accordance with the Plan (if any), as applicable; (d) preserving any rights of the Administrative Agent or the Indenture Trustees to payment of fees, expenses, and indemnification obligations as against any money or property distributable to the Holders under the relevant indenture, the Intercreditor Agreement, or the Credit Agreement, including any rights to priority of payment and/or to exercise charging liens; (e) allowing the Indenture Trustees and the Administrative Agent to enforce any obligations owed to each of them under the Plan; (f) allowing the Indenture Trustees and the Administrative Agent to exercise rights and obligations relating to the interests of the Holders under the relevant indentures and credit agreements; (g) allowing the Indenture Trustees and the Administrative Agent to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court; and (h) permitting the Indenture Trustees and the Administrative Agent to perform any functions that are necessary to effectuate the foregoing; *provided, further, however,* that except as provided below, the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Debtors or Reorganized Debtors, as applicable.  Except for the foregoing, the Indenture Trustees and their respective agents shall be relieved of all further duties and responsibilities related to the Notes Indentures and the Plan, except with respect to such other rights of such Indenture Trustees that, pursuant to the applicable Notes Indentures, survive the termination of such indentures.  Subsequent to the performance by each Indenture Trustee of its obligations pursuant to the Plan, each Indenture Trustee and its agents shall be relieved of all further duties and responsibilities related to the applicable indenture.

G.      *Corporate Action.*

On the Effective Date, all actions contemplated under the Plan with respect to the applicable Debtor or Reorganized Debtor shall be deemed authorized and approved in all respects, including:  (a) implementation of the Restructuring Transactions; (b) selection of, and the election or appointment (as applicable) of, the directors and officers for the Reorganized Debtors; (c) execution and delivery of the Exit Facility Documents; (d) execution and delivery of the New Second Lien Notes Documents; (e) approval and adoption of (and, as applicable, the execution, delivery, and filing of) the New Organizational Documents; (f) the issuance and

38

distribution of the Reorganized VNR Common Stock in accordance with Plan; (g) the issuance and distribution of the New Warrants in accordance with the Plan; (h) the issuance and distribution of the Rights and the subsequent issuance and distribution of the Reorganized VNR Common Stock issuable upon the exercise of the Rights; (i) payment, in Cash, of all amounts owed to Holders of Allowed Lender Claims pursuant to Article III of the Plan; (j) the execution and delivery of the Reorganized VNR Registration Rights Agreement; (k) the establishment and funding of the Trade Claims Distribution Pool; and (l) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for herein involving the corporate structure of the Debtors or the Reorganized Debtors, as applicable, and any corporate action, authorization, or approval that would otherwise be required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred or to have been obtained and shall be in effect as of the Effective Date, without any requirement of further action, authorization, or approval by the Bankruptcy Court, security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors or any other person.

On or before the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors shall be authorized and, as applicable, directed to issue, execute, and deliver the agreements, documents, securities, and instruments, and take such actions, contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors, including the Exit Facility Documents, the New Second Lien Notes Documents, the Second Lien Investment, the New Organizational Documents, the Rights Offering, the Reorganized VNR Registration Rights Agreement, the Trade Claims Distribution Pool and the Reorganized VNR Common Stock, as applicable, and any and all other agreements, documents, securities, and instruments relating to the foregoing, and all such documents shall be deemed ratified.  The authorizations and approvals contemplated by this Article IV.G shall be effective notwithstanding any requirements under non-bankruptcy law.

H.     *New Organizational Documents.*

On the Effective Date, each of the Reorganized Debtors will file its New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in its respective state of incorporation or formation in accordance with the applicable laws of the respective state of incorporation or formation, to the extent required for such New Organizational Documents to become effective.  Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents will prohibit the issuance of non-voting equity securities.  After the Effective Date, the Reorganized Debtors may amend and restate their respective New Organizational Documents and other constituent documents as permitted by the laws of their respective state of incorporation and its respective New Organizational Documents and other constituent documents of the Reorganized Debtors.

I.     *Directors and Officers of the Reorganized Debtors.*

As of the Effective Date, the terms of the current members of the board of directors or managers, as applicable, of each Debtor shall expire and the initial Reorganized VNR Board shall consist of seven directors and will include: (a) two directors of current management selected by management of Debtors prior to the Effective Date and (b) five directors to be

selected by the Senior Commitment Parties in accordance with the RSA. Notwithstanding anything contained herein to the contrary, the Reorganized VNR Board shall be disclosed at or before the Confirmation Hearing.

After the Effective Date, the officers of each of the Reorganized Debtors shall be appointed in accordance with the respective New Organizational Documents. Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose in the Plan Supplement the identity and affiliations of any person proposed to serve on the initial board of directors or be an officer of each of the Reorganized Debtors. To the extent any such director or officer of the Reorganized Debtors is an "insider" under the Bankruptcy Code, the Debtors also will disclose the nature of any compensation to be paid to such director or officer. Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the New Organizational Documents.

*J.      Section 1146 Exemption.*

Pursuant to, and to the fullest extent permitted by, section 1146 of the Bankruptcy Code, any transfers of property pursuant to, in contemplation of, or in connection with, the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer, mortgage recording tax, or other similar tax, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers or property without the payment of any such tax, recordation fee, or governmental assessment.

*K.      Director, Officer, Manager, and Employee Liability Insurance*

On or before the Effective Date, the Debtors shall purchase and maintain directors' and officers' liability insurance policy coverage for the six-year period following the Effective Date for the benefit of the Debtors' current and former directors, managers, officers and employees on terms no less favorable to such persons than the Debtors' existing coverage under the D&O Liability Insurance Policies with available aggregate limits of liability upon the Effective Date of no less than the aggregate limit of liability under the existing D&O Liability Insurance Policies, which shall be reasonably acceptable to the Required Consenting Senior Noteholders and the Requisite Commitment Parties.

*L.      Management Incentive Plan.*

The Confirmation Order shall authorize the Reorganized VNR Board to adopt the Reorganized VNR Management Incentive Plan on the terms set forth herein.

*M.      Employee Obligations.*

Unless otherwise provided herein and except as set forth in Article V, all employee wages, compensation, and benefit programs set forth on Exhibit [___] (other than any employment, change of control, or severance type of agreement or plan) in place as of the Effective Date with the Debtors shall be assumed by the Reorganized Debtors and shall remain

in place as of the Effective Date, and the Reorganized Debtors will continue to honor such agreements, arrangements, programs, and plans.  Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date, all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

N.      *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Reorganized Debtors, and their respective officers and the Reorganized VNR Board, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities authorized and/or issued, as applicable, pursuant to the Plan, including the Reorganized VNR Common Stock and the Rights, in the name of and on behalf of Reorganized VNR, as applicable, without the need for any approvals, authorization, or consents.

O.      *Preservation of Causes of Action.*

Except as otherwise provided herein, in accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan, the Reorganized Debtors shall retain (or shall receive from the Debtors, as applicable) and may enforce all rights to commence and pursue any and all Causes of Action belonging to their Estates, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than:  (a) the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII, which shall be deemed released and waived by the Debtors and the Reorganized Debtors as of the Effective Date; and (b) all Causes of Action that arise under sections 544, 547, 548, and 549 of the Bankruptcy Code and state fraudulent conveyance law; *provided, however*, that in no event shall any Cause of Action against the Lenders be preserved to the extent provided in the release, exculpation, injunction provisions set forth in Article VIII of the Plan.

The Reorganized Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.  **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against it.**  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled herein or in a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation; *provided, however*, that in no event shall any Cause of Action against the Lenders be preserved

to the extent provided in the release, exculpation, injunction provisions set forth in Article VIII of the Plan.

The Reorganized Debtors reserve (or receive) and shall retain the Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors.  The Reorganized Debtors shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

P.      *Preservation of Royalty and Working Interests.*

Notwithstanding any other provision in the Plan, on and after the Effective Date, all Royalty and Working Interests shall be preserved and remain in full force and effect in accordance with the terms of the granting instruments or other governing documents applicable to such Royalty and Working Interests, and no Royalty and Working Interests shall be compromised or discharged by the Plan.  For the avoidance of doubt and notwithstanding anything to the contrary in the preceding sentence, any right to payment arising from a Royalty and Working Interest, if any, shall be treated as a General Unsecured Claim under this Plan and shall be subject to any discharge and/or release provided hereunder.

Q.      *Payment of Certain Fees.*

Without any further notice to or action, order, or approval of the Bankruptcy Court, the Reorganized Debtors or Reorganized VNR, as applicable, shall pay on the Effective Date any reasonable and documented unpaid fees and expenses (whether incurred before or after the Effective Date) by all of the attorneys, accountants, and other professionals, advisors, and consultants payable under (a) the Exit Facility, (b) the Backstop Agreement, (c) the Cash Collateral Order and (d) the RSA, including any applicable transaction, restructuring, or similar fees for which the Debtors have agreed to be obligated.

On the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall pay in Cash all reasonable and documented unpaid Indenture Trustee Fees and Expenses that are required to be paid under the Indentures, without the need for the Indenture Trustees to file fee applications with the Bankruptcy Court without reduction to recoveries of the Holders of the Senior Notes and the Second Lien Notes, as applicable (provided that all payments to the Second Lien Notes Trustee shall be subject to the provisions of the DIP Orders).  From and after the Effective Date, the Reorganized Debtors shall pay in Cash all reasonable and documented Indenture Trustee Fees and Expenses, including, without limitation, all Indenture Trustee Fees and Expenses incurred in connection with distributions made pursuant to the Plan (provided that all payments to the Second Lien Notes Trustee shall be subject to the provisions of the DIP Orders).  Nothing herein shall in any way affect or diminish the right of the Indenture Trustees to exercise their respective Indenture Trustee Charging Liens against distributions to Holders of

Senior Notes and Second Lien Notes, as applicable, with respect to any unpaid Indenture Trustee Fees and Expenses, as applicable.

ARTICLE V.
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

A.   *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases of the Debtors, not previously assumed or rejected pursuant to an order of the Bankruptcy Court, will be deemed to be Assumed Executory Contracts or Unexpired Leases, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those Executory Contracts or Unexpired Leases that:  (a) previously were assumed or rejected by the Debtors; (b) are identified on the Rejected Executory Contract and Unexpired Lease List; (c) are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; or (d) are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date; *provided*, *however*, that any Executory Contracts (including, without limitation, indemnification obligations) that could give rise to any tax related liability for the reorganized Debtors (including any obligations to pay taxes to any other person) shall be deemed rejected as of the Effective Date, unless otherwise agreed to by the Required Consenting Senior Note Holders and the Requisite Commitment Parties; *provided, further, however,* that in the event the Debtors seek to assume any existing employment agreements or other severance arrangements with management or any existing management incentive programs, the Debtors shall expressly list such agreements, arrangements, or programs on the Assumed Executory Contract and Unexpired Lease List (in each case, with the consent of the Required Consenting Senior Note Holders and the Requisite Commitment Parties), and to the extent such agreements, arrangements, or programs are not expressly listed, they shall be deemed rejected as of the Effective Date.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute a court order approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan, the Rejected Executory Contract and Unexpired Lease List, or the Assumed Executory Contract and Unexpired Lease List pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.  Each Executory Contract and Unexpired Lease assumed pursuant to this Article V.A or by any order of the Bankruptcy Court, which has not been assigned to a third party before the Confirmation Date, shall revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as such terms are modified by the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.  Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Rejected Executory Contract and Unexpired Lease List and the Assumed Executory Contract and Unexpired Lease List at any time through and including 45 days after the Effective Date.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed within 30 days after the later of:  (a) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; and (b) the effective date of such rejection.  **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Reorganized Debtors, the Estates, or their property without the need for any objection by the Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.**  All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims against the applicable Debtor and shall be treated in accordance with the Plan, unless a different security or priority is otherwise asserted in such Proof of Claim and Allowed in accordance with Article VII of the Plan.

C.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

Any monetary defaults under each Assumed Executory Contract or Unexpired Lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date, or as soon as reasonably practicable thereafter, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (a) the amount of any payments to cure such a default, (b) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

At least 14 days before the Confirmation Hearing, the Debtors will provide for notices of proposed assumption and proposed cure amounts to be sent to applicable third parties and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court.  Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or related cure amount must be Filed, served, and actually received by the Debtors at least 7 days before the Confirmation Hearing.  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have consented to such assumption or proposed cure amount.

If the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtors or Reorganized Debtors, as applicable, may add such Executory Contract or Unexpired Lease to the Schedule of Rejected Executory Contracts and Unexpired

Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected as the Effective Date.

Assumption of any Executory Contract or Unexpired Lease shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any Assumed Executory Contract or Unexpired Lease at any time before the effective date of assumption.  **Any Proofs of Claim Filed with respect to an Assumed Executory Contract or Unexpired Lease shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.**

D.      *Preexisting Obligations to the Debtors under Executory Contracts and Unexpired Leases.*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed by the Executory Contract or Unexpired Lease counterparty or counterparties to the Debtors or the Reorganized Debtors, as applicable, under such Executory Contracts or Unexpired Leases.

E.      *Insurance Policies.*

Each of the Debtors' Insurance Policies is treated as an Executory Contract under the Plan.  Unless otherwise provided in the Plan, on the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims, and such Insurance Policies shall not be impaired in any way by the Plan or Confirmation Order, but rather will remain valid and enforceable in accordance with their terms.

F.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or is rejected or repudiated under the Plan.

Unless otherwise provided herein or in the applicable Executory Contract or Unexpired Lease (as may have been amended, modified, supplemented, or restated), modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

G.      *Reservation of Rights.*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Rejected Executory Contract and Unexpired Lease List, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any of the Reorganized Debtors has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Reorganized Debtors, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease.

H.      *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur with respect to a Debtor, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases with respect to such Debtor pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

I.      *Contracts and Leases Entered Into After the Petition Date.*

Contracts and leases entered into after the Petition Date by any Debtor, including any Assumed Executory Contracts or Unexpired Leases, will be performed by the applicable Debtor or the applicable Reorganized Debtor liable thereunder in the ordinary course of their business. Accordingly, any such contracts and leases (including any Assumed Executory Contracts or Unexpired Leases) that have not been rejected as of the date of the Confirmation Date shall survive and remain unaffected by entry of the Confirmation Order.

ARTICLE VI.
**PROVISIONS GOVERNING DISTRIBUTIONS**

A.      *Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the Plan, on the Effective Date (or if a Claim or Interest is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Allowed Interest shall receive the full amount of the distributions that the Plan provides for Allowed Claims and Allowed Interest in the applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VII of the Plan. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.    *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.    Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

2.    Delivery of Distributions in General.

Except as otherwise provided herein, the Reorganized Debtors shall make distributions to Holders of Allowed Claims and Allowed Interests as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided*, *however*, that the Distribution Record Date shall not apply to publicly traded Securities.  The manner of such distributions shall be determined at the discretion of the Reorganized Debtors, and the address for each Holder of an Allowed Claim or Allowed Interest shall be deemed to be the address set forth in any Proof of Claim or Proof of Interest Filed by that Holder.

3.    Delivery of Distributions on Lender Claims.

Except as otherwise provided in the Plan, all distributions on account of Allowed Lender Claims shall be governed by the Credit Agreement and shall be deemed completed when made to the Administrative Agent, which shall be deemed the Holder of such Allowed Lender Claims for purposes of distributions to be made hereunder.  The Administrative Agent shall hold or direct such distributions for the benefit of the Holders of Allowed Lender Claims for the benefit of the Holders of Allowed Lender Claims, as applicable.  As soon as practicable following compliance with the requirements set forth in this Article VI, the Administrative Agent shall arrange to deliver or direct the delivery of such distributions to or on behalf of the Holders of Lender Claims.

4.    Delivery of Distributions on Second Lien Notes Claims.

Except as otherwise provided in the Plan or reasonably requested by the Second Lien Notes Trustee, all distributions to Holders of Allowed Second Lien Notes Claims shall be deemed completed when made to the Second Lien Notes Trustee, which shall be deemed to be the Holder of all Allowed Second Lien Notes Claims for purposes of distributions to be made hereunder.  The Second Lien Notes Trustee shall hold or direct such distributions for the benefit of the Holders of Allowed Second Lien Notes Claims.  As soon as practicable in accordance with the requirements set forth in this Article VI, the Second Lien Notes Trustee shall arrange to deliver such distributions to or on behalf of such Holders.

If the Second Lien Notes Trustee is unable to make, or consents to the Reorganized Debtors making, such distributions, the Reorganized Debtors, with such Second Lien Notes Trustee's cooperation, shall make such distributions to the extent reasonably practicable to do so. As to any Holder of an Allowed Second Lien Notes Claims that is held in the name of, or by a nominee of DTC, the Debtors or the Reorganized Debtors, as applicable, shall seek the

cooperation of DTC so that such distribution shall be made through the facilities of DTC on or as soon as practicable on or after the Effective Date.

5.      Delivery of Distributions on Senior Notes Claims.

Except as otherwise provided in the Plan or reasonably requested by the Senior Notes Trustees, all distributions to Holders of Allowed Senior Notes Claims shall be deemed completed when made to the applicable Senior Notes Trustee. The Senior Notes Trustees shall hold or direct such distributions for the benefit of the Holders of Allowed Senior Notes Claims. As soon as practicable in accordance with the requirements set forth in this Article VI, the Senior Notes Trustees shall arrange to deliver such distributions to or on behalf of such Holders, subject to each Senior Notes Trustee's Indenture Trustee Charging Liens. If the Senior Notes Trustees are unable to make, or consents to the Reorganized Debtors making, such distributions, the Reorganized Debtors, with the Senior Notes Trustees' cooperation, shall make such distributions to the extent practicable to do so (provided that until such distributions are made, each Senior Notes Trustee's Indenture Trustee Charging Liens shall attach to the property to be distributed in the same manner as if such distributions were made through the Senior Notes Trustees). The Senior Notes Trustees shall have no duties or responsibility relating to any form of distribution that is not DTC eligible and the Debtors or the Reorganized Debtors, as applicable, shall seek the cooperation of DTC so that any distribution on account of an Allowed Senior Notes Claim that is held in the name of, or by a nominee of, DTC, shall be made through the facilities of DTC on the Effective Date or as soon as practicable thereafter. The Reorganized Debtors shall reimburse the Senior Notes Trustees for any reasonable and documented fees and expenses (including the reasonable and documented fees and expenses of their counsel and agents) incurred after the Effective Date solely in connection with the implementation of the Plan, including but not limited to, making distributions pursuant to and in accordance with the Plan.

6.      Delivery of Distributions to Holders of General Unsecured Claims.

The Debtors and Reorganized Debtors, as applicable, will, in their reasonable discretion determine the method for a timely distribution of all Cash and other distributions to Holders of Allowed General Unsecured Claims pursuant to the Plan.

7.      Delivery of Reorganized VNR Common Stock and New Warrants.

On the Effective Date, the Reorganized Debtors (or their agent or designee) shall distribute (i) the Second Lien Investment Equity to the Second Lien Investors, (ii) the Senior Notes Distribution to the holders of Allowed Senior Notes Claims, (iii) subject to Article III.B.10, the VNR Preferred Unit Equity Distribution and VNR Preferred Unit New Warrants to the holders of VNR Preferred Units, (iv) subject to Article III.B.11, the VNR Common Unit New Warrants to the holders of VNR Common Units, and (v) the Backstop Premium to the Backstop Parties. Notwithstanding anything set forth herein, in the Plan or the Confirmation Order, the Senior Notes Trustee shall not be required or otherwise obligated to distribute any Reorganized VNR Common Stock or any other securities or distributions contemplated by the Plan that do not meet the eligibility requirements of the DTC.

8.      No Fractional Distributions.

No fractional shares of Reorganized VNR Common Stock or New Warrants shall be distributed and no Cash shall be distributed in lieu of such fractional amounts.  When any distribution pursuant to the Plan on account of an applicable Allowed Claim would otherwise result in the issuance of a number of shares of Reorganized VNR Common Stock or New Warrants that is not a whole number, the actual distribution of shares of Reorganized VNR Common Stock or New Warrants shall be rounded as follows:  (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefor; *provided*, *however*, that fractional shares rounding determinations with respect to the Rights Offering shall be subject to the 1145 Rights Offering Procedures and the Backstop Agreement.  The total number of authorized shares of Reorganized VNR Common Stock or New Warrants to be distributed to Holders of Allowed Claims shall be adjusted as necessary to account for the foregoing rounding.

        9.      Minimum Distribution.

No Cash payment of less than $25.00 shall be made to a Holder of an Allowed Claim on account of such Allowed Claim.

        10.      Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Reorganized Debtors have determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the applicable Reorganized Debtor(s) automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and any claim of any Holder to such property shall be fully discharged, released, and forever barred.

*C.*     *Manner of Payment.*

Unless as otherwise set forth herein, all distributions of Cash, the Reorganized VNR Common Stock, the New Warrants, and the Rights, as applicable, to the Holders of Allowed Claims under the Plan shall be made by the Reorganized Debtors.  At the option of the Reorganized Debtors, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

*D.*     *SEC Exemption.*

Each of the Reorganized VNR Common Stock, the New Warrants, and the Rights are or may be "securities," as defined in Section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws.

All shares of the Reorganized VNR Common Stock, the New Warrants, the Rights (and any shares issuable upon the exercise thereof), and shares issuable as part of the Backstop

Premium, will be issued pursuant to the exemptions of registration in reliance upon in section 1145 of the Bankruptcy Code and section 4(a)(2) of the Securities Act.  The Reorganized VNR Common Stock issued in the 4(a)(2) Backstop Commitment, all unsubscribed shares of Reorganized VNR Common Stock issued to the Backstop Parties pursuant to the Backstop Agreement (which, for the avoidance of doubt, shall exclude any shares issued on account of the Backstop Premium), and all Reorganized VNR Common Stock issued to an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code will be issued in reliance upon section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder. All shares of Reorganized VNR Common Stock issued in reliance upon section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder will be considered "restricted securities" and may not be transferred except pursuant to an effective registration statement under the Securities Act or an available exemption therefrom.

Pursuant to section 1145 of the Bankruptcy Code, the issuance of (a) the Reorganized VNR Common Stock to the Holders of VNR Preferred Units, (b) the New Warrants (and the Reorganized VNR Common Stock issuable upon exercise thereof) to the Holders of VNR Preferred Units and VNR Common Units (c) the Rights (including shares of Reorganized VNR Common Stock issuable upon the exercise thereof other than the unsubscribed shares of Reorganized VNR Common Stock issued to the Backstop Parties pursuant to the Backstop Agreement), (d) shares of Reorganized VNR Common Stock issuable as part of the Backstop Premium, and (e) any other securities issued in reliance on section 1145 of the Bankruptcy Code, are exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration before the offering, issuance, distribution, or sale of such securities.  Each of the foregoing securities (a) is not a "restricted security" as defined in Rule 144(a)(3) under the Securities Act, and (b) is freely tradable and transferable by any initial recipient thereof that (i) at the time of transfer, is not an "affiliate" of the Reorganized VNR as defined in Rule 144(a)(1) under the Securities Act and has not been such an "affiliate" within 90 days of such transfer, and (ii) is not an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code.

The Reorganized VNR Common Stock issued in the 4(a)(2) Backstop Commitment, the unsubscribed Reorganized VNR Common Stock purchased by the Backstop Parties pursuant to the Backstop Agreement (which, for the avoidance of doubt, shall exclude any shares issued on account of the Backstop Premium) and all Reorganized VNR Common Stock issued to an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code will be issued without registration under the Securities Act in reliance upon Section 4(a)(2) of the Securities Act or Regulation D promulgated thereunder.  Only Holders that are "accredited investors" (as defined in Rule 501(a) of Regulation D promulgated under the Securities Act) will be eligible to participate in the 4(a)(2) Backstop Commitment. To the extent issued in reliance on Section 4(a)(2) of the Securities Act or Regulation D thereunder, each will be "restricted securities" subject to resale restrictions and may be resold, exchanged, assigned or otherwise transferred only pursuant to registration, or an applicable exemption from registration under the Securities Act and other applicable law.  Should the Reorganized Debtors elect on or after the Effective Date to reflect any ownership of the Reorganized VNR Common Stock through the facilities of DTC, the Reorganized Debtors need not provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of the Reorganized VNR Common Stock or under applicable securities laws.

DTC shall be required to accept and conclusively rely upon the Plan and Confirmation Order in lieu of a legal opinion regarding whether any of the Reorganized VNR Common Stock issuable upon exercise of the Rights, as applicable, are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

Notwithstanding anything to the contrary in the Plan, no entity (including, for the avoidance of doubt, DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the Reorganized VNR Common Stock issuable upon exercise of the Rights, are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

E.      *Compliance with Tax Requirements.*

In connection with the Plan, as applicable, the Debtors and the Reorganized Debtor(s) shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit with respect to distributions pursuant to the Plan.  Notwithstanding any provision herein to the contrary, the Debtors and the Reorganized Debtors shall be authorized to take all actions necessary to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, and establishing any other mechanisms they believe are reasonable and appropriate to comply with such requirements.  The Debtors and the Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

F.      *No Postpetition or Default Interest on Claims.*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, and notwithstanding any documents that govern the Debtors' prepetition funded indebtedness to the contrary, postpetition and/or default interest shall not accrue or be paid on any Claims and no Holder of a Claim shall be entitled to (i) interest accruing on or after the Petition Date on any such Claim or (ii) interest at the contract default rate, as applicable.

G.      *Setoffs and Recoupment.*

Unless otherwise provided for in the Plan or the Confirmation Order, the Debtors and Reorganized Debtors, as applicable, may, but shall not be required to, setoff against or recoup any payments or distributions to be made pursuant to the Plan in respect of any Claims or Interests of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim or Interest hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claim it may have against the Holder of such Claim or Interest.

H.      *No Double Payment of Claims.*

To the extent that a Claim is Allowed against more than one Debtor's Estate, there shall be only a single recovery on account of that Allowed Claim, but the Holder of an Allowed Claim

against more than one Debtor may recover distributions from all co-obligor Debtors' Estates until the Holder has received payment in full on the Allowed Claims. No Holder of an Allowed Claim shall be entitled to receive more than payment in full of its Allowed Claim, and each Claim shall be administered and treated in the manner provided by the Plan only until payment in full on that Allowed Claim.

I.      *Claims Paid or Payable by Third Parties.*

      1.      Claims Paid by Third Parties.

The Debtors or the Reorganized Debtors, as applicable, shall reduce a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor or a Reorganized Debtor.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day period specified above until the amount is repaid.

      2.      Claims Payable by Third Parties.

Except as otherwise provided in the Plan, (a) no distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy, and (b) to the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

      3.      Applicability of Insurance Policies.

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein (a) constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers, or (b) establish, determine, or otherwise imply any liability or obligation, including any coverage obligation, of any insurer.

*J.      Allocation of Distributions Between Principal and Interest.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest as Allowed herein.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

*A.      Allowance of Claims.*

Except as otherwise set forth in the Plan, after the Effective Date, each of the Reorganized Debtors shall have and retain any and all rights and defenses such Debtor had with respect to any Claim immediately before the Effective Date.  Except as specifically provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such claim.

*B.      Claims Administration Responsibilities.*

Except as otherwise specifically provided in the Plan, after the Effective Date, the applicable Reorganized Debtor(s) shall have the sole authority:  (a) to File, withdraw, or litigate to judgment, objections to Claims; (b) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

The Reorganized Debtors shall File any and all claims objections with respect to General Unsecured Claims no later than 180 days after the Effective Date.

*C.      Estimation of Claims.*

Before or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim

for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim.

Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before seven (7) days after the date on which such Claim is estimated.  Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.      *Claims Reserve.*

On or before the Effective Date, the Debtors or the Reorganized Debtors, as applicable, shall be authorized, but not directed, in consultation with the Required Consenting Senior Noteholders and the Requisite Commitment Parties, to establish one or more Disputed Claims reserves, which Disputed Claims reserves shall be administered by the Reorganized Debtors, to the extent applicable.

The Debtors or the Reorganized Debtors, as applicable, may, in their reasonable discretion, hold Cash in a Disputed Claims reserves in trust for the benefit of the Holders of the total estimated amount of Trade Claims and General Unsecured Claims ultimately determined to be Allowed after the Effective Date.  The Reorganized Debtors shall distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein, as such Claims are resolved by a Final Order or agreed to by settlement, and such amounts will be distributable on account of such Claims as such amounts would have been distributable had such Claims been Allowed Claims as of the Effective Date under the Plan solely to the extent of the amounts available in the applicable Disputed Claims reserves.

E.      *Adjustment to Claims without Objection.*

Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by the Reorganized Debtors without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

F.      *Time to File Objections to Claims or Interests.*

Any objections to Claims or Interests shall be Filed on or before the Claims Objection Deadline.

G.      *Disallowance of Claims.*

Any Claims held by Entities from which the Bankruptcy Court has determined that property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer that the Bankruptcy Court has determined is avoidable under section

522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and the full amount of such obligation to the Debtors has been paid or turned over in full. All Proofs of Claim Filed on account of an Indemnification Obligation shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such Indemnification Obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court. All Proofs of Claim Filed on account of an employee benefit shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent the Reorganized Debtors elect to honor such employee benefit, without any further notice to or action, order, or approval of the Bankruptcy Court.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim and Proofs of Interest Filed after the Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.**

H.      *Amendments to Proofs of Claim and Proofs of Interest .*

On or after the Effective Date, a Proof of Claim or Proof of Interest may not be Filed or amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtors, and any such new or amended Proof of Claim or Proof of Interest Filed shall be deemed disallowed in full and expunged without any further action, order, or approval of the Bankruptcy Court to the maximum extent provided by applicable law.

I.      *No Distributions Pending Allowance.*

Except as otherwise set forth herein, if an objection to a Claim or portion thereof is Filed as set forth in Article VII.A and Article VII.B of the Plan, no payment or distribution provided under the Plan shall be made on account of such Disputed Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim.

J.      *Distributions After Allowance.*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan and pursuant to procedures set by the Reorganized Debtors.  As soon as reasonably practicable after the date a Disputed Claim becomes Allowed, the Reorganized Debtors shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan, as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim unless required under such order or judgment of the Bankruptcy Court.

ARTICLE VIII.
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

A.    *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

B.    *Discharge of Claims and Termination of Interests.*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (a) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan.  Any default or "event of default" by the Debtors or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

C.      *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

D.      **Release of Liens.**

**Except as otherwise specifically provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with Article III.B.1 of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtors; *provided*, that this Article VIII.D shall not apply to the Lender Claims to the extent specifically provided for in the Exit Facility or the Second Lien Notes Claims to the extent specifically provided for in the New Second Lien Notes Documents.**

E.      **Releases by the Debtors.**

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed expressly, unconditionally, generally, and individually and collectively, acquitted, released and discharged by the Debtors, the Reorganized Debtors, and their Estates from any and all Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including their management, ownership or operation thereof), Reorganized VNR (including the formation thereof), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions (including dividends and management fees paid), any preference or avoidance claim pursuant to sections 544, 547, 548, and 549 of the Bankruptcy Code, the formulation, preparation, dissemination, negotiation, or consummation of the RSA, the Exit Facility, the New Second Lien Notes, the DIP Facility, the Rights Offering, the Backstop Agreement, the Second Lien Investment Agreement, the Warrant Agreement or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract,**

instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the RSA, the Disclosure Statement, the Plan, the Plan Supplement, the Exit Facility, the New Second Lien Notes, the DIP Facility, the Rights Offering, the Backstop Agreement, the Second Lien Investment Agreement, the Warrant Agreement or the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing.  Notwithstanding anything to the contrary in the foregoing, except as expressly provided under the Plan, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the Plan, Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or (b) any individual from any claim related to an act or omission that is determined in a Final Order by a court competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the release set forth in this Article VIII.E, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the release set forth in this Article VIII.E is: (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims released by the Debtor Release; (3) in the best interests of the Debtors and all holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the release set forth in this Article VIII.E.

F.      *Releases by Holders of Claims and Interests.*

As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Claims and Causes of Action, including Claims and Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the management, ownership or operation thereof), Reorganized VNR (including the formation thereof), the Debtors' in- or out-of-court restructuring efforts, intercompany transactions including dividends and management fees paid), any preference or avoidance claim pursuant to sections 544, 547, 548, and 549 of the Bankruptcy Code, the formulation, preparation, dissemination, negotiation, or consummation of the RSA, the Exit Facility, the New Second Lien Notes, the DIP Facility, the Rights Offering, the Backstop Agreement, the Second Lien Investment Agreement, the Warrant Agreement or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including

providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the RSA, the Disclosure Statement, the Plan, the Plan Supplement, the Exit Facility, the New Second Lien Notes, the DIP Facility, the Rights Offering, the Backstop Agreement, the Second Lien Investment Agreement, the Warrant Agreement or the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan, or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, except as expressly provided under the Plan, the releases set forth above do not release (a) any post-Effective Date obligations of any party or Entity under the the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan and (b) any individual from any claim related to an act or omission that is determined in a Final Order by a court competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article VIII.F, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that each release described in this Article VIII.F is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties; (4) a good faith settlement and compromise of such Claims; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to this Article VIII.F.

G.   *Exculpation.*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or termination of the RSA, and related prepetition transactions, and related prepetition transactions, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the RSA, the Disclosure Statement, the Plan, the Plan Supplement, the Exit Facility, the New Second Lien Notes, the DIP Facility, the Rights Offering, the Backstop Agreement, the Second Lien Investment Agreement, the Warrant Agreement, the Filing of the Chapter 11 Cases, the pursuit of

Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan, or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to or in connection with the Plan and the Restructuring Transactions.  The Exculpated Parties have, and upon completion of the Plan shall be found to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

H.    *Injunction.*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released pursuant to Article VIII.E or Article VIII.F of the Plan, shall be discharged pursuant to Article VIII.A of the Plan, or are subject to exculpation pursuant to Article VIII.G of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, or the Released Parties: (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

I.    *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors

have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

*J.*     *Regulatory Activities.*

Notwithstanding anything to the contrary herein, nothing in the Plan or Confirmation Order is intended to affect the police or regulatory activities of Governmental Units or other governmental agencies.

*K.*     *Recoupment.*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Proof of Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

*L.*     *Subordination Rights.*

Any distributions under the Plan to Holders shall be received and retained free from any obligations to hold or transfer the same to any other Holder and shall not be subject to levy, garnishment, attachment, or other legal process by any Holder by reason of claimed contractual subordination rights. Any such subordination rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

*M.*     *Document Retention.*

On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

*A.*     *Conditions Precedent to Confirmation.*

It shall be a condition to Confirmation with respect to the Debtors that the following shall have been satisfied (or waived pursuant to the provisions of Article IX.C of the Plan):

1.     the Bankruptcy Court shall have entered the Disclosure Statement Order, the Backstop Agreement Order, and the Confirmation Order, and each such order shall have become a Final Order that has not been stayed or modified or vacated on appeal;

2.      the Confirmation Order shall have become a Final Order that has not been stayed or modified or vacated on appeal and shall, among other things:

(a)      authorize the Debtors and the Reorganized Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

(b)      decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

(c)      authorize the Debtors, Reorganized Debtors, and Reorganized VNR, as applicable/necessary, to: (a) implement the Restructuring Transactions; (b) authorize, issue, incur, and/or distribute the Exit Facility, the New Second Lien Notes, the New Warrants, the Reorganized VNR Common Stock, the Rights (and any shares of Reorganized VNR Common Stock issuable upon the exercise thereof and the unsubscribed shares of Reorganized VNR Common Stock issued to the Backstop Parties pursuant to the Backstop Agreement), and shares of Reorganized VNR Common Stock issuable as part of the Backstop Premium, pursuant to, in the case of the Rights (and any shares of Reorganized VNR Common Stock issuable upon the exercise thereof) and shares of Reorganized VNR Common Stock issuable as part of the Backstop Premium, the exemption from registration provided by section 1145 of the Bankruptcy Code, and in the case of any other securities, pursuant to the exemption from registration provided by section 1145 of the Bankruptcy Code or another exemption from the registration requirements of the Securities Act or pursuant to one or more registration statements; (c) make all distributions and issuances as required under the Plan, including Cash, the Reorganized VNR Common Stock, the Rights (and any shares of Reorganized VNR Common Stock issuable upon the exercise thereof and the unsubscribed shares issued to the Backstop Parties pursuant to the Backstop Agreement), shares of Reorganized VNR Common Stock issuable as part of the Backstop Premium, the New Warrants, the Exit Facility and the New Second Lien Notes; and (d) enter into any agreements, transactions, and sales of property as set forth in the Plan Supplement with respect to the Debtors or the Reorganized Debtors, as applicable, including the Exit Facility Documents and the New Second Lien Notes Documents;

(d)      provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order in furtherance of, or in connection with, any transfers of property pursuant to the Plan, including any deeds, mortgages, security interest filings, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax,

mortgage tax, stamp tax, real estate transfer tax, mortgage recording tax, or other similar tax to the extent permissible under section 1146 of the Bankruptcy Code, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment; and

(e)     contain the release, injunction, and exculpation provisions contained in Article VIII herein; and

3.      the RSA shall not have been terminated by the Debtors or the Required Consenting Senior Noteholders.

4.      the Backstop Agreement shall not have been terminated by the Debtors or the Requisite Commitment Parties.

B.      *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied (or waived pursuant to the provisions of Article IX.C of the Plan):

1.      the Disclosure Statement Order shall have been duly entered and shall have become a Final Order that has not been stayed or modified or vacated on appeal;

2.      the Confirmation Order shall have been duly entered and shall have become a Final Order that has not been stayed or modified or vacated on appeal;

3.      the Plan and the applicable documents included in the Plan Supplement, including any exhibits, schedules, documents, amendments, modifications, or supplements thereto, and inclusive of any amendments, modifications, or supplements made after the Confirmation Date but before the Effective Date, shall have been filed;

4.      the New Organizational Documents with respect to the Reorganized Debtors, the Backstop Agreement, the Second Lien Investment Agreement, the Reorganized VNR Registration Rights Agreement, if required by the Backstop Parties, the Exit Facility Documents and the New Second Lien Notes Documents shall be in full force and effect (with all conditions precedent thereto having been satisfied or waived) and subject to any post-closing execution and delivery requirements provided for in the Exit Facility Documents or the New Second Lien Notes Documents;

5.      the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

6.      all Allowed Professional Fee Claims approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such Allowed Professional Fee Claims after

the Effective Date have been placed in the Professional Fee Escrow Account pending approval of the Professional Fee Claims by the Bankruptcy Court;

       7.      the RSA shall not have been terminated by the Debtors or the Required Consenting Senior Noteholders;

       8.      the Backstop Agreement shall not have been terminated by the Debtors or the Requisite Commitment Parties;

       9.      if the Required Consenting Senior Noteholders or the Requisite Commitment Parties have elected for such listing, the Debtors shall have filed applications seeking to qualify the Reorganized VNR Common Stock for listing on the NASDAQ or NYSE, as elected by the Required Consenting Senior Noteholders or the Requisite Commitment Parties, as applicable;

       10.      the "Closing" under the Backstop Agreement shall have occurred or will be deemed under the Backstop Agreement to occur simultaneously upon the Effective Date;

       11.      the "Closing" under the Second Lien Investment Agreement shall have occurred or will be deemed under the Second Lien Investment Agreement to occur simultaneously upon the Effective Date;

       12.      the Debtors shall have implemented the Restructuring Transactions in a manner consistent in all material respects with the Plan.

*C.*    *Waiver of Conditions.*

    The conditions to Confirmation and Consummation set forth in this Article IX may be waived by the Debtors, with the reasonable consent of the Required Consenting Senior Noteholders and the Requisite Commitment Parties without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

*D.*    *Substantial Consummation*

    "Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), with respect to any of the Debtors, shall be deemed to occur on the Effective Date with respect to such Debtor.

*E.*    *Effect of Failure of Conditions.*

    If the Effective Date does not occur with respect to any of the Debtors, the Plan shall be null and void in all respects with respect to such Debtor, and nothing contained in the Plan or the Disclosure Statement shall:  (a) constitute a waiver or release of any Claims by or Claims against or Interests in such Debtors; (b) prejudice in any manner the rights of such Debtors, any Holders of a Claim or Interest, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by such Debtors, any Holders, or any other Entity in any respect.

# ARTICLE X.
# MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

*A.      Modification and Amendments.*

Subject to the limitations contained in the Plan, RSA, and Backstop Agreement, the Debtors reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the RSA, and the Backstop Agreement, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

*B.      Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof (in each case, consistent with the Plan, RSA, and Backstop Agreement) are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

*C.      Revocation or Withdrawal of Plan.*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date.  If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation does not occur, then:  (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effectuated by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (c) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtors or any other Entity, including the Holders of Claims; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

# ARTICLE XI.
# RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code to the extent provided under applicable law, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Reorganized Debtors' amending, modifying, or supplementing, after the Effective Date, pursuant to Article V of the Plan, any Executory Contracts or Unexpired Leases to the Rejected Executory Contracts and Unexpired Lease List, or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

5.      adjudicate, decide, or resolve any and all matters related to Causes of Action;

6.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.      enter and implement such orders as may be necessary to execute, implement, or consummate the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement, including injunctions or other actions as may be necessary to restrain interference by an Entity with Consummation or enforcement of the Plan;

8.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      adjudicate, decide, or resolve any and all matters related to the Restructuring Transactions;

10.      grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

11.      resolve any cases, controversies, suits, disputes, Causes of Action, or any other matters that may arise in connection with the Consummation, interpretation, or enforcement of the Plan, the Disclosure Statement, the Confirmation Order, or the Restructuring Transactions, or any Entity's obligations incurred in connection with the foregoing, including disputes arising

under agreements, documents, or instruments executed in connection with the Plan, the Disclosure Statement, the Confirmation Order, or the Restructuring Transactions;

12.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary to implement such releases, injunctions, and other provisions;

13.     resolve any cases, controversies, suits, disputes, or Causes of Action relating to the distribution or the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI.I.1 of the Plan;

14.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by or assess damages against any Entity with Consummation or enforcement of the Plan or the Restructuring Transactions;

15.     enter and implement such orders as are necessary if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16.     enter an order or decree concluding or closing the Chapter 11 Cases;

17.     adjudicate any and all disputes arising from or relating to distributions under the Plan or any of the transactions contemplated therein;

18.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19.     determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

20.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code, including any request made under section 505 of the Bankruptcy Code for the expedited determination of any unpaid liability of a Debtor for any tax incurred during the administration of the Chapter 11 Cases, including any tax liability arising from or relating to the Restructuring Transactions, for tax periods ending after the Petition Date and through the closing of the Chapter 11 Cases;

21.     hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

22.     hear and determine all disputes involving the obligations or terms of the Exit Facility;

23.     hear and determine all disputes involving the obligations or terms of the Second Lien Investment Agreement;

67

24.     hear and determine all disputes involving the obligations or terms of the Rights Offering and the Backstop Agreement;

25.     hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

26.     except as otherwise limited herein, recover all assets of the Debtors and property of the Estates, wherever located;

27.     enforce all orders previously entered by the Bankruptcy Court; and

28.     hear any other matter not inconsistent with the Bankruptcy Code.

ARTICLE XII.
**MISCELLANEOUS PROVISIONS**

A.     *Immediate Binding Effect.*

Subject to Article IX.B of the Plan, as applicable, and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, exculpations, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

B.     *Additional Documents.*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or advisable to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.     *Dissolution of the Committee.*

On the Effective Date, the Creditors' Committee shall dissolve and all members, employees, or agents thereof shall be released and discharged from all rights and duties arising from or related to the Chapter 11 Cases; *provided*, that the Creditors' Committee shall be deemed to remain in existence solely with respect to, and shall not be heard on any issue except applications filed by the Professionals pursuant to section 330 and 331 of the Bankruptcy Code.

D.      *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor or any other Entity with respect to the Holders of Claims or Interests prior to the Effective Date.

E.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.      *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

    1.      if to the Debtors, to:

            Vanguard Natural Resources, LLC
            5847 San Felipe, Suite 3000
            Houston, Texas 77057
            Attn:   Scott W. Smith, President and Chief Executive Officer
                    Richard Robert, Chief Financial Officer
                    Lisa Godfrey
            Fax: (832) 327-2260
            Email: swsmith@vnrllc.com
                    rrobert@vnrllc.com

            With a copy (which shall not constitute notice) to:

            Paul Hastings LLP
            71 S. Wacker Drive
            45th Floor
            Chicago, Illinois 60606
            Tel.: (312) 499-6000
            Fax: (312) 499-6100
            Attn:   Chris Dickerson
                    Todd Schwartz
            Email: chrisdickerson@paulhastings.com

toddschwartz@paulhastings.com

–and–

Paul Hastings LLP
600 Travis St.
58th Floor
Houston, Texas 77002
Attn:   Douglas Getten
          James Grogan
Email: douggetten@paulhastings.com
          jamesgrogan@paulhastings.com


2.      if to the Administrative Agent, to:

Citibank, N.A.
811 Main Street, Suite 4000
Houston, Texas 77002
Attn:   Phillip Ballard
Email: phil.ballard@citi.com

–and–

Citibank, N.A.
388 Greenwhich Street
New York, New York 10013
Attn:   Sugam Mehta
Email: sugam.mehta@citi.com

with copies (which shall not constitute notice) to:

Weil, Gotshal & Manges LLP
200 Crescent Court, Suite 300
Dallas, Texas 75201-6950
Tel.: (214) 746-7700
Fax: (214) 746-7777
Attn:   Stephen Karotkin
          Blaire Cahn
Email: stephen.karotkin@weil.com
          Blaire.Cahn@weil.com


3.      if to the Consenting Second Lien Noteholders, to the address set forth on each
        Consenting Second Lien Note Holder's signature page (or as directed by any
        transferee thereof), as the case may be, with a copy (which shall not constitute
        notice) to:

Morrison & Foerster LLP
250 West 55th Street
New York, NY 10019-9601
New York, New York 10019
Tel: (212) 468-8000
Fax: (212) 468-7900
Attn:   John Pintarelli

Email: jpintarelli@mofo.com

4.      if to the Second Lien Notes Trustee, to:

Delaware Trust Company
2711 Centerville Road
Wilmington, Delaware 19808
Tel.: (877) 374-6020
Fax: (302) 636-8666
Attn:   Sandi Horwitz
Email: shorwitz@delawaretrust.com

with copies (which shall not constitute notice) to:

Ropes & Gray LLP
Prudential Tower, 800 Boylston Street
Boston, Massachusetts 02199-3600
Attn:   Patricia I. Chen
        Mark Somerstein

5.      if to the Consenting Senior Noteholders, to the address set forth on each
        Consenting Senior Note Holders signature page (or as directed by any transferee
        thereof), as the case may be, with a copy (which shall not constitute notice) to:

Milbank, Tweed, Hadley & McCloy LLP
28 Liberty Street
New York, New York 10005
Tel.: (212) 530-5100
Fax: (212) 530-5219
Attn:   Dennis Dunne
        Samuel Khalil
        Brian Kinney
Email: ddunne@milbank.com
        skhalil@milbank.com
        bkinney@milbank.com

6.      if to the 2019 Senior Notes Trustee, to:

Wilmington Trust, N.A.

1100 North Market Street
Wilmington, Delaware 19890-1605
Attn:   Rita Marie Ritrovato
Email: rritrovato@wilmingtontrust.com

7.      if to the 2020 Senior Notes Trustee, to:

UMB Bank, N.A.
1010 Grant Blvd., 4th Floor
Kansas City, Missouri 64106
Tel.: (816) 860-3009
Fax: (816) 860-3029
Attn:   Mark Flanagan
Email: mark.flannagan@umb.com

8.      if to the Creditors' Committee, to:

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, New York  10036
Tel. (212) 872-1000
Fax: (212) 872-1002
Attn:   Michael Stamer
        Abid Qureshi
        Meredith Lahaie
Email: mstamer@akingump.com
        aqureshi@akingump.com
        mlahaie@akingump.com

After the Effective Date, the Reorganized Debtors shall have the authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

G.      *Entire Agreement.*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

H.      *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors'

72

counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at https://cases.primeclerk.com/vanguard/ or the Bankruptcy Court's website at http://www.txs.uscourts.gov/bankruptcy.

I.      *Nonseverability of Plan Provisions.*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the Debtors' or Reorganized Debtors' consent, as applicable; *provided*, that any such deletion or modification must be consistent with the RSA and Backstop Agreement, as applicable; and (c) nonseverable and mutually dependent.

J.      *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, managers, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law (including the Securities Act), rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

K.      *Waiver or Estoppel.*

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed before the Confirmation Date.

L.      *Closing of Chapter 11 Cases*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases; *provided*, that the

73

Reorganized Debtors may, in their discretion, close certain of the Chapter 11 Cases while allowing other Chapter 11 Cases to continue for the purposes of making distributions on account of Claims or administering to Claims as set forth in this Plan, or for any other provision set forth in this Plan.

[*remainder of page intentionally left blank*]

Dated: February 25, 2017                Vanguard Natural Resources, LLC

                                        on behalf of itself and all other Debtors


                                        ___*/s/ Richard A. Robert*_____
                                        Richard A. Robert
                                        Executive Vice President and Chief Financial
                                        Officer